## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

**MICHAEL T. PARKER**
**PATRICE PARKER**
6714 Berkshire Dr.
Temple Hills, MD  20748-4029
   *On behalf of themselves individually and*
   *similarly situated persons.*

   Plaintiffs

Civil Case: V483904

*v.*

**GOLDMAN SACHS MORTGAGE**
**COMPANY LIMITED PARTNERSHIP**
2001 Ross Avenue, Suite 2800
Dallas, TX  75201
<u>SERVE ON:</u>
The Corporation Trust, Incorporated,
       Resident Agent
2405 York Road, Suite 201
Lutherville-Timonium, MD  21093-2264

And

**NEWREZ LLC d/b/a SHELLPOINT**
**MORTGAGE SERVICING**
1100 Virginia Drive, Suite 125
Fort Washington, PA  19034
<u>SERVE ON:</u>
CSC-Lawyers Incorporating Service,
       Resident Agent
7 St. Paul Street, Suite 820
Baltimore, MD  21202

   Defendants

RECEIVED

OCT 3 0 2020

Clerk of the Circuit Court
Montgomery County, Md.

---

## CLASS ACTION COMPLAINT
### &
## REQUEST FOR JURY TRIAL

---

Plaintiffs Michael and Patrice Parker ("**Parkers**" or "**Named Plaintiffs**"), on their individual behalf and on behalf of similarly situated individuals defined *infra*, by their attorneys, Phillip R. Robinson and the Consumer Law Center LLC and pursuant to MD. RULE 2-231, sue Goldman Sachs Mortgage Company Limited Partnership d/b/a Goldman Sachs Mortgage Company ("**Goldman Sachs**") and NewRez LLC (f/k/a New Penn Financial, LLC) d/b/a Shellpoint Mortgage Servicing ("**Shellpoint**")(collectively "**Defendants**"), demand a trial by Jury on all counts for which a right to trial by jury is allowed and, in support of their Class Action Complaint, state:

## INTRODUCTION

1.    This case concerns the Defendants' illegal fee harvesting program to generate substantial revenue they are not entitled to collect as a matter of Maryland law, Maryland regulations, and the contracts governing the relations between Named Plaintiffs and the putative class members and the owners of their mortgage loans.   No Maryland law, regulation, or contract at issue in this litigation expressly permits the Defendants' churning of fees related to the mortgages of the Parkers and the putative class members, but Goldman Sachs and Shellpoint wish to continue their illegal fee harvesting program unchecked and while doing so unfairly and deceptively increase the cost of mortgages for borrowers without the right to do so.

2.    In instances, such as the underlying matters involving Shellpoint and Goldman Sachs, the mortgage servicer and assignee places their interest and pattern of unsafe and unsound mortgage service practices above the remedial rights of homeowners and consumers.  Moreover, Shellpoint and Goldman Sachs unfairly and deceptively ignore their statutory and contractual duties including those which were agreed to as part of their licenses to legally operate in the State of Maryland.

2

3.     In this action Shellpoint and Goldman Sachs have imposed certain fees and charges onto the residential mortgage accounts of the Parkers and the putative class members they seek to represent for accepting payments by telephone and/or by the Internet related when receiving a borrower's partial or full payment. These so-called convenience fees to accept payments of partial or full payments of consumer mortgage loans are barred as a matter of Maryland law.

4.     In addition, since the consumer debts subject to this action involve mortgage loans and related real property in the State of Maryland, the statute of frauds that applies in Maryland does not permit the Defendants to impose and charge fees that are not memorialized in a written agreement. Further, as a licensed Maryland mortgage lender Shellpoint is barred from altering the agreements governing its relationships with the Parkers and the putative class members unless any such agreement is in writing and executed by all the parties. Md. Code Regs. 09.03.06.08.  In addition, as an unlicensed mortgage lender, Goldman Sachs is acting illegally. Fin. Inst. § 11-523.

5.     The so-called convenience fees are an unlawful profit center imposed and collected by Shellpoint and Goldman Sachs and are not simply pass-through costs to the Parkers and the putative class members.  Rather, they represent materially excessive sums and fees over Shellpoint's and Goldman Sachs' actual costs to accept a residential, mortgage payment by electronic means over the phone or over the Internet.   Specifically, the Defendants' actual costs to their various vendors who facilitate the telephonic and electronic payments charge pennies for the transaction, but Shellpoint imposes fees ranging from 10 to 25 times more than its actual costs.  The Parkers and the putative class members have sustained damages and losses since their rights and protections under the law have been disregarded by Shellpoint and Goldman Sachs and they are entitled to an award of statutory damages as permitted by COM. LAW § 12-114(a)(1)(ii) for each

of Shellpoint's and Goldman Sachs' violations of COM. LAW § 12-105(d) and COM. LAW § 12-121(b).

6.       As part of the fee harvesting program, the Defendants also have imposed and collected property inspection fees from the Plaintiffs and certain putative class members without the right to do so.  Maryland law specifically provides that "a lender may not impose a lender's inspection fee in connection with a loan secured by residential real property."  COM. LAW § 12-121(b). *See also Taylor v. Friedman*, 344 Md. 572, 584 (1997)("For the foregoing reasons we conclude that the legislative history does not so clearly demonstrate a purpose to limit the prohibition of § 12–121 to closing costs as to override the plain language of the statute").

