IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| **MICHAEL T. PARKER**<br>**PATRICE PARKER**<br>*On behalf of themselves individually and*<br>*similarly situated persons.*<br><br>Plaintiffs<br><br>*v.*<br><br>**GOLDMAN SACHS MORTGAGE**<br>**COMPANY LIMITED PARTNERSHIP**<br>And<br>**NEWREZ LLC d/b/a SHELLPOINT**<br>**MORTGAGE SERVICING**<br><br>Defendants | Civil Case:  8:20-cv-03581-GJH<br><br><br><br>**Jury Trial Demand** |

## AMENDED CLASS ACTION COMPLAINT[1,2]

Plaintiffs Michael and Patrice Parker ("**Parkers**" or "**Named Plaintiffs**"), on their individual behalf and on behalf of similarly situated individuals defined *infra*, by their attorneys, Phillip R. Robinson and the Consumer Law Center LLC and pursuant to Fed.R.Civ.P. 23, sue Goldman Sachs Mortgage Company Limited Partnership d/b/a Goldman Sachs Mortgage Company ("**Goldman Sachs**") and NewRez LLC (f/k/a New Penn Financial, LLC) d/b/a Shellpoint Mortgage

---

[1]     Attached hereto as Exhibit 1 is a comparison copy of the changes made herein from the original Complaint.  ECF. 1.

[2]     Plaintiffs are permitted as a matter of course to file this amending pleading.  Fed. R. Civ. P. 15(a)(1)(B).

Servicing ("**Shellpoint**")(collectively "**Defendants**"), demand a trial by Jury on all counts for which a right to trial by jury is allowed and, in support of their Amended Class Action Complaint, state:

**INTRODUCTION**

1.      This case concerns the Defendants' illegal fee harvesting program to generate substantial revenue they are not entitled to collect as a matter of Maryland law, Maryland regulations, and the contracts governing the relations between Named Plaintiffs and the putative class members and the owners of their mortgage loans which incorporate Maryland law, regulations, and judicial decisions.   Maryland law and regulatory guidance expressly prohibits the Defendants' churning of property inspection fees subject to this Amended Class Action Complaint related to the mortgages of the Parkers and the putative class members, but Goldman Sachs and Shellpoint wish to continue their illegal fee harvesting program unchecked, and while doing so unfairly, improperly, and deceptively increasing the cost of mortgages for borrowers.

2.      In instances such as the underlying matters involving Shellpoint and Goldman Sachs, the mortgage servicer and assignee place their interest and pattern of unsafe and unsound mortgage service practices above the remedial rights of homeowners and consumers.  Moreover, Shellpoint and Goldman Sachs unfairly and deceptively ignore their statutory and contractual duties including those which were agreed to as part of their licenses to legally operate in the State of Maryland.   Further, not only are the Parkers and other similar consumers harmed by Defendants' conduct, but so also are honest businesses who follow the law but are placed at a competitive disadvantage by the Defendants' flagrant violations described *infra*.

3.      As part of the fee harvesting program, the Defendants have imposed and collected property inspection fees from the Plaintiffs and certain putative class members without the right

to do so.  Maryland law specifically provides that "a lender may not impose a lender's inspection fee in connection with a loan secured by residential real property."  COM. LAW § 12-121(b). *See also Taylor v. Friedman*, 344 Md. 572, 584 (1997)("For the foregoing reasons we conclude that the legislative history does not so clearly demonstrate a purpose to limit the prohibition of § 12–121 to closing costs as to override the plain language of the statute").

## JURISDICTION AND VENUE

4.      Upon information and belief this Court has jurisdiction for the claims asserted herein pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), 1453.  This good faith belief is based upon the sworn testimony of the Defendants and the statements of their counsel pursuant to Fed.R.Civ.P. 11, including the following papers filed in this action and incorporated by this reference: (i) ECF. 1, Notice of Removal, (ii) ECF 1-5, Affidavit of Amber Knight Costello, and (iii) ECF. 6, Defendants' Responses to Standing Order Concerning Removal.  Further, the Court may elect to retain supplemental jurisdiction over the MCPA and MCDCA state law claims pursuant to 28 U.S.C. § 1369 since those claims are so related to the claims under Count I that are subject to CAFA jurisdiction and since they form part of the same case and controversy.   Alternatively, if it is found at a later time that the Court does not have jurisdiction, this action should be remanded to the state court pursuant to 28 U.S.C. § 1447(c).

5.      Shellpoint and Goldman Sachs transact business, perform work in, have interest in real property, and provide services in Maryland.   *See e.g. Pacific Mortg. and Inv. Group, Ltd. v. Horn*, 100 Md.App. 311, 324 (Md.App.,1994)(a person who "buys and sells [] mortgage liens has done more than merely transacted business…but has, in fact, carried on a regular business").

6.     This Court also has jurisdiction for the claims asserted because the injuries caused by Shellpoint and Goldman Sachs to the Plaintiffs and certain of the putative class members occurred in Maryland.

## PARTIES

7.     Plaintiffs Michael and Patrice Parker ("Parkers" or "Named Plaintiffs") are natural persons who own the real property known as 6714 Berkshire Dr. in Temple Hills, MD  20748-4029 ("Parker Property").  The Parkers are also the borrowers on the mortgage loan subject to this action which is associated with the Parker Property and was utilized entirely for personal, consumer purposes ("Parker Loan").  The Parker Loan is a federally related mortgage.