### JURISDICTION AND VENUE

7.       This Court has jurisdiction asserted for the claims herein because Shellpoint and Goldman Sachs transact business, perform work in, have interest in real property, and provide services in Maryland and Montgomery County, Maryland.       *See e.g. Pacific Mortg. and Inv. Group, Ltd. v. Horn*, 100 Md.App. 311, 324 (Md.App.,1994)(a person who "buys and sells [] mortgage liens has done more than merely transacted business…but has, in fact, carried on a regular business").

8.       This Court also has jurisdiction for the claims asserted because the injuries caused by Shellpoint and Goldman Sachs to the Plaintiffs and certain of the putative class members occurred in Maryland.

9.       Further, Shellpoint and Goldman Sachs own real property, or have an interest in real property in the State of Maryland and Montgomery County thereby subjecting themselves to the jurisdiction of this Court.

4

<u>PARTIES</u>

10.     Plaintiffs Michael and Patrice Parker ("Parkers" or "Named Plaintiffs") are natural persons who own the real property known as 6714 Berkshire Dr. in Temple Hills, MD 20748-4029 ("Parker Property"). The Parkers are also the borrowers on the mortgage loan subject to this action which is associated with the Parker Property and was utilized entirely for personal, consumer purposes ("Parker Loan"). The Parker Loan is a federally related mortgage.

11.     Shellpoint is a wholly-owned subsidiary of Shellpoint Partners LLC, a Delaware limited liability company. Shellpoint Partners LLC is wholly-owned by NRM Acquisition LLC and NRM Acquisition II LLC, both of which are Delaware limited liability companies. Both NRM Acquisition entities are wholly-owned by New Residential Mortgage LLC, a Delaware limited liability company. New Residential Mortgage LLC is wholly-owned by New Residential Investment Corporation, a Delaware corporation. New Residential Investment Corporation is publicly traded on the New York Stock Exchange under the ticker symbol NRZ. In addition:

a.     NRZ advertises on its website the reason why it is focused on Shellpoint's business model which acquires the mortgage servicing rights from others. "A mortgage servicing right (MSR) provides a mortgage servicer with the right to service a pool of residential mortgage loans in exchange for a portion of the interest payments made on the underlying residential mortgage loans. Advances are required capital outlays by the servicer to fund missed payments from delinquent borrowers and foreclosure-related expenses. The servicer has limited risk of not being reimbursed for advances, because advances are almost always 'top of the waterfall' in the event of a property sale" (https://www.newresi.com/about-us).   In other words, Shellpoint makes more money on behalf of NRZ by churning fees and making advances related to borrowers it believes

are delinquent or in foreclosure and there is "limited risk" that those sums will not be reimbursed to it—even if it has no right to impose the fees and charges in the first instance.

      b.    Shellpoint is a lender as that term is defined in COM. LAW § 12-101(f). *See also Kemp v. Nationstar Mortg. Ass'n*, No. 2652, SEPT.TERM,2018, --- A.3d ----, 2020 WL 5824227, at \*9 (Md. Ct. Spec. App. Oct. 1, 2020)(holding that § 12-101(f) applies to both assignees and their agents when the assignees violate Subtitle 1 of Title 12 of the Commercial law Article themselves after accepting assignment of the loans governed by those provisions).

      12.    Goldman Sachs Mortgage Company Limited Partnership d/b/a Goldman Sachs Mortgage Company ("**Goldman Sachs**") was formed under the law of New York but all of its partners and subsidiaries are unknown. The general partner for Goldman Sachs is the Goldman Sachs Real Estate Funding Corporation. Goldman Sachs Mortgage Company is a lender as that term is defined in COM. LAW § 12-101(f). *See also Kemp*, 2020 WL 5824227, at \*9.

### FACTUAL ALLEGATIONS

#### *General Allegations About Defendants' Knowledge*

      13.    All persons, including licensed mortgage lender/servicers in the State of Maryland like Shellpoint, are expected to know the law—including the laws governing their activities. As part of its license to even conduct business in the State of Maryland, Shellpoint "has a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the advertisement, solicitation, making, servicing, purchase, or sale of any mortgage loan." MD. CODE REGS. 09.03.06.20. The Parkers and other Maryland borrowers like the Parkers are third party beneficiaries of MD. CODE REGS. 09.03.06.20. All persons doing business in Maryland, including Goldman Sachs, are also expected to know the law.

6

14. The Court of Appeals in 2005 recognized that a real estate professional who had no direct communication with a borrower nevertheless had a duty to the consumer under the Maryland Consumer Protection Act and Maryland common law to make a "reasonable investigation" of the true facts in the real estate transaction on which the borrower (and other parties) would rely in order to complete the transaction. *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005). This duty of care applies to Defendants as their work involves secured, consumer mortgage loans subject to Maryland and Federal laws those discussed herein.

15. Pursuant to 12 C.F.R. § 1024.38(b)(1)(i), Shellpoint is required to "[p]rovide accurate and timely disclosures to a borrower as required by [12 C.F.R. § 1024.38] or other applicable law." Pursuant to 12 C.F.R. § 1024.35(b)(5), Shellpoint is not permitted to "impos[e]… a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower." It is unreasonable and a violation of its duties for Shellpoint to impose and collect sums never properly agreed to by the borrower pursuant to Md. Code Regs. 09.03.06.08.