8.     Shellpoint is a wholly-owned subsidiary of Shellpoint Partners LLC, a Delaware limited liability company. Shellpoint Partners LLC is wholly-owned by NRM Acquisition LLC and NRM Acquisition II LLC, both of which are Delaware limited liability companies. Both NRM Acquisition entities are wholly-owned by New Residential Mortgage LLC, a Delaware limited liability company. New Residential Mortgage LLC is wholly-owned by New Residential Investment Corporation, a Delaware corporation. New Residential Investment Corporation is publicly traded on the New York Stock Exchange under the ticker symbol NRZ.  In addition:

a.     NRZ advertises on its website the reason why it is focused on Shellpoint's business model which acquires the mortgage servicing rights from others.  "A mortgage servicing right (MSR) provides a mortgage servicer with the right to service a pool of residential mortgage loans in exchange for a portion of the interest payments made on the underlying residential mortgage loans. Advances are required capital outlays by the servicer to fund missed payments from delinquent borrowers and foreclosure-related expenses. The servicer has limited risk of not being reimbursed for advances, because advances are almost always 'top of the waterfall' in the event of

a property sale" (https://www.newresi.com/about-us).  In other words, Shellpoint makes more money on behalf of NRZ by churning fees and making advances related to borrowers it believes are delinquent or in foreclosure and there is "limited risk" that those sums will not be reimbursed to it—even if it has no right to impose the fees and charges in the first instance.

   b. Shellpoint is a licensed Maryland lender (license number 17710) and is also a licensed Maryland collection agency (license number 04-7989).

   c. Shellpoint is a lender as that term is defined in COM. LAW § 12-101(f).  *See also Kemp v. Nationstar Mortg. Ass'n*, 239 A.3d 798, 814 (2020), cert. granted sub nom. *Nationstar Mortg. LLC v. Kemp*, No. 342, SEPT.TERM,2020, 2020 WL 7417427 (Md. Nov. 23, 2020) (holding that § 12-101(f) applies to both assignees and their agents when the assignees violate Subtitle 1 of Title 12 of the Commercial Law Article themselves after accepting assignment of the loans governed by those provisions). In addition, as a collector and mortgage servicer acting on behalf of Goldman Sachs and other owners of mortgage loans, Shellpoint is not entitled to declare that it may disregard the obligations of its investors and predecessors.

  9. Goldman Sachs Mortgage Company Limited Partnership d/b/a Goldman Sachs Mortgage Company ("**Goldman Sachs**") was formed under the law of New York but all of its partners and subsidiaries are unknown.  The general partner for Goldman Sachs is the Goldman Sachs Real Estate Funding Corporation.  Goldman Sachs is

   a. A lender as that term is defined in COM. LAW § 12-101(f).  *See also Kemp*, 239 A.3d at 814;

   b. Also a maker of mortgage loans by participating in the secondary mortgage market to acquire loans from others which increases liquidity to permit more mortgage loans to be arranged; and

c.      A lender who stands in the shoes of others and is bound by the terms and conditions of the contracts it acquires and is entitled to no greater rights as an assignee than its assignors had to give it.  Here, Goldman Sachs acquired mortgage contracts from others, in relation to the Parkers and the putative subclass members defined *infra*, who had agreed that those contracts would be governed by Maryland law, and Goldman Sachs accepted those terms willingly and knowingly and may not modify them without the signed, written consent of the Parkers and the putative subclass members.  Neither the Parkers nor the putative subclass members defined *infra* have agreed to modify their loan documents (i.e. deeds of trust and mortgage notes) to not incorporate Maryland law.  In addition, as the assignee, Goldman Sachs has agreed to be bound by the obligations of its assignors.

### FACTUAL ALLEGATIONS

#### *General Allegations About Defendants' Knowledge & Duties*

10.      All persons, including licensed mortgage lender/servicers in the State of Maryland like Shellpoint, are expected to know the law—including the laws governing their activities.  As part of its license to conduct business in the State of Maryland, Shellpoint "has a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the advertisement, solicitation, making, servicing, purchase, or sale of any mortgage loan." MD. CODE REGS. 09.03.06.20. The Parkers and other Maryland borrowers like the Parkers are intended beneficiaries of MD. CODE REGS. 09.03.06.20.  All persons doing business in Maryland, including Goldman Sachs, are also expected to know the law.

11.      The Court of Appeals in 2005 recognized that a real estate professional who had no direct communication with a borrower nevertheless had a duty to the consumer under the Maryland Consumer Protection Act and Maryland common law to make a "reasonable investigation" of the

true facts in the real estate transaction on which the borrower (and other parties) would rely in order to complete the transaction. *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005). This duty of care applies to Defendants as their work involves secured, consumer mortgage loans subject to Maryland and Federal laws such as those discussed herein.

12.   Pursuant to 12 C.F.R. § 1024.38(b)(1)(i), Shellpoint is required to "[p]rovide accurate and timely disclosures to a borrower as required by [12 C.F.R. § 1024.38] or other applicable law." Pursuant to 12 C.F.R. § 1024.35(b)(5), Shellpoint is not permitted to "impos[e]… a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower." It is unreasonable and a violation of its duties for Shellpoint to impose and collect sums barred by Maryland laws, regulations, and judicial precedent.

13.   Shellpoint has duties to the Plaintiffs and the putative class members to (i) take appropriate steps to avoid foreclosure (and not churn the collection of fees and costs not permitted under the law or actually incurred to drive borrowers toward foreclosure) and (ii) comply with any other obligation(s) found by the Bureau of Consumer Financial Protection (by regulation) to be appropriate to carry out the consumer protection purposes of 12 U.S.C.A. § 2605. Amongst these obligations are the servicer's duties to comply with state laws and regulations that are not expressly preempted by RESPA; in other words, Congress and the CFPB expressly intended for RESPA to work in concert with state regulation. *See e.g.* 12 U.S.C.A. § 2605(h) and 12 C.F.R. § 1024.33(d) (expressly limiting preemption to certain notice issues).

14.   The Maryland Mortgage Fraud Protection Act, REAL PROP. § 7-401, *et seq.*, establishes a statutory duty upon Defendants to disclose and communicate to mortgage borrowers, homeowners, and its predecessor servicers with respect to the mortgage lending process in an honest and truthful manner. *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F.

Supp. 2d 502, 531 (D. Md. 2013); *Castle v. Capital One, N.A.*, No. CIV.A. WMN-13-1830, 2014 WL 176790, at *5 (D. Md. Jan. 15, 2014; *Stovall v. SunTrust Mortgage, Inc.*, No. CIV.A. RDB-10-2836, 2011 WL 4402680 (D. Md. Sept. 20, 2011).

15. Maryland law specifically provides that "a lender may not impose a lender's inspection fee in connection with a loan secured by residential real property."  COM. LAW § 12-121(b). *See also Taylor*, 344 Md. at 584 ("For the foregoing reasons we conclude that the legislative history does not so clearly demonstrate a purpose to limit the prohibition of § 12–121 to closing costs as to override the plain language of the statute").