16. Shellpoint has duties to the Plaintiffs and the putative class members to (i) take appropriate steps to avoid foreclosure (and not churn the collection of fees and costs not permitted under the law or actually incurred) and (ii) comply with any other obligation(s) found by the Bureau of Consumer Financial Protection (by regulation) to be appropriate to carry out the consumer protection purposes of 12 U.S.C.A. § 2605. Amongst these obligations are the servicer's duties to comply with state laws and regulations that are not expressly preempted by RESPA; in other words, Congress and the CFPB expressly intended for RESPA to work in concert with state regulation. *See e.g.* 12 U.S.C.A. § 2605(h) and 12 C.F.R. § 1024.33(d) (expressly limiting preemption to certain notice issues).

7

17.     The Maryland Mortgage Fraud Protection Act, REAL PROP. § 7-401, *et seq.*, estab-lishes a statutory duty upon Defendants to disclose to mortgage borrowers, homeowners, and its predecessor servicers with respect to the mortgage lending process in an honest and truthful man-ner. *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 531 (D. Md. 2013); *Castle v. Capital One, N.A.*, No. CIV.A. WMN-13-1830, 2014 WL 176790, at *5 (D. Md. Jan. 15, 2014; *Stovall v. SunTrust Mortgage, Inc.*, No. CIV.A. RDB-10-2836, 2011 WL 4402680 (D. Md. Sept. 20, 2011).

18.     Maryland law specifically provides that "a lender may not impose a lender's inspec-tion fee in connection with a loan secured by residential real property." COM. LAW § 12-121(b). *See also Taylor*, 344 Md. at 584 ("For the foregoing reasons we conclude that the legislative his-tory does not so clearly demonstrate a purpose to limit the prohibition of § 12–121 to closing costs as to override the plain language of the statute")

19.     The Office of the Commissioner of Financial Regulation ("OCFR"), as the agency that licenses Shellpoint to do business in the State of Maryland, expressly prohibits it licensees including Shellpoint from imposing and collecting property inspection fees from borrowers. OCFR, as the agency specifically authorized to enforce and regulate Maryland's mortgage lending laws, is entitled to deference for its interpretation of those laws. *Comm'r of Fin. Regulation v. Brown, Brown, & Brown, P.C.*, 449 Md. 345, 359-360 (2016). Over the course of the former and current administration, OCFR's analysis of the core issue has not wavered and supports the posi-tion advanced by the Parkers in this action concerning the unlawful imposition and collection of property inspection fees pursuant to COM. LAW § 12-121 as evidence as follows:

   a.     OCFR issued an Industry Advisory on January 7, 2014 informing its licen-
   sees, including Shellpoint, that it was not permitted to impose inspection fees on mortgage

8

borrowers.  A true and correct copy of the notice is attached as Exhibit A to this Class Action Complaint and is also publicly available at https://www.dllr.state.md.us/finance/advisories/advisory-nonjudicialevictions.pdf.

b.      On April 20, 2017 the OCFR issued a Summary Cease and Desist Order to Ocwen Loan Servicing LLC ("Ocwen") and its affiliates on various issues including Ocwen's unfair and deceptive practice, like the practices of Shellpoint subject to this action, which improperly assessed inspection fees against the accounts of borrowers in violation of COM. LAW § 12-121, including accounts of borrowers owned by Government-Sponsored Enterprises.  *See* Ocwen C&D Order at ¶¶ 79-83.  Ocwen recently agreed, on February 23, 2018, to a resolution of the OCFR C&D Order and agreed to reimburse borrowers for the improper assessment and collection of inspection fees by: (i) cash refunds for fees paid, (ii) crediting accounts where the fee was assessed but not paid, and (iii) refunding interest incurred when Ocwen capitalized the illegal inspection fees onto borrowers' accounts as part of a modification that increased the unpaid principal balance.  *See* Ocwen Settlement Agreement at ¶ 26 (available at https://www.dllr.state.md.us/finance/consumers/pdf/ocwencd.pdf).

20.     On May 14, 2018, the Consumer Protection Division in the Office of the Attorney General for the State of Maryland ("CPD") agreed to an Assurance of Discontinuance with Nationstar ("Nationstar Assurance").  In the Nationstar Assurance CPD found that the mortgage servicer had violated the bar to the assessment of inspection fees in COM. LAW. § 12-121 and such violations constituted violations of the Maryland Consumer Protection Act, COM. LAW. § 13-101, *et seq*. ("MCPA"). As the agency charged to enforce the MCPA, the CPD's position is entitled to deference for its interpretation of the MCPA. *Brown, Brown, & Brown P.C.*, 449 Md. at 359-360.

9

### Factual Allegations Relevant to the Parkers

21.     The Parkers acquired the Parker Property on or about December 17, 1993.

22.     On or about December 7, 2007 the Parkers' refinanced their prior mortgage loan with Homecomings Financial Network, Inc. ("HFN") related to the Parker Property by obtaining an extension of credit for the sum of $193,482.00 from HFN ("Parker Loan").  HFN shortly after December 7, 2007 assigned the Parker Loan to the Federal National Mortgage Association ("Fannie Mae").  Fannie Mae assigned the Parker Loan to Goldman Sachs on August 13, 2019. At the time of the assignment, Goldman Sachs authorized Nationstar Mortgage LLC d/b/a Mr. Cooper for collection but thereafter engaged Shellpoint to become the collector as of October 4, 2019.

23.     In a monthly, periodic statement to the Parkers from Shellpoint on behalf of Goldman Sachs dated November 13, 2019 it represented to them that it had charged and collected payment from them a fee for a property inspection that relates to the Parker Property and Parker Loan in the sum of $105.00 on November 8, 2019.