16. The Office of the Commissioner of Financial Regulation ("OCFR"), as the agency that licenses Shellpoint to do business in the State of Maryland, expressly prohibits its licensees including Shellpoint from imposing and collecting property inspection fees from borrowers. OCFR, as the agency specifically authorized to enforce and regulate Maryland's mortgage lending laws, is entitled to deference for its interpretation of those laws. *Comm'r of Fin. Regulation v. Brown, Brown, & Brown, P.C.*, 449 Md. 345, 359-360 (2016).  Over the course of the former and current administration, OCFR's analysis of the core issue has not wavered and supports the position advanced by the Parkers in this action concerning the unlawful imposition and collection of property inspection fees pursuant to COM. LAW § 12-121 as evidenced as follows:

a.  OCFR issued an Industry Advisory on January 7, 2014 informing its licensees, including Shellpoint, that it was not permitted to impose inspection fees on mortgage borrowers.  A true and correct copy of the notice is attached as Exhibit 2 to this Amended Class Action Complaint and is also publicly available at https://www.dllr.state.md.us/finance/advisories/advisory-nonjudicialevictions.pdf.

b.      On April 20, 2017 the OCFR issued a Summary Cease and Desist Order to Ocwen Loan Servicing LLC ("Ocwen") and its affiliates on various issues including Ocwen's unfair and deceptive practice, like the practices of Shellpoint subject to this action, which improperly assessed inspection fees against the accounts of borrowers in violation of COM. LAW § 12-121, including accounts of borrowers owned by Government-Sponsored Enterprises.  *See* Ocwen C&D Order at ¶¶ 79-83.  Ocwen recently agreed, on February 23, 2018, to a resolution of the OCFR C&D Order and agreed to reimburse borrowers for the improper assessment and collection of inspection fees by: (i) cash refunds for fees paid, (ii) crediting accounts where the fee was assessed but not paid, and (iii) refunding interest incurred when Ocwen capitalized the illegal inspection fees onto borrowers' accounts as part of a modification that increased the unpaid principal balance.  *See* Ocwen Settlement Agreement at ¶ 26 (available at https://www.dllr.state.md.us/finance/consumers/pdf/ocwencd.pdf).

17.     On May 14, 2018, the Consumer Protection Division in the Office of the Attorney General for the State of Maryland ("CPD") agreed to an Assurance of Discontinuance with Nationstar ("Nationstar Assurance").  In the Nationstar Assurance CPD found that the mortgage servicer had violated the bar on the assessment of inspection fees in COM. LAW. § 12-121 and such violations constituted violations of the Maryland Consumer Protection Act, COM. LAW. § 13-101, *et seq*. ("MCPA"). A copy of the Nationstar Assurance is attached hereto as Exhibit 3.  As the agency charged to enforce the MCPA, the CPD's position is entitled to deference for its interpretation of the MCPA.  *Brown, Brown, & Brown P.C.*, 449 Md. at 359-360.

a.      In the Nationstar Assurance, Nationstar expressly agreed that its provisions "shall apply to Nationstar and the company's…successors, assignees…and all other persons acting

in concert or participating with any such company" including Shellpoint and Goldman Sachs.  Nationstar Assurance at ¶ 16.

  b. The Nationstar Assurance has never been modified to exempt Shellpoint or Goldman Sachs from its scope.

  18. Shellpoint has imposed and collected property inspection fees from other Maryland borrowers without the right to do and has disregarded all efforts challenging such practices because it wishes to retain the excessive profits of churning the fees onto the accounts of mortgage borrowers until a court tells it to stop in a final judgment of law.  This conclusion is supported in part by the following:

  a. The well pled allegations in ¶ 8 *supra*.  *See also* ECF 1-5, Affidavit of Amber Knight Costello.

  b. A publicly filed complaint to the OCFR by a Maryland consumer (i.e. complaint number 1075-2019 dated 6/28/2019) which found Shellpoint improperly imposed and collected a property inspection fee from a borrower and Shellpoint declined to refund the fee when challenged.

  c. A publicly filed Amended Complaint in the matter of *White v. NewRez LLC*, No. CV RDB-20-1259, 2020 WL 4748539 (D. Md. Aug. 17, 2020)(now pending in the Circuit Court for Anne Arundel County, Maryland which challenges Shellpoint's imposition of property inspection fees onto a mortgage borrower's account without the right to do so.  Shellpoint's motion to dismiss that complaint in the state court, in which Shellpoint asserted and relied on a claimed right to impose the fee was denied, and Shellpoint has refused its opportunity to timely cure the issue by refunding the fee imposed even though it had a legal duty under Federal law to perform a reasonable investigation into the borrower's dispute).

19.     Pursuant to 15 U.S.C.A. § 1638(f) and 12 C.F.R. § 1026.41, the Defendants have a duty of care, with respect to the residential mortgage loans of the Named Plaintiffs and the putative class and subclass members, to provide them periodic statements which conspicuously and prominently identify (i) the total sum of any fees or charges imposed by the Defendants since the prior billing statement incidental to the mortgage loan, (ii) a breakdown of how the Defendants applied fees and charges received incidental to the mortgage loan since the beginning calendar loan, and (iii) a transaction activity which itemizes a credit or debt to the amount claimed due and incidental to the mortgage loan by Defendants.  Because of the remedial purposes of 15 U.S.C.A. § 1638(f) and 12 C.F.R. § 1026.41 to provide conspicuous and prominent periodic statements to residential mortgage loan borrowers, the Defendants are not permitted to add fees and charges to the periodic statements of the residential mortgage loans of the Named Plaintiffs and the putative class and subclass members which are not imposed and charged to the Named Plaintiffs and putative class and subclass members' mortgage loans.  Maryland law incorporates these same requirements. COM. LAW § 12-106.