24.     Neither Shellpoint nor Goldman Sachs had any right to impose any property inspection fees on the Parker Loan and the Parkers, as represented by Shellpoint was done on the November 13, 2019 statement because such fees are barred by COM. LAW § 12-121(b).  The inspection fee imposed and collected by Shellpoint on behalf of Golden Sachs was also not related (i) either the construction of a new home on the Parker Property or any repairs, alternations, or other work required by Shellpoint or Goldman Sachs to the Parker Property, or (ii) any appraisal of the real property by Shellpoint or Goldman Sachs since the inspection was not conducted by a licensed Maryland appraiser but was completed by Shellpoint's vendor Servicelink.

25.     In a monthly, periodic statement related to the Parker Loan from Shellpoint on behalf of Goldman Sachs to the Parkers dated March 12, 2020 it represented to them that it had

10

charged and collected payment from them a fee for accepting their March 11, 2020 partial payment on the Parker Loan by the Internet on March 11, 2020.

26.     Neither Shellpoint nor Goldman Sachs had any right to impose any fee for accepting the Parker's March 11, 2020 partial payment on their mortgage by the Internet since Maryland law bars such payments. COM. LAW § 12-105(d). In addition, the Parker Loan documents do not expressly authorize the fee imposed and collected either, which by the admission of Shellpoint on behalf of Goldman Sachs is directly related to the Parker Loan since it was itemized on the March 12, 2020 periodic statement.

27.     In a monthly, periodic statement to the Parkers from Shellpoint on behalf of Goldman Sachs dated April 9, 2020 it represented to them that it had, directly related to the Parker Loan, charged and collected payment from them a fee for accepting their April 8, 2020 partial payment on the Parker Loan by the Internet on April 8, 2020.

28.     Neither Shellpoint nor Goldman Sachs had any right to impose any fee for accepting the Parker's April 8, 2020 partial payment on their mortgage by the Internet since Maryland law bars such payments. COM. LAW § 12-105(d). In addition, the Parker Loan documents do not expressly authorize the fee imposed and collected either, which by the admission of Shellpoint on behalf of Goldman Sachs is directly related to the Parker Loan since it was itemized on the April 9, 2020 periodic statement.

29.     As shown *supra*, by imposing fees—i.e., property inspection and convenience fees—related to the Parker Loan which the Defendants did not have a right to impose, the Parkers have been damaged by the Defendants' illegal fee harvesting program which is designed simply to generate substantial revenue the Defendants do not have the right to collect.

30.     The Parker Loan is not satisfied.

11

31.     The Parkers have been damaged and sustained losses as a proximate cause of Shell-point's improper, unfair, and/or deceptive practices in relation to the collection of the Parker Loan on behalf of Goldman Sachs including:

      a.     Payment and collection of convenience fees not permitted as a matter of Maryland law and the terms and conditions of the Parker Loan.

      b.     Payment and collection of inspection fees not permitted as a matter of Maryland law and the terms and conditions of the Parker Loan.

32.     The Parkers are also entitled to statutory damages as discussed *infra*.

### CLASS ALLEGATIONS

33.     The Named Plaintiffs bring certain claims, *infra*, on behalf of classes and sub-classes of similarly situated persons related to Defendant Shellpoint and Goldman Sachs under MD. RULE 2-231 defined as follows:

      a.     **Shellpoint Convenience Fee Usury Class:**  The Parkers propose, as the definition of the **Shellpoint Convenience Fee Usury Class,** that it be defined as follows:

> Those persons in the State of Maryland for whom (i) Shellpoint has acted as a maker or assignee of a mortgage loan related to a secured, mortgage loan at any time or a mortgage servicer of a mortgage loan owner related to a secured, mortgage since January 1, 2019; (ii) where Shellpoint charged their mortgage loan accounts with convenience fees for it accepting whole or partial payments; and (iii) the mortgage loan accounts had not been satisfied more than six months before the commencement of this action.

      b.     **Goldman Sachs Convenience Fee Usury Subclass:** The Parkers propose, as the definition of the **Goldman Sachs Convenience Fee Usury Subclass,** that it be defined as follows:

> Those members of the Shellpoint Convenience Fee Usury Class for whom Shellpoint collects the subject mortgage loans on behalf of Goldman Sachs.

c.   **Shellpoint Inspection Fee Usury Class:** The Parkers propose, as the definition of the **Shellpoint Inspection Fee Class**, that it be defined as follows:

> Those persons in the State of Maryland for whom (i) Shellpoint has acted as a maker or assignee of a mortgage loan related to a secured, mortgage loan at any time or a mortgage servicer of a mortgage loan owner related to a secured, mortgage since January 1, 2019; (ii) where Shellpoint charged their mortgage loan accounts with property inspection fees and costs related to the mortgage loan; and (iii) the mortgage loan accounts had not been satisfied more than six months before the commencement of this action.

d.   **Goldman Sachs Inspection Fee Usury Subclass:** The Parkers propose, as the definition of the **Goldman Sachs Inspection Fee Usury Subclass**, that it be defined as follows:

> Those members of the Shellpoint Inspection Fee Usury Class for whom Shellpoint collects the subject mortgage loans on behalf of Goldman Sachs.

34.    The Parkers qualify as members of each of the proposed classes and subclasses in the preceding paragraph.

35.    Excluded from each of the putative classes and subclass are any person who falls within the definitions if the person is (i) an employee or independent contractor of Shellpoint or Goldman Sachs; (ii) a relative of an employee or independent contractor of the Shellpoint or Goldman Sachs; or (iii) an employee of the Court where this action is pending.