20.     Effective January 1, 2019, COM. LAW § 12-101(f) was amended by the General Assembly to also expressly include persons who are licensed, like Shellpoint, and other persons like Goldman Sachs, who are required to be licensed, as Maryland mortgage lenders (whether licensed or not as a mortgage lender).  *See e.g.* 2018 Maryland Laws Ch. 790 (H.B. 1297).  Under the prior definition, it has been held that COM. LAW § 12-101(f) applies to persons like Shellpoint and Goldman Sachs.  *Kemp*, 239 A.3d 798.  *See also Alexander v. Carrington Mortgage Services, LLC*, 2020 WL 7319252, at *7 (D.Md., 2020)(recognizing that a lender pursuant to COM. LAW § 12-101(f) for claims arising for violations of COM. LAW § 12-121 includes licensed servicers and mortgage assignees).

**Factual Allegations Relevant to the Parkers**

21.     The Parkers acquired the Parker Property on or about December 17, 1993.

22.     On or about December 7, 2005 the Parkers refinanced their prior mortgage loan with Homecomings Financial Network, Inc. ("HFN") related to the Parker Property by obtaining an extension of credit for the sum of $193,482.00 from HFN ("Parker Loan").  HFN shortly after December 7, 2005 assigned the Parker Loan to the Federal National Mortgage Association ("Fannie Mae").  Fannie Mae assigned the Parker Loan to Goldman Sachs on August 13, 2019. At the time of the assignment, Goldman Sachs authorized Nationstar Mortgage LLC d/b/a Mr. Cooper for collection on its behalf but thereafter engaged Shellpoint to become the collector of the Parker Loan as of October 4, 2019 on its behalf.

23.     In the Parker Loan's express terms and conditions, HFN and the Parkers agreed that the loan would be governed by Maryland law.  Specifically,

        a.     HFN and the Parkers agreed "[HFN and all of its assigns] may not charge fees that are expressly prohibited…by [controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions]."  *See* Deed of Trust at ¶ 14.

24.     Nationstar (on behalf of and with the authorization of Fannie Mae) and the Parker's later, partially modified that Parker Loan on December 14, 2009 ("Loan Modification").  In that partial modification, Nationstar and the Parkers agreed relevant to this dispute:

        a.     "That the [Parker Loan documents] are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed."  *See* Loan Modification at ¶ 4(E).

b.     "that all terms and provisions of the [Parker Loan documents], except as expressly modified by [the Loan Modification], remain in full force and effect...and that except as otherwise specifically provided in, and as expressly modified by, [the Loan Modification], the Lender and I will be bound by, and will comply with, all of the terms and conditions of the [Parker Loan documents]." *See* Loan Modification at ¶ 4(F).

25.     At no point did all authorized persons party to the Parker Loan ever agree to modify or change the specific terms described in ¶¶ 23(a) or 24(b) *supra*.  Fannie Mae, Nationstar, Shellpoint, and Goldman Sachs never entered into any written agreement with the Parkers or anyone else to permit them disclaim the responsibilities and obligations agreed to by HFN (and any of its successors) as described in ¶¶ 23(a) or 24(b) *supra.*

26.     Shellpoint and Goldman Sachs are aware of the terms and conditions of the Loan Modification because Shellpoint sent the Parkers a copy of it in correspondence dated June 11, 2020 and as successors and assignees of the Parker Loan as modified by the Loan Modification to Nationstar they are bound by its terms.  Further, as assigns and successors to the Nationstar Assurance, Shellpoint and Goldman Sachs are also bound by the terms and conditions of that agreement.  Finally, Shellpoint and Goldman Sachs are also aware of the Parker Loan documents' terms and conditions and may not disregard them.

27.      In a monthly, periodic statement to the Parkers from Shellpoint on behalf of Goldman Sachs dated November 13, 2019 it represented to them that it had charged and collected payment from them a fee for a property inspection that relates to the Parker Property and Parker Loan in the sum of $105.00 on November 8, 2019.

28.     In correspondence dated June 11, 2020 to the Parkers, Shellpoint with the authorization of Goldman Sachs also represented the $105.00 property inspection fee imposed and

collected by Shellpoint on November 8, 2019 related to the Parker Property and Parker Loan as part of is Loan History Summary.

29.     Nowhere in either the November 13, 2019 periodic statement to the Parkers or the June 11, 2020 Loan History Statement did Shellpoint claim or represent to the Parkers that it did not actually impose and collect from the Parkers the property inspection fee.  In fact Shellpoint claimed just the opposite in the November 13, 2019 periodic statement where it explained the total amount due from the Parkers included $105.00 for the property inspection fee and it itemized the transaction on the transaction activity portion of the same statement.  If Shellpoint and Goldman Sachs did not believe the Parkers owed this sum (but someone else owed it), then they had no right to assert such a claim to the Parkers on the periodic statement.     15 U.S.C.A. § 1638(f) and 12 C.F.R. § 1026.41.

30.     Neither did Shellpoint nor Goldman Sachs have any right to impose any property inspection fees on the Parker Loan and the Parkers, as represented by Shellpoint was done on the November 13, 2019 statement and the June 11, 2020 Loan History Summary because such fees are barred by Maryland Law (i.e. COM. LAW § 12-121(b), *Taylor*, 344 Md. at 584, and *Kemp*, 239 A.3d 798) and the Nationstar Assurance.  The inspection fee imposed and collected by Shellpoint on behalf of Golden Sachs was also not related to (i) either the construction of a new home on the Parker Property or any repairs, alternations, or other work required by Shellpoint or Goldman Sachs to the Parker Property, or (ii) any appraisal of the real property by Shellpoint or Goldman Sachs since the inspection was not conducted by a licensed Maryland appraiser but was completed by Shellpoint's vendor, Servicelink.

31.     As shown *supra*, by imposing fees—i.e., property inspection fees—related to the Parker Loan which the Defendants did not have a right to impose, the Parkers have been damaged

by the Defendants' illegal fee harvesting program which is designed simply to generate substantial revenue the Defendants do not have the right to collect.

32.     The Parker Loan is not satisfied.

33.     The Parkers have been damaged and sustained losses as a proximate cause of Shellpoint's improper, unfair, and/or deceptive practices in relation to the collection of the Parker Loan on behalf of Goldman Sachs including the payment and collection of inspection fees not permitted as a matter of Maryland law and the terms and conditions of the Parker Loan and the Nationstar Assurance.