36.    The proposed class and subclass definitions in ¶ 33 as limited by ¶ 35 may be amended or modified from time to time.

37.    The particular members of the (i) Shellpoint Convenience Fee Usury Class, (ii) Goldman Sachs Convenience Fee Usury Subclass, (iii) Shellpoint Inspection Fee Usury Class, and (iv) the Goldman Sachs Inspection Fee Usury Subclass (collectively referred to **"Proposed Classes and Subclasses"**) are capable of being described without difficult managerial or administrative

problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Shellpoint or its affiliates and agents and from public records. Shellpoint is required to maintain this information for the entire class periods. *See e.g.* Md. Code Regs. 09.03.06.04.

38. The Proposed Classes and Subclasses are sufficiently numerous and exceed more than fifty persons each, such that individual joinder of all members is impractical. This allegation is based on a data search of public records which identify public complaints have been filed against Shellpoint showing that it services fifty or more residential, mortgage loans and was the maker of more than 50 loans in Maryland; and Goldman Sachs has accepted assignment of more than 50 loans of residential borrowers in the State of Maryland.

39. There are questions of law and fact common to the Proposed Classes and Subclasses which predominate over any questions affecting only individual members of the putative classes and subclasses. The wrongs alleged against Shellpoint and Goldman Sachs by the Proposed Classes and Subclass members and the remedies sought by Named Plaintiffs and the putative class and subclass members against Shellpoint and Goldman Sachs are identical.

40. The common questions of law or fact for the Shellpoint Convenience Fee Usury Class include but are not limited to:

    a.    Whether Shellpoint is entitled to convenience fees on the mortgage loan accounts of the Shellpoint Convenience Fee Usury Class members for accepting whole or partial payments from the class members by telephone or the Internet;

    b.    Whether Shellpoint is entitled to demand convenience fees on the mortgage loan accounts of the Shellpoint Convenience Fee Usury Class on its behalf or on behalf of another;

14

c.     Whether this Court may declare that Shellpoint's practices and policies concerning the assessment of convenience fees for accepting whole or partial payments against the mortgage loan accounts of the Shellpoint Convenience Fee Usury Class members violate COM. LAW § 12-105(d);

d.     Whether the convenience fee charged by Shellpoint the Named Plaintiffs' and Shellpoint Convenience Fee Usury Class members' accounts constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitute "usury" as that term is defined in COM. LAW § 12-101(k); and

e.     Whether Shellpoint is liable for statutory damages pursuant to the Shellpoint Convenience Fee Usury Class members pursuant to COM. LAW § 12-121(a)(1)(ii) for each instance in which Shellpoint has imposed improper convenience fees upon the Shellpoint Convenience Fee Usury Class members.

41.     The common questions of law or fact for the Goldman Sachs Convenience Fee Usury Subclass include but are not limited to:

a.     Whether Shellpoint is acting as the authorized agent of Goldman Sachs in relation to the Goldman Sachs Convenience Fee Usury Subclass members;

b.     Whether Goldman Sachs is vicariously liable for the acts of Shellpoint on its behalf in relation to the Goldman Sachs Convenience Fee Usury Subclass members;

c.     Whether this Court may declare that Goldman Sachs' practices and policies concerning the assessment of convenience fees for accepting whole or partial payments against the mortgage loan accounts of the Goldman Sachs Convenience Fee Usury Subclass members violate COM. LAW § 12-105(d);

15

d. Whether the convenience fee charged by Goldman Sachs to the Named Plaintiffs' and Goldman Sachs Convenience Fee Usury Subclass members' accounts constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitute "usury" as that term is defined in COM. LAW § 12-101(k); and

e. Whether Goldman Sachs is liable for statutory damages pursuant to the Goldman Sachs Convenience Fee Usury Subclass members pursuant to COM. LAW § 12-121(a)(1)(ii) for each instance in which Goldman Sachs has imposed, directly or indirectly, improper convenience fees upon the Goldman Sachs Convenience Fee Usury Subclass members.

42. The common questions of law or fact for the Shellpoint Inspection Fee Usury Class include but are not limited to:

a. Whether Shellpoint is entitled to demand property preservation and/or inspection fees on the mortgage loan accounts of the Shellpoint Inspection Fee Usury Class;

b. Whether Shellpoint is entitled to demand property preservation and/or inspection fees on the mortgage loan accounts of the Shellpoint Inspection Fee Usury Class on behalf of Goldman Sachs and others;

c. Whether this Court may declare that Shellpoint's practices and policies concerning the assessment of property preservation fees against the mortgage loan accounts of the Shellpoint Inspection Fee Usury Class members violate COM. LAW § 12-121(b) and *Taylor*, 344 Md. at 584;

d. Do the inspection fees charges by Shellpoint on behalf of Goldman Sachs on the Named Plaintiffs' and Shellpoint Inspection Fee Usury Class members' accounts

constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitute "usury" as that term is defined in COM. LAW § 12-101(k); and

    e.    Whether Shellpoint is liable for statutory damages pursuant to

Shellpoint Inspection Fee Usury Class members pursuant to COM. LAW § 12-121(a)(1)(ii) for each instance in which Shellpoint has imposed inspection fees onto the mortgage accounts of the Shellpoint Inspection Fee Usury Class members.