34.     The Parkers are also entitled to statutory damages as discussed *infra*.

**CLASS ALLEGATIONS**

35.      The Named Plaintiffs bring certain claims, *infra*, on behalf of a class and subclass of similarly situated persons related to Defendant Shellpoint and Goldman Sachs under Fed.R.Civ.P. 23 defined as follows:

     a.      **Shellpoint Inspection Fee Usury Class:** The Parkers propose, as the definition of the **Shellpoint Inspection Fee Class**, that it be defined as follows**:**

> Those persons in the State of Maryland for whom (i) Shellpoint has acted as a maker or assignee of a mortgage loan related to a secured, mortgage loan at any time or a licensed mortgage servicer of a mortgage loan owner related to a secured, mortgage since January 1, 2019; (ii) where Shellpoint charged their mortgage loan accounts with property inspection fees and costs related to the mortgage loan; and (iii) the mortgage loan accounts had not been satisfied more than six months before the commencement of this action.

     b.      **Goldman Sachs Inspection Fee Usury Subclass:** The Parkers propose, as the definition of the **Goldman Sachs Inspection Fee Usury Subclass**, that it be defined as follows:

15

> Those members of the Shellpoint Inspection Fee Usury Class for whom Shellpoint collects the subject mortgage loans on behalf of Goldman Sachs.

36.    The Parkers qualify as members of each of the proposed class and subclass in the preceding paragraph.

37.    Excluded from each of the putative class and subclass are any person who falls within the definitions if the person is (i) an employee or independent contractor of Shellpoint or Goldman Sachs; (ii) a relative of an employee or independent contractor of the Shellpoint or Goldman Sachs; or (iii) an employee of the Court where this action is pending.

38.    The proposed class and subclass definitions in ¶ 35 as limited by ¶ 37 may be amended or modified from time to time.

39.    The particular members of the (i) Shellpoint Inspection Fee Usury Class and (ii) the Goldman Sachs Inspection Fee Usury Subclass (collectively referred to "**Proposed Class and Subclass**") are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Shellpoint or its affiliates and agents and from public records. Shellpoint is required to maintain this information for the entire class period. *See e.g.* Md. Code Regs. 09.03.06.04. Further, upon information and believe based on the experiences of the Parkers and public records discussed herein, the Defendants have a pattern and practice of representing to borrowers, including the Named Plaintiffs and the putative class and subclass members, that they owe the sums claimed on the periodic statements related to property inspection fees and the class and subclass members may be identified from these records as well.

40.    The Proposed Class and Subclass are sufficiently numerous and exceed more than fifty persons each, such that individual joinder of all members is impractical. This allegation is

based on a data search of public records which identify public complaints have been filed against Shellpoint showing that it services fifty or more residential, mortgage loans and was the maker of more than 50 loans in Maryland; and Goldman Sachs has accepted assignment of more than 50 loans of residential borrowers in the State of Maryland.    This allegation is also based on the representations and sworn statements of the Defendants in: (i) ECF. 1, Notice of Removal, (ii) ECF 1-5, Affidavit of Amber Knight Costello, and (iii) ECF. 6, Defendants' Responses to Standing Order Concerning Removal

41.    There are questions of law and fact common to the Proposed Class and Subclass which predominate over any questions affecting only individual members of the putative class and subclass. The wrongs alleged against Shellpoint and Goldman Sachs by the Proposed Class and Subclass members and the remedies sought by Named Plaintiffs and the putative class and subclass members against Shellpoint and Goldman Sachs are identical.

42.    The common questions of law or fact for the Shellpoint Inspection Fee Usury Class include but are not limited to:

a.    Whether Shellpoint qualifies as a "collector" as that term is defined under the MCDCA and is a person subject to the MCPA;

b.    Whether Shellpoint's conduct, directly or indirectly, violated the MCDCA and MCPA;

c.    Whether Shellpoint is entitled to demand property preservation and/or inspection fees on the mortgage loan accounts of the Shellpoint Inspection Fee Usury Class;

d.    Whether Shellpoint is entitled to demand property preservation and/or inspection fees on the mortgage loan accounts of the Shellpoint Inspection Fee Usury Class on behalf of Goldman Sachs and others;

e.      Whether Shellpoint is estopped from arguing that it is not subject to the property inspection fee bar stated in Com. Law § 12-121(b) as an assignee of Nationstar and Nationstar's agreement in the Nationstar Assurance;

f.      Whether this Court may declare that Shellpoint's practices and policies concerning the assessment of property preservation fees against the mortgage loan accounts of the Shellpoint Inspection Fee Usury Class members violate Com. Law § 12-121(b), *Taylor*, 344 Md. at 584, and *Kemp*, 239 A.3d 798;

g.      Whether the inspection fees charges by Shellpoint on behalf of Goldman Sachs on the Named Plaintiffs' and Shellpoint Inspection Fee Usury Class members' accounts constitute "interest" as that term is defined in Com. Law § 12-101(e) and therefore also constitute "usury" as that term is defined in Com. Law § 12-101(k); and

h.      Whether Shellpoint is liable for statutory damages pursuant to the Shellpoint Inspection Fee Usury Class members pursuant to Com. Law § 12-114(b)(1)(ii)  for each instance in which Shellpoint has imposed inspection fees onto the mortgage accounts of the Shellpoint Inspection Fee Usury Class members.

i.      Whether Shellpoint is liable for actual damages, attorneys' fees, and costs pursuant to the Shellpoint Inspection Fee Usury Class members under the MCDCA and MCPA for the sum of inspection fees imposed and collected from it related to the mortgage accounts of the Shellpoint Inspection Fee Usury Class members.