    43.    The common questions of law or fact for the Goldman Sachs Inspection Fee Usury Subclass include but are not limited to:

    a.    Whether Shellpoint is acting as the authorized agent of Goldman Sachs in relation to the Goldman Sachs Inspection Fee Usury Subclass;

    b.    Whether Goldman Sachs is vicariously liable for the acts of Shellpoint on its behalf in relation to the Goldman Sachs Inspection Fee Usury Subclass members;

    c.    Whether this Court may declare that Goldman Sachs' practices and policies concerning the assessment of inspection fees and costs against the mortgage loan accounts of the Goldman Sachs Inspection Fee Usury Subclass members violate COM. LAW § 12-121(b) and *Taylor*, 344 Md. at 584;

    d.    Whether the convenience fee charged by Goldman Sachs to the Named Plaintiffs' and Goldman Sachs Inspection Fee Usury Subclass members' accounts constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitute "usury" as that term is defined in COM. LAW § 12-101(k); and

    e.    Whether Goldman Sachs is liable for statutory damages pursuant to the Goldman Sachs Inspection Fee Usury Subclass members pursuant to COM. LAW § 12-121(a)(1)(ii) for each instance in which Goldman Sachs has imposed, directly or indirectly,

17

improper inspection fees upon the Goldman Sachs Inspection Fee Usury Subclass members.

44.    Shellpoint's and Goldman Sachs' defenses (which defenses are denied) would be typical or identical for each of the member of Proposed Classes and Subclasses will be based on the same legal and factual theories.

45.    Certification of the Proposed Classes and Subclasses under MD. RULE 2-231 is appropriate as to the members of the putative classes in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy.

46.    A class action will cause an orderly and expeditious administration of claims by the members of the Proposed Classes and Subclasses and economies of time, effort and expenses will be fostered and uniformity of decisions will be insured.

47.    The only individual questions concern the identification of members of Proposed Classes and Subclasses. This information can be determined by a ministerial examination of public records or from Shellpoint's business records or other sources, which are admissible as an exception to the hearsay rule and as a statement by a party.

48.    The Named Plaintiffs' class and subclass claims are typical of the claims of the Proposed Classes and Subclasses pursuant to MD. RULE 2-231 since they are based on and arise out of identical facts constituting the wrongful conduct of the Shellpoint and Goldman Sachs (directly and indirectly).

49.    The Parkers will also fairly and adequately represent and protect the interests of Proposed Classes and Subclasses. The Parkers are similarly situated with, and have suffered sim-

ilar injuries as, the putative classes and subclasses they propose to represent. They have also retained counsel experienced in consumer class actions including actions involving unlawful collection and mortgage servicing practices. The Parkers do not have any interests which might cause them not to vigorously prosecute this action or are otherwise adverse to the interests of the members of the Proposed Classes and Subclasses. They feel that they and the putative class and subclass members have been wronged, wish to obtain redress of the wrong, and wants Shellpoint and Goldman Sachs stopped from failing to comply with its mandatory duties that form the basis of the class claims.

50.     The Proposed Classes and Subclasses members have suffered actual damages, losses, and harm similar to those sustained by the Parkers, including statutory damages.

### COUNT I: CLAIM PURSUANT TO COM. LAW § 12-121(a)(1)(ii)
### (On behalf of the Plaintiffs Individually and
### on behalf of the Shellpoint Convenience Fee Usury Class and the Goldman Sachs Convenience Fee Usury Subclass)

51.     The Parkers adopt by reference the factual allegations contained in the preceding paragraphs of this Complaint with the same effect as if herein fully set forth. This claim is brought on behalf of the Parkers individually and as the Named Plaintiffs on behalf of the Shellpoint Convenience Fee Usury Class and the Goldman Sachs Convenience Fee Usury Subclass against Shellpoint and Goldman Sachs respectfully.

52.     As the maker and/or servicer of the Named Plaintiffs' and Shellpoint Convenience Fee Usury Class members' loans, Shellpoint qualifies as a lender pursuant to COM. LAW § 12-101(f).

53. As the maker and/or assignee of the Named Plaintiffs' and Goldman Sachs Convenience Fee Usury Subclass, Goldman Sachs qualifies as a lender pursuant to COM. LAW § 12-101(f).

54. COM. LAW § 12-105(d) prohibits a lender or servicer from imposing fees related to a borrower's partial or full payment on the Named Plaintiffs' and Shellpoint Convenience Fee Usury Class and the Goldman Sachs Convenience Fee Usury Subclass members' mortgage loans after the origination of the subject loans. COM. LAW § 12-105(d) does not exempt Shellpoint or Goldman Sachs from its express prohibition.

55. Shellpoint and Goldman Sachs were not entitled to require any charge to the mortgage loan accounts of the Named Plaintiffs and Shellpoint Convenience Fee Usury Class and the Goldman Sachs Convenience Fee Usury Subclass members' mortgage loans related to the borrower's partial or full payments on their loans over the telephone or by the Internet.

56. At all times relevant and material to this action, Shellpoint and Goldman Sachs have known or should have known that neither were permitted to require the imposition of unauthorized 'convenience' fees to the mortgage accounts of the Named Plaintiffs and the Shellpoint Convenience Fee Usury Class and the Goldman Sachs Convenience Fee Usury Subclass members' mortgage loans members who make partial or whole payments on their mortgage loans since all persons are expected to know the law.

57. COM. LAW § 12-114(a)(1)(ii) provides that Shellpoint shall forfeit to borrowers like the Named Plaintiffs and Shellpoint Convenience Fee Usury Class members the sum of $500 for any violation, including the assessment of so-called convenience fees for partial or whole payments made by telephone to it, of the subtitle including COM. LAW § 12-105(d).