43.     The common questions of law or fact for the Goldman Sachs Inspection Fee Usury Subclass include but are not limited to:

a.      Whether Goldman Sachs qualifies as a "collector" as that term is defined under the MCDCA and is a person subject to the MCPA;

18

b.      Whether Goldman Sachs's conduct, directly or indirectly, violated the MCDCA and MCPA;

c.       Whether Shellpoint is acting as the authorized agent of Goldman Sachs in relation to the Goldman Sachs Inspection Fee Usury Subclass;

d.      Whether Goldman Sachs is estopped from arguing that it is not subject to the property inspection fee bar stated in COM. LAW § 12-121(b) as an assignee of Nationstar and Nationstar's agreement in the Nationstar Assurance;

e.      Whether Goldman Sachs is vicariously liable for the acts of Shellpoint on its behalf in relation to the Goldman Sachs Inspection Fee Usury Subclass members;

f.      Whether this Court may declare that Goldman Sachs' practices and policies concerning the assessment of inspection fees and costs against the mortgage loan accounts of the Goldman Sachs Inspection Fee Usury Subclass members violate COM. LAW § 12-121(b) and *Taylor*, 344 Md. at 584;

g.      Whether the inspection fees charged by Goldman Sachs to the Named Plaintiffs' and Goldman Sachs Inspection Fee Usury Subclass members' accounts constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitute "usury" as that term is defined in COM. LAW § 12-101(k); and

h.      Whether Goldman Sachs is liable for statutory damages pursuant to the Goldman Sachs Inspection Fee Usury Subclass members pursuant to COM. LAW § 12-114(b)(1)(ii) for each instance in which Goldman Sachs has imposed, directly or indirectly, improper inspection fees upon the Goldman Sachs Inspection Fee Usury Subclass members.

       i.     Whether Goldman Sachs is liable for actual damages, attorneys' fees, and costs pursuant to the Shellpoint Inspection Fee Usury Class members under the MCDCA and MCPA for the sum of inspection fees imposed and collected from it related to the mortgage accounts of the Shellpoint Inspection Fee Usury Class members.

44.    Shellpoint's and Goldman Sachs' defenses (which defenses are denied) would be typical or identical for each of the member of Proposed Class and Subclass and will be based on the same legal and factual theories.

45.    Certification of the Proposed Class and Subclass under Fed.R.Civ.P. 23 is appropriate as to the members of the Proposed Class and Subclass in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy.

46.    A class action will cause an orderly and expeditious administration of claims by the members of the Proposed Class and Subclass and economies of time, effort and expenses will be fostered and uniformity of decisions will be insured.

47.    The only individual questions concern the identification of members of Proposed Class and Subclass.  This information can be determined by a ministerial examination of public records or from Shellpoint's business records or other sources, which are admissible as an exception to the hearsay rule and as a statement by a party.

48.    The Named Plaintiffs' class and subclass claims are typical of the claims of the Proposed Class and Subclass pursuant to Fed.R.Civ.P. 23 since they are based on and arise out of identical facts constituting the wrongful conduct of the Shellpoint and Goldman Sachs (directly and indirectly).

49.     The Parkers will also fairly and adequately represent and protect the interests of the Proposed Class and Subclass.  The Parkers are similarly situated with, and have suffered similar injuries as, the Proposed Class and Subclass they propose to represent. They have also retained counsel experienced in consumer class actions including actions involving unlawful collection and mortgage servicing practices.  The Parkers do not have any interests which might cause them not to vigorously prosecute this action or are otherwise adverse to the interests of the members of the Proposed Class and Subclass. They feel that they and the putative class and subclass members have been wronged, wish to obtain redress of the wrong, and want Shellpoint and Goldman Sachs stopped from failing to comply with its mandatory duties that form the basis of the class claims.

50.     The Proposed Class and Subclass members have suffered actual damages, losses, and harm similar to those sustained by the Parkers, including statutory damages.

### COUNT I: CLAIM PURSUANT TO COM. LAW § 12-114(a)(1)(ii)
#### (On behalf of the Plaintiffs Individually and
on behalf of the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass)

51.      The Parkers adopt by reference the factual allegations contained in the preceding paragraphs of this Amended Complaint with the same effect as if herein fully set forth.  This claim is brought on behalf of the Parkers individually and as the Named Plaintiffs on behalf of the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass against Shellpoint and Goldman Sachs respectfully.

52.      As the maker and/or servicer of the Named Plaintiffs' and Shellpoint Inspection Fee Usury Class members' loans, Shellpoint qualifies as a lender pursuant to COM. LAW § 12-101(f).

53.      As the maker and/or assignee of the Named Plaintiffs' and Goldman Sachs Inspection Fee Usury Subclass, Goldman Sachs qualifies as a lender pursuant to COM. LAW § 12-101(f).

54.     COM. LAW § 12-121(b), *Taylor*, 344 Md. at 584, and *Kemp*, 239 A.3d 798 prohibit a lender (and/or its assignee) or servicer from imposing fees related to property inspections onto the Named Plaintiffs' and Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass members' mortgage loans after the origination of the subject loans.  COM. LAW § 12-121 does not exempt Shellpoint or Goldman Sachs from its express prohibition.

55.     The mortgage contracts governing the relationships between the Named Plaintiffs' and Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass members' also incorporate all Maryland laws and judicial decisions and have not been modified to disavow Maryland law in any respect.  Such amendments would not be enforceable even if they existed (and they do not) since the Named Plaintiffs' and Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass members' loans are all located in Maryland.

56.     Shellpoint and Goldman Sachs were not entitled to require any charge to the mortgage loan accounts of the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass members' mortgage loans related to a purported inspection fee of the borrowers' property but did so anyway in violation of COM. LAW § 12-121(b), *Taylor*, 344 Md. at 584, and *Kemp*, 239 A.3d 798.

57.     Subtitle I of Title 12 of the Commercial Law Article barred defendants from imposing and collecting the property inspection fee since "usury" is defined broadly as charging an amount in "interest" greater than what Subtitle 1 permits and "interest" likewise is broadly defined as including not only the interest charged on a loan, but also other fees and charges.  *See e.g.* COM. LAW § 12-101(e)(m).  Charging the Named Plaintiffs and putative class and subclass members with property inspection fees barred by COM. LAW § 12-121(b) are charges in an amount greater

than allowed under Maryland law and subject to claims asserted by the named Plaintiffs and the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass members' pursuant to COM. LAW § 12-114(a)(1)(ii).  *See also Kemp*, 239 A.3d at 808.

58.    At all times relevant and material to this action, Shellpoint and Goldman Sachs have known or should have known that neither were permitted to require the imposition of inspection fees to the mortgage accounts of the Named Plaintiffs and the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass members' mortgage loans since all persons are expected to know the law.