58.    COM. LAW § 12-114(a)(1)(ii) provides that Goldman Sachs shall forfeit to borrow-ers like the Named Plaintiffs and Goldman Sachs Convenience Fee Usury Subclass members the sum of $500 for any violation, including the assessment of so-called convenience fees for partial or whole payments made by telephone to it, of the subtitle including COM. LAW § 12-105(d).

59.    Goldman Sachs is also vicariously liable for the damages sustained by the Goldman Sachs Convenience Fee Usury Subclass as a result of Shellpoint's actions in violation of COM. LAW § 12-105(d) on its behalf in relation to the Goldman Sachs Convenience Fee Usury Subclass. This v

60.    The Named Plaintiffs and Shellpoint Convenience Fee Usury Class members are entitled to the sum of $500 for each instance in which Shellpoint has imposed convenience fees against the mortgage loan accounts of the Named Plaintiffs and the Shellpoint Convenience Fee Usury Class members in violation of COM. LAW § 12-105(d) whether the Named Plaintiffs and Shellpoint Convenience Fee Usury Class members paid the assessment or not.

61.    The Named Plaintiffs and Goldman Sachs Convenience Fee Usury Subclass mem-bers are entitled to the sum of $500 for each instance in which Goldman Sachs has imposed, di-rectly or indirectly, convenience fees against the mortgage loan accounts of the Named Plaintiffs and the Goldman Sachs Convenience Fee Usury Subclass members in violation of COM. LAW § 12-105(d) whether the Named Plaintiffs and Goldman Sachs Convenience Fee Usury Subclass members paid the assessment or not.

### COUNT II: CLAIM PURSUANT TO COM. LAW § 12-121(a)(1)(ii)
**(On behalf of the Plaintiffs Individually and
on behalf of the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection
Fee Usury Subclass)**

62.    The Parkers adopt by reference the factual allegations contained in the preceding paragraphs of this Complaint with the same effect as if herein fully set forth.  This claim is brought

on behalf of the Parkers individually and as the Named Plaintiffs on behalf of the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass against Shellpoint and Goldman Sachs respectfully.

63.     As the maker and/or servicer of the Named Plaintiffs' and Shellpoint Inspection Fee Usury Class members' loans, Shellpoint qualifies as a lender pursuant to COM. LAW § 12-101(f).

64.     As the maker and/or assignee of the Named Plaintiffs' and Goldman Sachs Inspection Fee Usury Subclass, Goldman Sachs qualifies as a lender pursuant to COM. LAW § 12-101(f).

65.     COM. LAW § 12-121(b) and *Taylor*, 344 Md. at 584 prohibits a lender or servicer from imposing fees related to property inspections onto the Named Plaintiffs' and Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass members' mortgage loans after the origination of the subject loans. COM. LAW § 12-121 does not exempt Shellpoint or Goldman Sachs from its express prohibition.

66.     Shellpoint and Goldman Sachs were not entitled to require any charge to the mortgage loan accounts of the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass members' mortgage loans related to a purported inspection fee of the borrowers' property but did so anyway in violation of COM. LAW § 12-121(b) and *Taylor*, 344 Md. at 584.

67.     At all times relevant and material to this action, Shellpoint and Goldman Sachs have known or should have known that neither were permitted to require the imposition of inspection fees to the mortgage accounts of the Named Plaintiffs and the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass members' mortgage loans since all persons are expected to know the law.

22

68.     COM. LAW § 12-114(a)(1)(ii) provides that Shellpoint shall forfeit to borrowers like the Named Plaintiffs and Shellpoint Inspection Fee Usury Class members the sum of $500 for any violation, including the assessment of so-called inspection fees, of the subtitle including COM. LAW § 12-121(b).

69.     COM. LAW § 12-114(a)(1)(ii) provides that Goldman Sachs shall forfeit to borrowers like the Named Plaintiffs and the Goldman Sachs Inspection Fee Usury Subclass members the sum of $500 for any violation, including the assessment of so-called inspection fees, of the subtitle including COM. LAW § 12-121(b).

70.     Goldman Sachs is also vicariously liable for the damages sustained by the Goldman Sachs Inspection Fee Usury Subclass as a result of Shellpoint's actions in violation of COM. LAW § 12-121(b) on its behalf in relation to the Goldman Sachs Inspection Fee Usury Subclass.

71.     The Named Plaintiffs and Shellpoint Inspection Fee Usury Class members are entitled to the sum of $500 for each instance in which Shellpoint has imposed inspection fees against the mortgage loan accounts of the Named Plaintiffs and the Shellpoint Inspection Fee Usury Class members in violation of COM. LAW § 12-121(b) whether the Named Plaintiffs and Shellpoint Inspection Fee Usury Class members paid the assessment or not.

72.     The Named Plaintiffs and Goldman Sachs Inspection Fee Usury Subclass members are entitled to the sum of $500 for each instance in which Goldman Sachs has imposed, directly or indirectly, inspection fees against the mortgage loan accounts of the Named Plaintiffs and the Goldman Sachs Inspection Fee Usury Subclass members in violation of COM. LAW § 12-121(b) whether the Named Plaintiffs and Goldman Sachs Inspection Fee Usury Subclass members paid the assessment or not.