59.    COM. LAW § 12-114(a)(1)(ii) provides that Shellpoint shall forfeit to borrowers like the Named Plaintiffs and Shellpoint Inspection Fee Usury Class members the sum of $500 for any violation, including the assessment of so-called inspection fees, of the subtitle including COM. LAW § 12-121(b).

60.    COM. LAW § 12-114(a)(1)(ii) provides that Goldman Sachs shall forfeit to borrowers like the Named Plaintiffs and the Goldman Sachs Inspection Fee Usury Subclass members the sum of $500 for any violation, including the assessment of so-called inspection fees, of the subtitle including COM. LAW § 12-121(b).

61.    Goldman Sachs is also vicariously liable for the damages sustained by the Goldman Sachs Inspection Fee Usury Subclass as a result of Shellpoint's actions in violation of COM. LAW § 12-121(b) on its behalf in relation to the Goldman Sachs Inspection Fee Usury Subclass.

62.    The Named Plaintiffs and Shellpoint Inspection Fee Usury Class members are entitled to the sum of $500 for each instance in which Shellpoint has imposed inspection fees against the mortgage loan accounts of the Named Plaintiffs and the Shellpoint Inspection Fee Usury Class

members in violation of COM. LAW § 12-121(b) whether the Named Plaintiffs and Shellpoint Inspection Fee Usury Class members paid the assessment or not.

63.     The Named Plaintiffs and Goldman Sachs Inspection Fee Usury Subclass members are entitled to the sum of $500 for each instance in which Goldman Sachs has imposed, directly or indirectly, inspection fees against the mortgage loan accounts of the Named Plaintiffs and the Goldman Sachs Inspection Fee Usury Subclass members in violation of COM. LAW § 12-121(b) whether the Named Plaintiffs and Goldman Sachs Inspection Fee Usury Subclass members paid the assessment or not.

### COUNT II: VIOLATIONS OF MARYLAND'S CONSUMER DEBT COLLECTION ACT("MCDCA"), COM. LAW § 14-201, *et seq., &* MARYLAND CONSUMER PROTECTION ACT ("MCPA"), COM. LAW §§ 13-101 *et seq.* (On behalf of the Plaintiffs Individually and on behalf of the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass alternatively to the claims asserted in Count I)

64.     The Parkers adopt by reference the factual allegations contained in the preceding paragraphs of this Amended Complaint with the same effect as if herein fully set forth.  This claim is brought on behalf of the Parkers individually and as the Named Plaintiffs on behalf of the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass against Shellpoint and Goldman Sachs respectfully.  This count is brought in the alternative pursuant to Fed. R. Civ. P. 8(d) to the relief sought in Count I of this pleading.

65.     At all times described herein since October 1, 2018, Shellpoint and Goldman Sachs have acted as collectors by directly or indirectly using methods of collection through the imposition and collection of property inspection fees that are barred as a matter of law onto the mortgage accounts of borrowers such as the Parkers and members of the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass.

66.    The Named Plaintiffs' and the Proposed Class and Subclass members' mortgage loans were used for personal, consumer purposes related to their Property.  Com. Law §14-201(b).

67.    Shellpoint and Goldman Sachs are aware of the Federal and State laws governing its activities described herein but recklessly disregarded those laws and duties without any consideration of the negative consequences to the Parkers or Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass members respectfully.

68.    Shellpoint, directly and on behalf of Goldman Sachs and others indirectly, also attempted to collect and did in fact collect unlawful property inspection fees from the Named Plaintiffs and the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass members in violation of Maryland law which governs their mortgage loans.

69.    Maryland's debt collection and mortgage lending laws and Shellpoint's and Goldman Sachs' duties under Maryland and Federal law do not permit them to utilize methods and means of collection not permitted by law or the relationship governing the parties.  Shellpoint and Goldman Sachs know the law.  However, each knowingly and recklessly attempted to interfere or otherwise infect the Parker's and the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass members' rights on the basis of alleged sums not lawfully due.  By such acts Shellpoint and Goldman Sachs have engaged in conduct which violates §§ 804 through 812 of the Federal Fair Debt Collection Practices Act including but not limited to 15 U.S.C. §§ 1692e, § 1692f. Com Law §14- 202(11).

70.    Shellpoint's and Goldman's violations of the MCDCA are also *per se* violations of the MCPA.  Com. Law § 13-301(14)(iii).

71.     The mortgage loan servicing and collection practices described herein by Shellpoint and Goldman Sachs, as set forth herein, are governed by the Maryland Consumer Protection Act ("MCPA"), COM. LAW. § 13-101, *et seq*.

72.     COM. LAW. § 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts. The collection and attempted collection of the property inspection fees by Shellpoint and Goldman Sachs (indirectly through its agent Shellpoint) from the Named Plaintiffs and the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass members related to the Defendants' consumer, debt collection practices involves both the extension of credit and the collection of debts.

73.     COM. LAW. § 13-303 also prohibits unfair or deceptive trade practices in the sale or provision of consumer services, such as those provided by Shellpoint on its behalf and on behalf of Goldman Sachs in relation to the Named Plaintiffs and the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass members.

74.     The MCPA defines unfair or deceptive trade practices to include, *inter alia*, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive.  COM. LAW §§13-301(1) and (3).

75.     Shellpoint's and Goldman Sachs' acts and omissions described hereininclude but are not limited to seeking and demanding and collecting property inspection fees not lawfully imposed on Maryland borrowers and therefore not due from the Parkers and the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass members, constitutes

unfair and deceptive trade practices in violation of COM. LAW § 13-301(1)(3) and COM. LAW §§13-303(4)(5).

76.     The Parkers and the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass members reasonably relied upon the direct and indirect material acts, actions, and omissions of Shellpoint and Goldman Sachs as exemplified *supra* and further demonstrated herein (i) by their communications with Shellpoint and Goldman Sachs, and (ii) their payment of the illegal property inspection fees fees demanded by Shellpoint and Goldman Sachs through Shellpoint.  Shellpoint's acts and omissions, on its behalf and on behalf of Goldman Sachs, are simply unreasonable, unfair, abusive, and deceptive.