## PRAYERS FOR RELIEF

A.  WHEREFORE, Pursuant to Count I of this Class Action Complaint, Named Plaintiffs request the Court to certify the Shellpoint Convenience Fee Usury Class and the Goldman Sachs Convenience Fee Usury Subclass pursuant to MD. RULE 2-231 and appoint the Named Plaintiffs as class representatives and the undersigned counsel as Class Counsel for the class and subclass;

B.  WHEREFORE, Pursuant to Count I of this Class Action Complaint, Named Plaintiffs and the Shellpoint Convenience Fee Usury Class members ask this Court to determine the issue of Shellpoint's liability to the Shellpoint Convenience Fee Usury Class members and grant a money judgment in their favor and against Shellpoint and order Defendant Shellpoint to pay and forfeit pursuant to COM. LAW § 12-114(a)(1)(ii) to the Named Plaintiffs and the Shellpoint Convenience Fee Usury Class members $500 for each violation of COM. LAW § 12-105(d) and reasonable attorney fees and costs for the assessment of so-called convenience fees for partial or whole payments made by telephone or by the Internet to it in a total sum in excess of $75,000.00 (on a aggregated basis for the Plaintiffs and Shellpoint Convenience Fee Usury Class members).

C.  WHEREFORE, Pursuant to Count I of this Class Action Complaint, Named Plaintiffs and the Goldman Sachs Convenience Fee Usury Subclass members ask this Court to determine the issue of Goldman Sachs' liability to the Goldman Sachs Convenience Fee Usury Subclass members and grant

a money judgment in their favor and against Goldman Sachs and order Defendant Goldman Sachs to pay and forfeit pursuant to COM. LAW § 12-114(a)(1)(ii) to the Named Plaintiffs and the Goldman Sachs Convenience Fee Usury Subclass members $500 for each violation of COM. LAW § 12-105(d) and reasonable attorney fees and costs for the assessment of so-called convenience fees for partial or whole payments made by telephone or by the Internet to it, directly or indirectly, in a total sum in excess of $75,000.00 (on a aggregated basis for the Plaintiffs and the Goldman Sachs Convenience Fee Usury Subclass members).  In the alternative, Named Plaintiffs and the Goldman Sachs Convenience Fee Usury Subclass request that the Court find Goldman Sachs vicariously liable to Goldman Sachs Convenience Fee Usury Subclass members for the statutory damages they are entitled to as a result of Shellpoint's violations on behalf of Goldman Sachs.

D. WHEREFORE, Pursuant to Count II of this Class Action Complaint, Named Plaintiffs request the Court to certify the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass pursuant to MD. RULE 2-231 and appoint the Named Plaintiffs as class representatives and the undersigned counsel as Class Counsel for the class and subclass;

E. WHEREFORE, Pursuant to Count II of this Class Action Complaint, Named Plaintiffs and the Shellpoint Inspection Fee Usury Class members ask this Court to determine the issue of Shellpoint's liability to the Shellpoint Inspection Fee Usury Class members and grant a money judgment in their favor

and against Shellpoint and order Defendant Shellpoint to pay and forfeit pursuant to COM. LAW § 12-114(a)(1)(ii) to the Named Plaintiffs and the Shellpoint Inspection Fee Usury Class members $500 for each violation of COM. LAW § 12-121(b) and reasonable attorney fees and costs for the assessment of so-called property inspection fees to it in a total sum in excess of $75,000.00 (on a aggregated basis for the Plaintiffs and Shellpoint Inspection Fee Usury Class members).

F. WHEREFORE, Pursuant to Count II of this Class Action Complaint, Named Plaintiffs and the Goldman Sachs Inspection Fee Usury Subclass members ask this Court to determine the issue of Goldman Sachs' liability to the Goldman Sachs Inspection Fee Usury Subclass members and grant a money judgment in their favor and against Goldman Sachs and order Defendant Goldman Sachs to pay and forfeit pursuant to COM. LAW § 12-114(a)(1)(ii) to the Named Plaintiffs and the Goldman Sachs Inspection Fee Usury Subclass members $500 for each violation of COM. LAW § 12-121(b) and reasonable attorney fees and costs for the assessment of so-called property inspection fees to it, directly or indirectly, in a total sum in excess of $75,000.00 (on a aggregated basis for the Plaintiffs and the Goldman Sachs Inspection Fee Usury Subclass members). In the alternative, Named Plaintiffs and the Goldman Sachs Inspection Fee Usury Subclass request that the Court find Goldman Sachs vicariously liable to Goldman Sachs Inspection Fee Usury Subclass members for the statutory

damages they are entitled to as a result of Shellpoint's violations on behalf of Goldman Sachs.

G. WHEREFORE, Named Plaintiffs request the Court provide such other or further relief as the Court deems appropriate including attorney fees and costs in relation to Count of this Complaint.

Respectfully submitted,

Phillip R. Robinson
Client Protection No. 0006210356
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD 20910
Phone (301) 448-1304
phillip@marylandconsumer.com

*Attorneys for the Plaintiffs and Putative Class Members*

## RULED 20-201 CERTIFICATION

I hereby certify that this filing does not contain any restricted information.

Phillip R. Robinson
Client Protection No. 0006210356
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD 20910
301-448-1304
phillip@marylandconsumer.com
*Attorneys for the Plaintiffs and Putative Class Members*

## JURY DEMAND

Plaintiffs, on their behalf and on behalf of the putative class and subclass members, by their undersigned counsel request a jury trial in this matter.

Phillip R. Robinson
Client Protection No. 0006210356
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD 20910
Phone (301) 448-1304