77.     Had Shellpoint and Goldman Sachs not acted unfairly and deceptively, the Parkers and the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Sub-class members would not have suffered the damages and losses they have described *supra.*

78.     Plaintiffs have pled sufficient facts to put Shellpoint and Goldman Sachs on notice as to the claims against each as exemplified *supra* (i.e. dates of key acts and representations of Shellpoint and Goldman Sachs and its agents and representatives and platforms; and the regulatory and statutory duties of Shellpoint and Goldman Sachs) which each simply ignored and thereby infected the subject transactions to ensure harm and damage to the Parkers and the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass members.

79.     In the alternative that the Court finds Goldman Sachs is not directly or vicariously liable  to the Parker's claims under the MCDCA and MCPA for the acts and omissions of Shell-point on its behalf, Goldman Sachs is liable for the acts and omissions under the pursuant to the doctrine of *respondeat superior* for the acts and omissions of Shellpoint acting on its behalf since it engaged and authorized Shellpoint to communicate with the Parkers and the Goldman Sachs

Inspection Fee Usury Subclass members in relation to their mortgages subject to this action and did not utilize reasonable standards and methods to ensure that Shellpoint was not imposing and collecting sums from its customers which are not permitted under Maryland laws governing its relationship with the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass members.

## PRAYERS FOR RELIEF

A. WHEREFORE, Pursuant to Count I of this Amended Class Action Complaint, Named Plaintiffs request the Court to certify the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass pursuant to Fed.R.Civ.P. 23 and appoint the Named Plaintiffs as class representatives and the undersigned counsel as Class Counsel for the class and subclass;

B. WHEREFORE, Pursuant to Count I of this Amended Class Action Complaint, Named Plaintiffs and the Shellpoint Inspection Fee Usury Class members ask this Court to determine the issue of Shellpoint's liability to the Shellpoint Inspection Fee Usury Class members and grant a money judgment in their favor and against Shellpoint and order Defendant Shellpoint to pay and forfeit pursuant to COM. LAW § 12-114(a)(1)(ii) to the Named Plaintiffs and the Shellpoint Inspection Fee Usury Class members $500 for each violation of COM. LAW § 12-121(b) and reasonable attorney fees and costs for the imposition of property inspection fees by it onto the accounts of the Named Plaintiffs and the Shellpoint Inspection Fee Usury Class members in a total sum in excess of $75,000.00 (on a aggregated

basis for the Plaintiffs and Shellpoint Inspection Fee Usury Class members).

C.  WHEREFORE, Pursuant to Count I of this Amended Class Action Complaint, Named Plaintiffs and the Goldman Sachs Inspection Fee Usury Subclass members ask this Court to determine the issue of Goldman Sachs' liability to the Goldman Sachs Inspection Fee Usury Subclass members and grant a money judgment in their favor and against Goldman Sachs and order Defendant Goldman Sachs to pay and forfeit pursuant to COM. LAW § 12-114(a)(1)(ii) to the Named Plaintiffs and the Goldman Sachs Inspection Fee Usury Subclass members $500 for each violation of COM. LAW § 12-121(b) and reasonable attorney fees and costs for the assessment of property inspection fees to it, directly or indirectly, in a total sum in excess of $75,000.00 (on a aggregated basis for the Plaintiffs and the Goldman Sachs Inspection Fee Usury Subclass members).  In the alternative, Named Plaintiffs and the Goldman Sachs Inspection Fee Usury Subclass request that the Court find Goldman Sachs vicariously liable to Goldman Sachs Inspection Fee Usury Subclass members for the statutory damages they are entitled to as a result of Shellpoint's violations on behalf of Goldman Sachs.

D.  WHEREFORE, Pursuant to Count II of this Amended Class Action Complaint and in the alternative to the relief sought in Count I, Named Plaintiffs request the Court to certify the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass pursuant to

Fed.R.Civ.P. 23 and appoint the Named Plaintiffs as class representatives
and the undersigned counsel as Class Counsel for the class and subclass;

E.   Pursuant to Count II of this Amended Class Action Complaint and in the
alternative to the relief sought in Count I, Named Plaintiffs and the Shell-
point Inspection Fee Usury Class members ask this Court to determine
the issue of Shellpoint's liability to the Shellpoint Inspection Fee Usury
Class members under the MCDCA and MCPA and award (i) actual dam-
ages for its violations of COM LAW §14-202(11), COM. LAW § 13-
301(1)(3), and COM. LAW §§13-303(4)(5) pursuant to COM. LAW § 14-
203 and COM. LAW § 14-408 in a sum in excess of $75,000 (on a aggre-
gated basis for the Plaintiffs and Shellpoint Inspection Fee Usury Class)
and (ii) reasonable attorney fees and reasonable costs as permitted and
authorized by COM. LAW § 13-301(14)(iii) and COM. LAW § 13-408(b).

F.   Pursuant to Count II of this Amended Class Action Complaint, Named
Plaintiffs and the Goldman Sachs Inspection Fee Usury Subclass mem-
bers also ask this Court to determine the issue of Goldman Sachs' liability
to the Goldman Sachs Inspection Fee Usury Subclass under the MCDCA
and MCPA and award (i) actual damages for its violations of COM LAW
§14-202(11), COM. LAW § 13-301(1)(3), and COM. LAW §§13-303(4)(5)
pursuant to COM. LAW § 14-203 and COM. LAW § 14-408 in a sum in
excess of $75,000 (on a aggregated basis for the Plaintiffs and Goldman
Sachs Inspection Fee Usury Subclass members) and (ii) reasonable attor-
ney fees and reasonable costs as permitted and authorized by COM. LAW

§ 13-301(14)(iii) and COM. LAW § 13-408(b).

G.   WHEREFORE, Named Plaintiffs request the Court provide such other or fur-

ther relief as the Court deems appropriate including attorney fees and

costs in relation to Count of this Complaint.

Respectfully submitted,

*/s/ Phillip R. Robinson*
Phillip R. Robinson
Bar No. 27824
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
(301) 448-1304

*Attorneys for the Plaintiffs and Classes*

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing and attached Exhibits were sent to all par-

ties and counsel of record in this matter when filed with the Court's CM/ECF system.  I further

certify that a paper copy of the same will be hand delivered to the Court within 48 hours of the

filing in care of the Clerk of the Court.

*/s/ Phillip R. Robinson*
Phillip R. Robinson