**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

| | |
|---|---|
| **MICHAEL T. PARKER**<br>and<br>**PATRICE PARKER**<br><br>*On behalf of themselves individually and similarly situated persons.*<br><br>     Plaintiffs,<br><br>v.<br><br>**GOLDMAN SACHS MORTGAGE COMPANY LIMITED PARTNERSHIP**<br>and<br>**NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING**<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No.: 8:20-cv-03581-GJH<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS GOLDMAN SACHS AND SHELLPOINT MORTGAGE SERVICING'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND MOTION TO STRIKE CLASS ALLEGATIONS**

Dated: January 14, 2020

Respectfully submitted,

/s/ Andrew J. Narod
Andrew J. Narod (Federal Bar No. 29738)
John E. Goodman (To Be Admitted Pro Hac Vice)
**BRADLEY ARANT BOULT CUMMINGS LLP**
1615 L Street, N.W.
Suite 1350
Washington, DC 20036
P: (202) 719-8271
F: (202) 719-8371
anarod@bradley.com
jgoodman@bradley.com

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND ...............................................................................3

PROCEDURAL BACKGROUND........................................................................4

LEGAL STANDARDS ........................................................................................5

ARGUMENT .......................................................................................................6

I.   THE COURT SHOULD DISMISS COUNT I BECAUSE DEFENDANTS ARE NOT LENDERS UNDER C.L. § 12-121(b), AND THE USURY STATUTE DOES NOT APPLY TO PROPERTY INSPECTION FEES ...................................................6

   A.   Goldman Sachs And Shellpoint Are Not "Lender[s]" Under C.L. § 12-121(b) .....6

   B.   CL § 12-121(b) Is Not A "Usury Provision" Under CL § 12-114........................11

II.  THE COURT SHOULD DISMISS COUNT II BECAUSE DEFENDANTS DO NOT FALL WITHIN THE PURVIEW OF THE MCDCA OR THE FDCPA, AND PLAINTIFFS HAVE FAILED TO STATE A STANDALONE CLAIM UNDER THE MCPA ...................................................................................................13

   A.   Plaintiffs Fail To State A Claim For Violation Of The Maryland Consumer Debt Collection Act ............................................................................................13

      i.   Plaintiffs' claims under the MCDCA solely challenge the validity of the underlying property inspection fee, not the methods of collection ...............14

      ii.  The MCDCA does not apply to Defendants because they are not "debt collectors" under the MCDCA ...............................................................15

         a.   *Defendant Shellpoint is not a "debt collector" under the MCDCA* ..........16

         b.   *Defendant Goldman Sachs is not a "debt collector" under the MCDCA*  18

         c.   *Even if Defendants are "debt collectors" under the MCDCA, the "debt" was not invalid under Maryland law* ........................................................19

      iii. Even if the MCDCA applies, Defendants have not violated the FDCPA.........20

         a.   *The FDCPA does not apply to Defendants because Defendants were not acting as "debt collectors" under well-settled FDCPA jurisprudence* .....21

         b.   *Defendants are not "debt collector[s]" because Plaintiffs' mortgage loan is not alleged to be in default* ...................................................................25

      iv.  Because Plaintiffs' claim under the FDCPA fails as a matter of law, so does their claim under the MCDCA ..................................................................26

   B.   Plaintiffs Fail To State A Claim For Violation Of The Maryland Consumer Protection Act (MCPA) ......................................................................................27

i.    Plaintiffs claim under C.L. § 13-301(14)(iii) fails because Plaintiffs have failed to state a claim under the MCDCA..................................................................27

ii.   Plaintiffs have failed to state a standalone claim under C.L. § 13-301(1)(3), and §13-303(4)(5) ...............................................................................................28

   a.   *Plaintiffs have not alleged that Defendants engaged in or made an "unfair or deceptive practice or misrepresentation."* ..........................................28

   b.   *Defendants are not barred from charging property inspection fees under C.L. § 12-121, and even if they are, Defendants charged the fee in good faith reliance upon existing law at the time of the representation*............30

III.   THE COURT SHOULD STRIKE THE CLASS ALLEGATIONS BECAUSE BOTH OF PLAINTIFFS' INDIVIDUAL CLAIMS FAIL AS A MATTER OF LAW.....................32

CONCLUSION...................................................................................................................33

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings, LLC*,
    929 F. Supp. 2d 502 (D. Md. 2013) ...................................................................17

*Adle-Watts v. Roundpoint Mortgage Servicing Corp.*,
    No. 1:14-cv-400-CCB, 2016 WL 3743054 (D. Md. July 13, 2016) ...............................13

*Allen v. Bank of America, N.A.*,
    933 F. Supp. 2d 716 (D. Md. 2013) .................................................................17

*Alexander v. Carrington Mortg. Servs., LLC*,
    No. 1:20-cv-2369-RDB, 2020 WL 7319252 (D. Md. Dec. 11, 2020) ....... 14-17, 19, 27, 28

*Amenu-El v. Select Portfolio Servs.*,
    No. 1:18-cv-2008-RDB, 2017 WL 4404428 (D. Md. Oct. 4, 2017) ...............................13

*Anderman v. JP Morgan Chase Bank, NA*,
    803 F. App'x 290 (11th Cir. 2020) ..................................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................5

*Austin v. Lakeview Loan Servicing, LLC*,
    No. RDB-20-1296, 2020 WL 7256564 (D. Md. Dec. 10, 2020) ...............................26, 27

*Awah v. Capital One Bank, N.A.*,
    No. 8:14-cv-1288-DKC, 2016 WL 930975 (D. Md. Mar. 11, 2016) ...............................15

*Awah v. Capital One Bank, NA*,
    668 F. App'x 463 (4th Cir. 2016) .....................................................................15

*Ayres v. Ocwen Loan Servicing, LLC*,
    No. 8:13-cv-1597-WDQ, 2014 WL 4269051 (D. Md. Aug. 27, 2014) ...........................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................5

*Best v. Newrez LLC*,
    No. 8:19-cv-2331-GJH, 2020 WL 5513433 (D. Md. Sept. 11, 2020) ...........................13

*Bourgeois v. Live Nation Entm't, Inc.*,
    3 F. Supp. 3d 423 (D. Md. 2014) .....................................................................29

*Bridge v. Ocwen Federal Bank, FSB,*
    681 F.3d 355 (6th Cir. 2012) .........................................................25

*Britt v. Seledee Law Grp., LLC,*
    No. CV RDB-19-3446, 2020 WL 1984904 (D. Md. Apr. 27, 2020).............................21

*Buechler v. Your Wine & Spirit Shoppe, Inc.,*
    846 F.Supp.2d 406 (D. Md. 2012), *aff'd* 479 Fed.Appx. 497 (4th Cir. 2012)....................4

*Collins v. Village of Palatine,*
    875 F.3d 839 (7th Cir. 2017) .........................................................32

*Crowley v. JPMorgan Chase Bank, Nat'l Ass'n,*
    No. 1:15-cv-0607-RDB, 2015 WL 6872896 (D. Md. Nov. 9, 2015) .........................16, 18

*Currie v. Wells Fargo Bank, N.A.,*
    950 F. Supp. 2d. 788 (D. Md. 2013) .................................................18

*Ellis v. Palisades Acquisition XVI LLC,*
    No. 1:18-cv-03931-JKB, 2019 WL 3387779 (D. Md. July 26, 2019)............................13

*Ervin v. JP Morgan Chase Bank, N.A.,*
    No. 1:30-cv-2080-GLR, 2014 WL 4052895 (D. Md. Aug. 13, 2014)...........................16

*Flournoy v. Rushmore Loan Mgmt. Servs., LLC,*
    No. 8:19-cv-00407-PX, 2020 WL 1285504 (D. Md. Mar. 17, 2020)...... 6, 8-10, 16, 31, 32

*Fontell v. Hassett,*
    870 F. Supp. 2d 395 (D. Md. 2012) .................................................14, 15

*Hately v. Watts,*
    917 F.3d 770 (4th Cir. 2019) .........................................................6

*Healy v. BWW Law Group, LLC,*
    No. 8:15-cv-3688-PWG, 2017 WL 281997 (D. Md. Jan. 23, 2017) .............................19

*Henson v. Santander Consumer USA, Inc.,*
    No. 1:12-cv-3519-RDB, 2014 WL 1806915 (D. Md. May 6, 2014)...........................16, 17

*Henson v. Santander Consumer USA, Inc.,*
    817 F.3d 131 (4th Cir. 2016) .........................................................17, 19, 21

*Henson v. Santander Consumer USA, Inc.,*
    137 S. Ct. 1718 (U.S. 2017)..........................................................19, 21, 22

*Kennedy v. Lendmark Fin. Servs.*,
　　No. 1:10-cv-02667-RDB, 2011 WL 4351534 (D. Md. Sept. 15, 2011), *aff'd*
　　458 F. App'x 262 (4th Cir. 2011) ..................................................................................24

*Lembach v. Bierman*,
　　Nos. 12-1723, 12-1746, 528 F. App'x 297 (4th Cir. 2013)........................................19, 28

*Marchese v. JPMorgan Chase Bank, N.A.*,
　　917 F. Supp. 2d 452 (D. Md. 2013) ................................................................................28

*Miller v. Pac. Shore Funding*,
　　224 F. Supp. 2d 977, 988 (D. Md. 2002), *aff'd,* 92 F. App'x 933 (4th Cir. 2004).......28, 29

*Morgan v. Caliber Home Loans, Inc.*,
　　No. 8:19-cv-02797-PX, 2020 WL 3073319 (D. Md. June 10, 2020) ..............................32

*Moss v. Ditech Fin., LLC*,
　　No. 8:15-2065-PWG, 2016 WL 4077719 (D. Md. Aug. 1, 2016)....................................24

*Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*,
　　918 F.3d 312 (4th Cir. 2019) ...........................................................................................5

*Peete-Bey v. Educ. Credit Mgmt. Corp.*,
　　131 F. Supp. 3d 422 (D. Md. 2015) ................................................................................29

*Piotrowski v. Wells Fargo Bank, N.A.*,
　　No. 8:11-cv-3758, 2013 WL 247549 (D. Md. Jan. 22, 2013) ..........................................18

*Pruitt v. Alba Law Group, P.A.*,
　　No. 8:15-cv-0458-DKC, 2015 WL 5032014 (D. Md. Aug. 24, 2015) .............................14

*Robinson v. Fay Servicing, LLC*,
　　No. 1:18-cv-2710-RDB, 2019 WL 4735431 (D. Md. Sept. 27, 2019) ..................... *passim*

*Roos v. Seterus, Inc.*,
　　No. 1:18-cv-3970-RDB, 2019 WL 4750418 (D. Md. Sept. 30, 2019) ..................... *passim*

*Saunders v. Capital One Bank (USA), N.A.*,
　　No. 8:18-cv-03222-PWG, 2019 WL 2869655 (D. Md. July 3, 2019)..............................24

*Seghetti v. Flagstar Bank, FSB*,
　　No. 1:16-cv-519-ELH, 2016 WL 3753143 (D. Md. July 13, 2016).................................16

*Shah v. Collecto, Inc.*,
　　No. 8:04-cv-4059-DKC, 2005 WL 2216242 (D. Md. Sept. 12, 2005).............................19

*Smith v. Cohn, Goldberg & Deutsch, LLC*,
    296 F. Supp. 3d 754 (D. Md. 2017) ..................................................................21

*Spencer v. Henderson-Webb, Inc.*,
    81 F. Supp. 2d 582 (D. Md. 1999) ..................................................................18

*Sterling v. Ourisman Chevrolet of Bowie Inc.*,
    943 F. Supp. 2d 577 (D. Md. 2013) ................................................................13

*Stewart v. Bierman*,
    859 F. Supp. 2d 754 (D. Md. 2012), *aff'd* 528 F. App'x 297 (4th Cir. 2013) ..................28

*Suazo v. U.S. Bank Trust, NA*,
    No. 1:12-cv-1451-RDB, 2019 WL 4673450 (D. Md. Sept. 25, 2019) ..........6, 8, 10, 30, 31

*Torliatt v. Ocwen Loan Servicing, LLC*,
    No. 19-cv-04303-WHO, 2020 WL 1904596 (N.D. Cal. Apr. 17, 2020) ..........................24

*Willner v. Dimon*,
    849 F.3d 93 (4th Cir. 2017) ..............................................................................5

*Wilson v. TelAgility Corp.*,
    No. 1:17-cv-1236-GLR, 2019 WL 2410963 (D. Md. June 7, 2019) ..................................4

**State Cases**

*Barbe v. Pope*,
    935 A.2d 699 (Md. 2007) ..................................................................................7

*Blue v. Prince George's Cty.*,
    76 A.3d 1129 (Md. 2013) ................................................................................10

*Chavis v. Blibaum Assocs., P.A.*,
    230 A.3d 188 (Md. Ct. Spec. App. 2020), *cert. granted sub nom.*
    *Chavis v. Blibaum & Assoc, P.A.*, 240 A.3d 852 (Md. Oct. 6, 2020)..........................31, 32

*Jones v. State*,
    38 A.3d 333 (Md. 2012) ..................................................................................10

*Kemp v. Nationstar Mortg. Ass'n*,
    239 A.3d 798 (Md. 2020), *cert. granted* (Nov. 23, 2020) ........................................6, 8-11

*Lloyd v. Gen. Motors Corp.*,
    916 A.2d 257 (Md. 2007) ................................................................................28

*Long Green Valley Ass'n v. Bellevale Farms, Inc.*,
    68 A.3d 843 (Md. 2013) ...................................................................10

*Oglesby v. State*,
    441 Md. 673 (2015) ........................................................................12

*Pepsi Bottling Grp. v. Plummer*,
    130 A.3d 1047 (Md. Ct. Spec. App. 2016) .......................................7

*Pines Plaza Ltd. P'ship v. Berkley Trace, LLC*,
    66 A.3d 720 (Md. 2013) ...................................................................9

*Plank v. Cherneski*,
    469 Md. 548 (2020) ........................................................................10

*Ray v. State*,
    978 A.2d 736 (Md. 2009) .................................................................7

*State v. Weems*,
    429 Md. 329 (2012) ........................................................................12

*Taylor v. Friedman*,
    689 A.2d 59 (Md. 1997) ..............................................................9-12

*Tribbit v. State*,
    943 A.2d 1260 (Md. 2008) ...............................................................7

*Whiting-Turner Contracting Co. v. Fitzpatrick*,
    783 A.2d 667 (Md. 2001) .................................................................7

**Federal Statutes**

    12 U.S.C. § 1719(a)(2)......................................................................7
    12 U.S.C. § 2605(i)(3) ....................................................................17
    15 U.S.C. § 1692a .....................................................................21-26
    15 U.S.C. § 1692e ...............................................................21, 23, 25
    15 U.S.C. § 1692f ...............................................................21, 23, 25

**State Statutes**

MD. CODE ANN., COM. LAW
    § 12-101 .............................................................................2, 7, 8, 12
    § 12-114 .......................................................................2, 4-6, 11, 12
    § 12-121 ................................................................................. *passim*
    § 12-122 ...........................................................................11, 12
    § 13-301 ....................................................................3, 13, 27, 28

§ 13-303 ....................................................................................................3, 27, 28, 30
§ 13-408 ..............................................................................................................5
§ 14-201 ................................................................................................4, 5, 13, 16, 25
§ 14-202 ..........................................................................................2, 13-16, 18, 26, 27
§ 14-203 ..............................................................................................................5

MD. CODE ANN., REAL PROP.
§ 2-103 ................................................................................................................9

**Rules**

FEDERAL RULE OF CIVIL PROCEDURE
12(b)(6) ........................................................................................................3, 5, 6
12(f)..............................................................................................................3, 32
23........................................................................................................................3, 32

**Other Authorities**

6 Charles Alan Wright et al., *Federal Practice & Procedure*
§ 1476 (3d ed. 2010) ....................................................................................4

Defendants Goldman Sachs Mortgage Company Limited Partnership d/b/a Goldman Sachs Mortgage Company ("Goldman Sachs") and NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") (collectively "Defendants"), by and through undersigned counsel, and pursuant to Federal Rules of Civil Procedure 12 and 23, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiffs Michael and Patrice Parker's (collectively "Plaintiffs") Amended Class Action Complaint, in its entirety and with prejudice, and Motion to Strike Plaintiffs' class allegations. In support, Defendants state as follows.

## INTRODUCTION

This case is a class action brought by Plaintiffs, borrowers under a home mortgage loan, against Shellpoint and its investor on the loan, Goldman Sachs. Plaintiffs, themselves being the "Named Plaintiffs," seek recovery on behalf of a putative class of Maryland borrowers. Plaintiffs challenge a property inspection fee, allegedly assessed upon the Plaintiffs for inspection of their property after the origination of the subject mortgage loans.[1] Property inspections in connection with residential mortgages are typically a product of a borrower's delinquency, for the purpose of protecting a lender's interest in the property and its rights under a mortgage or other instrument securing the loan. Property inspections are performed to ensure that the property is still occupied and being maintained by the borrower, as abandoned properties can deteriorate quickly and jeopardize their value as collateral for the mortgage loan.

Here, Plaintiffs allege that they were charged a fee relating to property inspections. Plaintiffs allege that this fee is properly considered interest under Maryland's Usury Statute,[2] and

---

[1] Plaintiffs' original Complaint, filed in the Circuit Court for Montgomery County, Maryland, alleged statutory violations stemming from Defendants' alleged imposition of convenience fees and property inspection fees. *See* Dkt. No. 2. Plaintiffs' have since filed an Amended Complaint that is the subject of this Motion, removing all allegations concerning convenience fees. *See* Dkt. No. 7.

[2] As used in this Motion to Dismiss, the use of "Usury Statute" refers to Title 12 of Maryland's Commercial Law, although several provisions in Title 12 do not refer to usury, or interest rates at all. *See* C.L. § 12-101, *et seq*.

the imposition of the fees is therefore in violation of that statute. Plaintiffs seek a $500 statutory penalty for the imposition of each such property inspection fee from January 1, 2019 forward (as to loans which were not paid off or satisfied as of April 30, 2020). Plaintiffs additionally and alternatively challenge certain representations and statements allegedly made by Defendants in connection with the alleged property inspection fee, and allege violations of Maryland's Consumer Debt Collection Act ("MCDCA") and Maryland's Consumer Protection Act ("MCPA"). Both claims fail as a matter of law and should be dismissed.

*First*, as a matter of law, Plaintiffs' claim in Count I that inspection fees were improperly charged to Plaintiffs' loan fails because Shellpoint and Goldman Sachs are not "lenders" under Maryland Code, Commercial Law ("C.L.") § 12-121(b). In the past two years alone, four cases in this Court have found that entities such as Defendants are not "lenders" within the meaning of C.L. § 12-121(b); this Court should join these recent, well-reasoned opinions. Additionally, C.L. § 12-121(b) is not a "usury provision" for purposes of statutory remedies available under C.L. § 12-114(b). Plaintiffs' claims under Count I should be dismissed.

*Second*, Plaintiffs have failed to state a claim in Count II under either the MCDCA or the MCPA. Plaintiffs' MCDCA claim is predicated upon a violation of C.L. § 14-202(11), which prohibits debt collectors from engaging in conduct that violates the federal Fair Debt Collection Practices Act ("FDCPA"). Because the property inspection fees are not a "debt" under the FDCPA, and because Defendants are not "debt collectors" under the FDCPA, Defendants do not fall under its reach. As a result, Plaintiffs' MCDCA claim fails for want of a FDCPA violation.

Count II also purports to state a claim under the Maryland Consumer Protection Act ("MCPA"), positing that Defendant's violations of the MCDCA are also *per se* violations of the MCPA under C.L. § 13-301(14)(iii). Because Plaintiffs' MCDCA claim fails as a matter of law,

2

so does Plaintiffs' derivative claim in Count II under the MCPA. Plaintiffs' theory of liability under the MCPA is otherwise premised on standalone claims under C.L. § 13-301(1)(3) and § 13-303(4)(5), alleging that it was "unfair and deceptive" to charge the property inspection fee because they were "not lawfully imposed on Maryland borrowers" and therefore "not due from" the Plaintiffs. Dkt. No. 7, ¶ 75; *see* Dkt. No. 7, ¶ 72-75. These independent violations of the MCPA also fail as a matter of law because Defendants' alleged representation of property inspection fees was not unlawful, and therefore not unfair or deceptive.

For each of these reasons, Plaintiffs' claims against Defendants should be dismissed under Rule 12(b)(6) with prejudice. This court should additionally strike Plaintiffs' class allegations because Plaintiffs cannot represent a class when their own claims fail as a matter of law. *See* Fed. R. Civ. P. 23(c)(1)(A), 12(f).

## FACTUAL BACKGROUND

Plaintiffs obtained a mortgage from Homecomings Financial Network, Inc. ("HFN") on December 7, 1993 to purchase property located at 6714 Berkshire Dr. in Temple Hills, Maryland 20748-4029 (the "Property"). *See* Dkt. No. 7, ¶¶ 7, 21-22. Plaintiffs and HFN executed a Note with a principal balance of $193,482.00 ("Plaintiffs' Loan"). *See* Dkt. No. 7, ¶ 22. Shortly afterwards, HFN assigned Plaintiffs' Loan to Federal National Mortgage Association ("Fannie Mae"). *See* Dkt. No. 7, ¶ 22. Fannie Mae assigned the Plaintiffs' Loan to Goldman Sachs on August 13, 2019. *See* Dkt. No. 7, ¶ 22. Goldman Sachs engaged Shellpoint to become the mortgage servicer for Plaintiffs' Loan on or about October 4, 2019. *See* Dkt. No. 7, ¶ 22.

## PROCEDURAL BACKGROUND

Plaintiffs initially filed this putative class action lawsuit in the Circuit Court for Montgomery County, Maryland, on October 30, 2020 (the "Complaint"). *See* Dkt. No. 2.

Defendants properly removed the case to this Court on December 10, 2020. *See* Dkt. No. 1. Defendants filed a motion to dismiss Plaintiffs' Complaint and to strike Plaintiffs' class allegations on December 17, 2020. *See* Dkt. No. 4. On December 31, 2020, Plaintiffs filed an Amended Complaint in this Court (the "Amended Complaint"). *See* Dkt. No. 7. Plaintiffs then filed an opposition to Defendants' motion to dismiss Plaintiffs' Complaint, contending that the Amended Complaint rendered Defendants' motion moot. *See* Dkt. No. 8.[3]

Plaintiffs' Amended Complaint, Dkt. No. 7, asserts two counts:

- COUNT I: CLAIM PURSUANT TO COM. LAW § 12-114(a)(1)(ii) (On behalf of the Plaintiffs Individually and on behalf of the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass)

- COUNT II: VIOLATIONS OF MARYLAND'S CONSUMER DEBT COLLECTION ACT("MCDCA", COM. LAW § 14-201, *et seq*., & MARYLAND CONSUMER PROTECTION ACT ("MCPA"), COM. LAW §§ 13-101 *et seq*. (On behalf of the Plaintiffs Individually and on behalf of the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass alternatively to the claims asserted in Count I).

Count I alleges violations of C.L. § 12-121(b). In Count I, Plaintiffs seek to represent putative classes consisting of: (1) Maryland borrowers who had their mortgages serviced by Shellpoint since January 1, 2019 and who were charged a property inspection fee by Shellpoint, whose mortgages were not paid off by May 2020; and (2) Maryland borrowers who had their mortgages serviced by Shellpoint since January 1, 2019 on behalf of Goldman Sachs, and who

---

[3] Count I of the Amended Complaint (Dkt. No. 7) mirrors Count II of the Complaint (Dkt. No. 2). Because Defendants' arguments in support of dismissing Count II of the Complaint in Defendants' Motion to Dismiss (Dkt. No. 4) are still applicable, Defendants' Motion to Dismiss is not moot. *See Wilson v. TelAgility Corp*., No. 1:17-cv-1236-GLR, 2019 WL 2410963, at *6 (D. Md. June 7, 2019) (construing pending motion to dismiss to apply to amended complaint where the amended complaint "simply adds two new causes of action—it does not amend the claims in the Original Complaint."). Under certain circumstances, such as these, the Court does not require a defendant to file a new motion to dismiss. *See Buechler v. Your Wine & Spirit Shoppe, Inc*., 846 F.Supp.2d 406, 415 (D. Md. 2012), *aff'd* 479 Fed.Appx. 497, 498, 2012 WL 4497774 (4th Cir. 2012) (*quoting* 6 Charles Alan Wright et al., *Federal Practice & Procedure* § 1476 (3d ed. 2010)). For example, "[i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." *Id*. Indeed, "[t]o hold otherwise would be to exalt form over substance." *Id*.

were charged a property inspection fee by Shellpoint, whose mortgages were not paid off by May 2020. *See* Dkt. No. 7, ¶ 35a-b. Count II alleges violations of the MCDCA, C.L. § 14-201, *et seq*., and violations of the MCPA, C.L. § 13-101, *et. seq*.

Under Count I, Plaintiffs seek statutory damages under C.L. § 12-114(b)(1)(i)-(ii) for each instance where Defendants charged a property inspection fee.[4] Plaintiffs allege that the charging of property inspection fees amounts to statutory usury. The statutory penalty under C.L. § 12-114(b)(1)(ii) for violations of the "usury provisions" of the Usury Statute is $500 per violation. Under Count II, Plaintiffs seek actual damages, fees, and costs for violations of the MCPA and the MCDCA under C.L. § 13-408, and § 14-203, respectively.

## LEGAL STANDARDS

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 687-80 (2009) (expounding on the Rule 12(b)(6) standard); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). While a plaintiff need not include "detailed factual allegations" to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555, "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id*. at 570; *see Iqbal*, 556 U.S. at 678. To survive a motion under Rule 12(b)(6), "plaintiffs' factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging

---

[4] While not a ground of the pending motion, Defendants observe that Shellpoint's property inspection fees are accounted as third party recoverable, which means they are not charged to or imposed upon Plaintiffs (or any other Maryland borrower). The property inspection Shellpoint conducted on Plaintiffs' property was accounted for in this manner and has not been charged to or imposed upon Plaintiffs, but instead upon the investor on the loan, Goldman Sachs.

their claims across the line from conceivable to plausible." *Hately v. Watts*, 917 F.3d 770, 781 (4th Cir. 2019) (citation omitted).

## ARGUMENT

**I.     THE COURT SHOULD DISMISS COUNT I BECAUSE DEFENDANTS ARE NOT LENDERS UNDER C.L. § 12-121(b), AND THE USURY STATUTE DOES NOT APPLY TO PROPERTY INSPECTION FEES.**

Count I alleges that the Defendants improperly charged property inspection fees under C.L. § 12-121(b). Because neither Defendant is a "lender" as used in C.L. § 12-121(b), and because C.L. § 12-114(b) does not provide Plaintiffs with a remedy, Plaintiffs' claims under Count II fail as a matter of law and should be dismissed.

### A.   Goldman Sachs and Shellpoint are not "lender[s]" under C.L. § 12-121(b).

In Count I, Plaintiffs allege violations of C.L. § 12-121(b), which prohibits a "lender" from imposing "a lender's inspection fee in connection with a loan secured by residential real property." C.L. § 12-121(b). Count I fails as a matter of law because C.L. § 12-121(b) does not apply to Defendants. In the past two years alone, four opinions of this Court have found that C.L. § 12-121(b) does not apply to mortgage servicers such as Shellpoint and secondary mortgage market assignees such as Goldman Sachs.[5] This Court should join these recent, well-reasoned opinions.

"Lender" is defined as "a person who makes a loan under [the Usury Statute]." *See id*. § 12-101(f). This definition identifies lenders by the action they perform: providing borrowers with

---

[5] *See Flournoy v. Rushmore Loan Mgmt. Servs., LLC*, No. 8:19-cv-00407-PX, 2020 WL 1285504, at *8 (D. Md. Mar. 17, 2020). (finding that defendants were not "Lenders" under C.L. § 12-121(b) even though the defendants acquired the loan, and thereafter serviced, and maintained the loan); *Roos v. Seterus, Inc.*, No. 1:18-cv-3970-RDB, 2019 WL 4750418 at *5 (D. Md. Sept. 30, 2019) (finding that Fannie Mae and its retained mortgage servicer were not "lenders"); *Suazo v. U.S. Bank Trust, NA*, No. 1:12-cv-1451-RDB, 2019 WL 4673450 at *10 (D. Md. Sept. 25, 2019) (finding that statutory trust, participating in the secondary mortgage market, was not a "lender"); *Robinson v. Fay Servicing, LLC*, No. 1:18-cv-2710-RDB, 2019 WL 4735431 at *8-*9 (D. Md. Sept. 27, 2019) (finding trust "established for the primary purpose of acquiring defaulted mortgage debts" and certain debt collectors were not "lenders"). However, a recent Maryland Court of Special Appeals decision held differently. *See Kemp v. Nationstar Mortg. Ass'n*, 239 A.3d 798, 810 (Md. 2020), *cert. granted* (Nov. 23, 2020) (holding that "lender" under C.L. § 12-121(b) includes those mortgage purchaser and mortgage servicer who don't make loans).

capital. But neither Goldman Sachs nor Shellpoint "makes a loan." Crucially, Fannie Mae assigned the Plaintiffs' loan to Goldman Sachs. Dkt. No. 7, ¶ 9, 22. Under federal law, Fannie Mae can only purchase mortgages on the secondary market; it may neither "advance funds to a mortgage seller on an interim basis" nor "originate mortgage loans." 12 U.S.C. § 1719(a)(2). Similarly, Plaintiffs' do not allege that Shellpoint ever made a loan. Instead, Plaintiffs' concede that Shellpoint serviced mortgages, including the Plaintiffs' mortgage, collecting monthly payments and corresponding with homeowners. Dkt. No. 7, ¶ 8, 22.

Defendants simply cannot be viewed as "lenders" when they do not "make[ ] ... loan[s]" in the first instance. *See* C.L. § 12-101(f). Instead, Goldman Sachs acquires loans in the secondary mortgage market, and Shellpoint services those loans for Goldman Sachs. Dkt. No. 7, ¶ 8, 9, 22. Based on the clear language of the statute, and fundamental principles of statutory construction, C.L. § 12-121(b) does not apply to Defendants.

"The paramount object of statutory construction is the ascertainment and effectuation of the real intention of the Legislature." *Whiting-Turner Contracting Co. v. Fitzpatrick*, 783 A.2d 667, 670 (Md. 2001). This analysis begins "by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.'" *Ray v. State*, 978 A.2d 736, 748 (Md. 2009) (quoting *Barbe v. Pope*, 935 A.2d 699, 708 (Md. 2007)). When a definition "includes" a list of terms, this list is non-exhaustive; by contrast, when the legislature wishes to make a list exhaustive, it uses the word "means." *See Tribbit v. State*, 943 A.2d 1260, 1265 (Md. 2008); *Pepsi Bottling Grp. v. Plummer*, 130 A.3d 1047, 1054 (Md. Ct. Spec. App. 2016).

The plain language of the Usury Statute specifically, and unambiguously, provides that "lender ***means*** a person who ***makes a loan*** under this subtitle." C.L. § 12-101(f) (emphasis added);

7

*see Flournoy*, 2020 WL 1285504, at *5-7 ("Section 12-121(b) is clear and unambiguous, thus obviating the need to engage in attenuated comparisons with other statutes."). The meaning of "makes a loan" is clear: a person who "makes" a loan creates the loan itself. *See Flournoy*, 2020 WL 1285504, at *5-7. Viewing the complaint facts as true and most favorably to Plaintiffs, Goldman Sachs certainly acquires the loan once made and maintains the loan, and thereafter Shellpoint services it, but neither plays any role in *making the loan*. To say that members of the secondary mortgage market—such as Goldman Sachs—"make" loans because they facilitate sales is like saying that an automobile dealership "makes" cars because it facilitates car sales. Such is leap is illogical. The case against being a "lender" is even more clear with mortgage servicers such as Shellpoint, because they have no direct connection to the underlying mortgage other than being retained to service the loan already made.

Plaintiffs' failure to allege that either of the Defendants' made the underlying loan is fatal to their claim under C.L. § 12-121(b). Thus, all theories of liability predicated on Defendants' status as "lenders" must be dismissed. In so doing, this Court would be concurring with a number of its prior opinions in declining to extend the plain language of C.L. § 12-121(b) to include entities such as Defendants, who do not "make[] a loan." *See Flournoy*, 2020 WL 1285504, at *5-7; *Roos*, 2019 WL 4750418, at *4–5; *Robinson*, 2019 WL 4735431, at *9; *Suazo*, 2019 WL 4673450, at *10; *cf. Kemp v. Nationstar Mortg. Ass'n,* 239 A.3d 798, 810 (Md. 2020), *cert. granted* (Nov. 23, 2020).

Any attempt to circumvent this clear statutory language—such as arguing that Defendants, as assignees of the initial lender, stepped into the initial lenders' shoes and inherited their statutory obligation to refrain from imposing property inspection fees— also fails. *See Flournoy*, 2020 WL 1285504, at *6 (rejecting the contention that, as a matter of law, assignees inherit the statutory

obligations of the original lender, absent any contractual terms to the contrary). As a practical matter, an assignee does not function identically to that of the assignor. Mortgage assignees, for example, inherit the contractual **rights** of the assignor, *see* Md. Code, Real Prop. § 2-103, but not the **obligations** unless the contractual terms of the specific assignment so provide. *See Pines Plaza Ltd. P'ship v. Berkley Trace, LLC*, 66 A.3d 720, 723 (Md. 2013) ("Under Maryland common law, one who takes an assignment of an interest in a contract for the sale of real property does not assume the obligations of the assignor under the contract, unless the assignment explicitly provides so."). Defendants have not contractually inherited the obligations of the Plaintiffs' original lender, and thus cannot be said to fill the shoes of the original lender.

Plaintiffs reliance on *Taylor v. Friedman*, 689 A.2d 59 (Md. 1997) as binding precedent for the proposition that "lenders" under the Usury Statute includes mortgage assignees is also unpersuasive. *See* Dkt. No. 7, ¶¶ 3, 15 30, 54, 56.[6] This argument fails because even a cursory

---

[6] Plaintiffs also rely on *Kemp v. Nationstar Mortg. Ass'n*, 239 A.3d 798, 810 (Md. 2020), *cert. granted* (Nov. 23, 2020) to support holding that Defendants are "lenders" under C.L. § 12-121(b). *See* Dkt. No. 7, ¶¶ 8, 20, 30, 54, 56-57. While *Kemp* may be the only Maryland appellate case to directly address the scope of the term "lender" under C.L. § 12-121(b), thus making it persuasive authority, it should not be the fulcrum upon which this Court's determination hinges.

First, *Kemp* states that "[w]e begin" with the statute's plain language, and then utterly fails to analyze the statute's plain language, instead *guessing* what the Maryland General Assembly must have meant because of public policy implications. This Court, in *Flournoy*, has already rejected such a judicial overreach, providing that although "[p]laintiffs are at their most persuasive" when they argue "policy considerations," that such considerations are reserved for the Maryland General Assembly, who may address the point as they see fit. *Flournoy*, 2020 WL 1285504 at *7. Next, *Kemp*'s reliance on legislative history does nothing to support its reasoning, as the court once again assumes that the General Assembly *meant* something other than what they *wrote* into the statute. Lastly, the *Kemp* court relied on *Taylor v. Friedman* to support its interpretation of "lender." *Kemp*, 239 A.3d at 811-12. But, *Taylor* never addressed the question of whether a "lender" included assignees of a loan, and the *Kemp* court even acknowledged that, stating, "the [*Taylor*] Court did not address squarely whether CL § 12-121 applied to assignees of the loan." *Id.* at 811.

In short, the *Kemp* court went where no court is permitted to go: Assuming what the General Assembly *must have meant* despite the plain meaning of the statute and its internal definitions. The *Kemp* court found that "[t]he language of [Section 12-121(b)] isn't ambiguous in isolation," and then proceeded to state that "a wooden application of the term 'lender' here is inconsistent with the structure and purpose of the legislation enacting it." *Id.* at 814-15. Such judicial activism was inappropriate, and this Court should decline the invitation to follow suit, as it has already specifically warned against such a path. *See Flournoy*, 2020 WL 1285504 at *7.

reading of *Taylor* reveals that the Court of Appeals never addressed *at all* whether a "lender" includes mortgage assignees. *See Taylor,* 689 A.2d at 62-64. Instead, *Taylor v. Friedman* faithfully interpreted Section 12-121's plain text, albeit within the constraints imposed by the parties' briefing. The same requirements are due here.

In *Taylor*, the plaintiff, a subsequent property owner, contended that unlawful property inspection fees in the context of a foreclosure proceeding violated § 12-121(b). *Id*. at 60-61. It is true that the loan at issue in *Taylor* had been reacquired by a subsequent mortgagee. *Id*. However, the Court of Appeals was only called upon to decide whether § 12-121(b)'s prohibition on inspection fees extended for the life of the loan or instead only regulated closing costs. *Id*. at 62-64. Thus, the Court merely assumed without deciding that the mortgage holder was a "lender." *Id*. *Taylor* simply does not reach whether a secondary mortgage holder is a "lender," and again numerous courts have already answered such question in the negative. *See Flournoy*, 2020 WL 1285504, at *5-7; *Roos*, 2019 WL 4750418, at *4–5; *Robinson*, 2019 WL 4735431, at *9; *Suazo*, 2019 WL 4673450, at *10.

*Taylor*'s application of Section 12-121 to an assignee constituted dictum at best—and likely not even that. The "mind of the Court was" never "directly drawn to, and distinctly expressed upon the subject" of whether a lender includes a lender's assignee and a mortgage servicer. *Plank v. Cherneski*, 469 Md. 548, 595 (2020) (internal quotation marks omitted). *Taylor* therefore did

---

Finally, *Kemp* lacks significant persuasive authority because certiorari was granted in that matter on November 23, 2020, and the Court of Appeals will reexamine this issue anew. Therefore, the precedential value of *Kemp* is markedly limited, as the Maryland Court of Appeals is soon to readdress the issue de novo. Statutory interpretation is a question of law on which the Maryland Court of Appeals "owe[s] no deference" to the "Court of Special Appeals." *Blue v. Prince George's Cty*., 76 A.3d 1129, 1133 (Md. 2013) (citing *Jones v. State*, 38 A.3d 333 (Md. 2012), and *Long Green Valley Ass'n v. Bellevale Farms, Inc*., 68 A.3d 843 (Md. 2013)). The Maryland Court of Appeals recently reiterated its de novo standard of review for issues of statutory interpretation. *See Saint Luke Inst., Inc. v. Jones*, --- A.3d ----, 2020 WL 6815467, at *6 (Md. Nov. 20, 2020) (maintaining that when a lower court decision "involves an interpretation and application of statutory and case law," then the Maryland Court of Appeals "must determine whether the lower court's conclusions are legally correct under a de novo standard of review.")

not offer a "deliberate expression" of the court's "opinion" and does not bind this Court or any other court on that issue. *Id*. at 594.

Because Defendants are not lenders under the clear, unambiguous language of C.L. § 12-121(b), Count I should be dismissed.

**B.  CL § 12-121(b) is not a "usury provision" under CL § 12-114.**

The remedy Plaintiffs seek for the alleged violations of C.L. § 12-121(b) under Court I is similarly inapplicable. To date, no court has addressed the specific question of *how* C.L. § 12-114(b) provides a remedy for alleged violations of C.L. § 12-121(b). This failure to address remedies for violations of C.L. § 12-121(b) is the result of the fact that courts have (with the exception of *Kemp*) all resolved the question of liability based on the plain meaning of Section 12-121(b). Nevertheless, Section 12-121(b) is not a usury provision contemplated by the language of Section 12-114(b), and therefore Section 12-114(a) provides Plaintiffs with no remedy here.

Count I seeks statutory penalties under C.L. § 12-114(b)(1)(ii). Dkt. No. 7, ¶¶ 59-60. But that section provides remedies only for violations of the "***usury provisions*** of this subtitle." CL § 12-114(b)(1) (emphasis added). As just explained, C.L. § 12-121(b) prohibits lenders from imposing property inspection fees, not usury, and does not say anything about interest rates.

Instead, a violation of C.L. § 12-121 is redressed, not as supposedly "usurious," but with criminal penalties under C.L. § 12-122.[7] Tellingly, the plaintiff-borrower in *Taylor*, which appears to be the only reported case (along with *Kemp*) regarding an alleged violation of C.L. § 12-121(b), did not seek relief under C.L. § 12-114(b); nor did the court in *Taylor* identify C.L. § 12-114(b),

---

[7] The *Kemp* court did correctly identify that a "knowing and willful" violation of C.L. § 12-121 is a misdemeanor under C.L. § 12-122. *See Kemp v. Nationstar Mortg. Ass'n*, 239 A.3d 798, 809 (Md. 2020).

or any provision other than CL § 12-122, as a source of relief for a violation of C.L. § 12-121.[8]
*See Taylor*, 689 A.2d at 61-62. The plain language of C.L. § 12-114, which limits its reach to the
"usury provisions of this subtitle," necessarily must mean that there are provisions in the subtitle—
like C.L. § 12-121's prohibition on inspection fees—that are not "usury provisions."

*****

In summary, neither of the Defendants is a "lender" subject to the prohibition on property
inspection fees in C.L. § 12-121(b). Even if they were, C.L. § 12-114(b) does not provide a remedy
for violations of C.L. § 12-121(b). For these reasons, all claims based upon the erroneous premise
that Defendants were prohibited from assessing property inspection fees necessarily fail and
should be dismissed.

## II. THE COURT SHOULD DISMISS COUNT II BECAUSE DEFENDANTS DO NOT FALL WITHIN THE PURVIEW OF THE MCDCA OR THE FDCPA, AND PLAINTIFFS HAVE FAILED TO STATE A STANDALONE CLAIM UNDER THE MCPA.

Count II alleges that the Defendants violated the Maryland Consumer Debt Collection Act
("MCDCA"), C.L. § 14-201, *et seq.*, and the Maryland Consumer Protection Act ("MCPA"), C.L.
§ 13-301, *et seq*. Because neither of Defendants is a "debt collector" under the either the FDCPA
or the MCDCA, and because Defendants have not violated the MCPA, Plaintiffs' claims under
Count II fail as a matter of law and should be dismissed.

---

[8] The rule of lenity also cautions against applying Section 12-101 and Section 12-121 beyond their plain text, because of the potential criminal liability faced by Defendants under the proper penalty provision, C.L. § 12-122, for knowing or willful violations of C.L. § 12-121. The Maryland Court of Appeals has previously said that, when faced with "an otherwise unresolvable ambiguity in a criminal statute that allows for two possible interpretations of the statute," the Court "will opt for the construction that favors the defendant." *Oglesby v. State*, 441 Md. 673, 681 (2015); *see also State v. Weems*, 429 Md. 329, 344 (2012) (applying rule of lenity where neither a statute's "provisions" nor "the legislative history . . . shed conclusive light on the matter").

A. **Plaintiffs fail to state a claim for violation of the Maryland Consumer Debt Collection Act.**

Plaintiffs' claim under the Maryland Consumer Debt Collections Act ("MCDCA"), C.L. § 14-201 *et seq.*, fails as a matter of law. The MCDCA "prohibits debt collectors from utilizing threatening or underhanded *methods* in collecting or attempting to collect a delinquent debt." *Best v. NewRez LLC*, No. 8:19-cv-2331-GJH, 2020 WL 5513433, at *19 (D. Md. Sept. 11, 2020) (quoting *Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F. Supp. 2d 577, 596 (D. Md. 2013)). Plaintiff asserts a claim under C.L. § 14-202(11), which provides that debt collectors may not "engage in conduct that violates the FDCPA." *Id.* (quoting *Ellis v. Palisades Acquisition XVI LLC*, No. 1:18-cv-03931-JKB, 2019 WL 3387779, at *6 (D. Md. July 26, 2019); *see* C.L. § 14-202(11).

This Court has also required an MCDCA claim to satisfy a heightened pleading standard in certain contexts. *See Roos v. Seterus, Inc.*, No. 1:18-cv-3970-RDB, 2019 WL 4750418, at *6 (D. Md. Sept. 30, 2019); *see also Amenu-El v. Select Portfolio Servs.*, No. 1:18-cv-2008-RDB, 2017 WL 4404428, at *4 (D. Md. Oct. 4, 2017); *Adle-Watts v. Roundpoint Mortgage Servicing Corp.*, No. 1:14-cv-400-CCB, 2016 WL 3743054, at *5 (D. Md. July 13, 2016). Even if the Court were to determine that the plausible pleading standard has been satisfied, Plaintiffs do not satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b) to the extent it applies here.

   i.    ***Plaintiffs' claims under the MCDCA solely challenge the validity of the underlying property inspection fee, not the methods of collection.***

The MCDCA prohibits collectors from engaging in certain acts "in collecting or attempting to collect an alleged debt." C.L. § 14-202. "[A] claim under § 14-202(8) challenging the validity of the underlying debt . . . is not viable." *Pruitt v. Alba Law Group, P.A.*, No. 8:15-cv-0458-DKC, 2015 WL 5032014, at *5 (D. Md. Aug. 24, 2015); *see Fontell v. Hassett*, 870 F. Supp. 2d 395, 405 (D. Md. 2012) (providing that the MCDCA "is not a mechanism for attacking the validity of the

13

debt itself."). The MCDCA "is meant to proscribe certain *methods* of debt collection" and "focuses on the conduct of the debt collector in attempting to collect on the debt, whether or not the debt itself is valid. *Id.* (quoting *Fontell*, 870 F. Supp. 2d at 405) (emphasis added). Because the MCDCA "is not a mechanism for attacking the validity of the debt itself," any challenge to the legitimacy of the debt itself is not actionable under the MCDCA and must be dismissed. *Fontell*, 870 F. Supp. 2d at 405.

Plaintiffs' allegation that Defendants did not have the authority to charge property inspection fees fails because it contests the *legitimacy* of the fees assessed, rather than the *methods* used to collect debt. Dkt. No. 7, ¶ 65 (providing that Defendants used "methods of collection" but failing to state any improper methods other than that the property inspection fees were invalid generally); *see Alexander v. Carrington Mortg. Servs., LLC*, No. 1:20-cv-2369-RDB, 2020 WL 7319252, at *4 (D. Md. Dec. 11, 2020) ("The MCDCA "protects consumers against certain threatening and underhanded **methods** used by debt collectors")[9]; *Pruitt*, 2015 WL 5032014, at *6 (dismissing MCDCA claim because the MCDCA "is not a mechanism for attacking the validity of the debt itself"); *Fontell*, 870 F. Supp. 2d at 405 (dismissing MCDCA claims because the plaintiff did not challenge collection conduct, but the underlying debt itself); *Awah v. Capital One Bank, N.A.*, No. 8:14-cv-1288-DKC, 2016 WL 930975, at *5 (D. Md. Mar. 11, 2016) (dismissing MCDCA claim as non-actionable wherein the complaint "implicitly challenges the validity of" and "contests the legitimacy" of the debt), *dismissed sub nom., Awah v. Capital One Bank, NA*, 668 F. App'x 463 (4th Cir. 2016). The only *methods* mentioned in the Amended Complaint is Defendants' sending of a regular periodic monthly mortgage statement. Dkt. No. 7, ¶ 27 ("In a monthly, periodic statement to the Parkers from Shellpoint on behalf of Goldman Sachs dated

---

[9] Notice of Appeal to the United States Court of Appeals for the Fourth Circuit filed December 19, 2020 (appellate case No. 20-2359).

November 13, 2019 it represented to them that it had charged and collected payment from them a fee for a property inspection that relates to the Parker Property and Parker Loan in the sum of $105.00 on November 8, 2019."). Such a rote (and federally required) communication is not the type of conduct the MCDCA seeks to prohibit. Because Plaintiffs challenge only the legitimacy of the property inspection fees themselves, rather than Defendants' methods or conduct in allegedly collecting them, the MCDCA claim must fail.

> ii.      **The MCDCA does not apply to Defendants because they are not "debt collectors" under the MCDCA.**

Plaintiffs claim under the MCDCA also fails because plaintiffs have not alleged that Defendants were engaging in debt collection. To assert a claim under C.L. § 14-202, "plaintiffs must first show that defendants were engaging in an attempt to collect a debt." *Alexander*, 2020 WL 7319252, at *3 (internal quotations omitted). "Collector" is defined for the purposes of the MCDCA as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." C.L. § 14-201(b).[10] In this case, Shellpoint is a mortgage loan servicer, Dkt. No. 7, ¶ 8, and Defendant Goldman Sachs is a mortgage loan owner, acquiring the subject mortgage loan after it had been executed between Plaintiffs and their original lender, Dkt. No. 7, ¶¶ 9, 22. Neither Defendant qualifies as a debt collector under the MCDCA.

> a.      **Defendant Shellpoint is not a "debt collector" under the MCDCA, C.L. § 14-202(11).**

Shellpoint does not qualify as a "debt collector" within the meaning of the MCDCA, C.L. § 14-202(11). While the MCDCA may apply to loan servicers—such as Shellpoint—in some contexts, such is not the case here. *See, e.g.*, *Ervin v. JP Morgan Chase Bank*, N.A., No. 1:30-cv-

---

[10] "Person" is defined as "includ[ing] an individual, corporation, business trust, statutory trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity." C.L. § 14-201(d).

2080-GLR, 2014 WL 4052895, at *3 (D. Md. Aug. 13, 2014) (finding MCDCA provisions governing activities of mortgage servicers in Maryland); *Flournoy*, 2020 WL 1285504, at *8. For example, "[t]he right to collect a debt typically vests when a debtor defaults on the debt," *Crowley v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 1:15-cv-0607-RDB, 2015 WL 6872896, at *8 (D. Md. Nov. 9, 2015), therefore, a loan servicer may have to engage in debt collection to enforce payment obligations of defaulting borrowers. *See Alexander*, 2020 WL 7319252, at *3.

However, Shellpoint does not *exclusively* engage in debt collection, and only when it does engage in such activity is it subject to C.L. § 14-202. *See id.*; *see also Seghetti v. Flagstar Bank, FSB*, No. 1:16-cv-519-ELH, 2016 WL 3753143, at *2 (D. Md. July 13, 2016) (holding that loan servicer's actions in securing abandoned property were not "debt collection," and therefore, the MCDCA claim failed). Courts in this district look to whether the debt assigned to the servicer was assigned "solely for the purpose of collection" of such debt in assessing whether loan servicers are "engaged *exclusively* in debt collection." *Id.*; *see Henson v. Santander Consumer USA, Inc*., No. 1:12-cv-3519-RDB, 2014 WL 1806915, at *5 (D. Md. May 6, 2014), *aff'd* 817 F.3d 131 (4th Cir. 2016), *aff'd* 137 S.Ct. 1718 (2017); *see also Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings, LLC*, 929 F. Supp. 2d 502, 525 (D. Md. 2013) (finding assignee or transferee of a debt in default is a debt collector where it purchases the debt "solely for the purpose of collection."). In this case, Plaintiffs allege that Shellpoint qualifies as a debt collector because it "acted as [a] collector[] by directly and indirectly using methods of collection through the imposition of and collection of property inspection fees … of borrowers such as [Plaintiffs]." Dkt. No. 7, at ¶ 65.

There are no allegations that Shellpoint treated Plaintiffs' loan as if they were in default, such as sending notices of default, making collection calls, reporting to credit reporting agencies, or foreclosing on Plaintiffs' property. Plaintiffs' threadbare allegations do not suffice to allege that

16

Shellpoint was assigned their mortgage "solely for the purpose of collection." *See Henson*, 2014 WL 1806915 at *5 ("The Plaintiffs' cursory assertions that [Defendant] is a 'debt collector' because it purchased debts in default do not create a plausible cause of action."). Instead, Plaintiffs' allegations reflect that Shellpoint simply acted as a servicer by collecting Plaintiffs' monthly loan payments. Dkt. No. 7, ¶¶ 8, 22, 27-28. As pled, routine mortgage servicing is not debt collection.

While the MCDCA does not define "loan servicing," the Real Estate Settlement Procedures Act ("RESPA") defines "servicing" as:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3). Courts in this district have recognized that "servicing" of this nature is distinct from "debt collection." *Alexander*, 2020 WL 7319252 at *4; *see Allen v. Bank of America, N.A.*, 933 F. Supp. 2d 716, 729 (D. Md. 2013) (holding that "mortgage servicers" are not "debt collectors" under the FDCPA because they are not persons who "attempt to collect debts owed or due"). So too under the MCDCA, which also does "not by its terms purport to regulate loan servicing." *Id.* "The MCDCA 'protects consumers against certain threatening and underhanded methods used by debt collectors in attempting to recover on delinquent debts.'" *Id.* (quoting *Spencer v. Henderson-Webb, Inc.*, 81 F. Supp. 2d 582, 598 (D. Md. 1999). Plaintiffs do not allege that Shellpoint was "attempting to recover on delinquent debts." As a result, Shellpoint's servicing of Plaintiffs' loans is simply not conduct regulated by C.L. § 14-202(11).

### b. *Defendant Goldman Sachs is not a "debt collector" under the MCDCA, C.L. § 14-202(11).*

Goldman Sachs likewise does not meet the definition of a "debt collector" under the MCDCA, C.L. § 14-202(11). Again, the MCDCA protects borrowers "against certain threatening and underhanded methods used by debt collectors in attempting to recover on delinquent debts. *Spencer*, 81 F. Supp. 2d at 598. But, as with Shellpoint, Goldman Sachs was not attempting to "recover on delinquent debts" nor acting as a "debt collector"—and such has not been alleged in the Amended complaint. *See id.*; *see generally* Dkt. No. 7. "The right to collect a debt typically vests when a debtor defaults on the debt." *Crowley*, 2015 WL 6872896, at *8 (citing *Piotrowski v. Wells Fargo Bank, N.A.*, No. 8:11-cv-3758, 2013 WL 247549, at *9 (D. Md. Jan. 22, 2013)). For example, the right to initiate foreclosure proceedings typically vests when the debtor defaults on her mortgage. *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d. 788, 802 (D. Md. 2013). Therefore, it is axiomatic that to fall under the MCDCA, there must be a "debt" at issue that is being "collected" upon. *See Spencer*, 81 F. Supp. 2d at 594 ("The MCDCA protects consumers against certain threatening and underhanded methods used by debt collectors in **attempting to recover on delinquent accounts**."). But, the owner of a loan, such as Goldman Sachs, collecting regular mortgage payments is not "collect[ing]" a "debt" under the MCDCA, because Plaintiffs' is not alleged to be in default. Therefore, Goldman Sachs falls squarely outside of the MCDCA's prohibitions.

Additionally, and as discussed *infra*, Goldman Sachs is not a debt collector under the FDCPA. *See Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 140 (4th Cir. 2016), *aff'd*, 137 S. Ct. 1718 (2017) (assessing whether a mortgage owner was a debt collector under the FDCPA, and finding that where an owner is collecting debts for itself, they are a "creditor," not a

"debt collector."); *see also Alexander*, 2020 WL 7319252, at *4 (looking to the FDCPA in assessing whether loan servicer was a "debt collector" under the MCDCA).

### iii.     *Even if Defendants are "debt collectors" under the MCDCA, the "debt" was not invalid under Maryland law.*

Plaintiffs have failed to allege facts that Defendants acted with knowledge that the property inspection fees were invalid. "Maryland Courts have consistently interpreted the MCDCA to require plaintiffs to allege that defendants acted with knowledge that the 'debt was invalid, or acted with reckless disregard as to its validity.'" *Lembach v. Bierman*, Nos. 12-1723, 12-1746, 528 F. App'x 297 (4th Cir. 2013) (quoting *Shah v. Collecto, Inc*., No. 8:04-cv-4059-DKC, 2005 WL 2216242, at *11 (D. Md. Sept. 12, 2005)). Therefore, to succeed on an MCDCA claim, a plaintiff "must set forth factual allegations tending to establish two elements: (1) that Defendants did not possess the right to collect the amount of debt sought; and (2) that Defendants attempted to collect the debt knowing that they lacked the right to do so." *Roos v. Seterus, Inc*., No. 1:18-cv-3970-RDB, 2019 WL 4750418, at *6 (D. Md. Sept. 30, 2019) (citing *Healy v. BWW Law Group, LLC*, No. 8:15-cv-3688-PWG, 2017 WL 281997, at *5 (D. Md. Jan. 23, 2017)).

Plaintiffs generally allege that the Defendants "are expected to know the law," Dkt. No. 7, ¶ 10, that Defendants "imposed and collected property inspection fees … without the right to do [so]," Dkt. No. 7, ¶ 18, and that Defendants "knowingly and recklessly attempted to interfere or otherwise infect [Plaintiffs'] rights on the basis of alleged sums not lawfully due," Dkt. No. 7, ¶ 69. But the Amended Complaint is totally devoid of any *specific allegation* that the defendants *knew or were recklessly indifferent* to the fact that property inspection fees were barred under Maryland law (which, as explained *supra*, they are not). "Merely reciting the statutory language is insufficient," and Plaintiffs have made no allegations "regarding statements or actions taken by"

Defendants that would indicate that Defendants knew that their alleged fees were impermissible or that it was attempting to collect despite this knowledge. *Roos*, 2019 WL 4750418, at *6.

And even if the Plaintiffs' had alleged that Defendants' acted with the requisite knowledge or reckless disregard, their MCDCA claim would still be invalid because the property inspection fees are not barred by Maryland law, and they certainly were not at the time Defendants allegedly represented them on Plaintiffs' November 2019 monthly mortgage statement.[11] Plaintiffs' claim under the MCDCA should be dismissed, as Plaintiffs have failed to allege the requisite knowledge of the Defendants.

### iv.      Even if the MCDCA applies, Defendants have not violated the FDCPA.

Plaintiffs allege that Defendants "knowingly and recklessly attempted to interfere or otherwise infect the Parker's and the Shellpoint Inspection Fee Usury Class and the Goldman Sachs Inspection Fee Usury Subclass members' rights" when Defendants' allegedly reported property inspection fees on Plaintiffs' monthly mortgage statements when such sums were "not lawfully due." Dkt. No. 7, ¶ 69. Plaintiffs contend that "[b]y such acts" Defendants have "engaged in conduct which violates §§ 804 through 812 of the Federal Fair Debt Collection Practices Act including but not limited to 15 U.S.C. §§ 1692e, § 1692f." *Id*. But Defendants do not fall within the FDCPA's scope, and therefore Plaintiffs' claim fails as a matter of law.

To state a claim for relief under the FDCPA, a plaintiff must allege that "(1) [he] has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Britt v. Seledee Law Grp., LLC*, No. 1:19-cv-3446-RDB, 2020 WL 1984904, at *3

---

[11] A number of cases were handed down in this Court in September 2019—prior to the November 2019 statement in issue—that provided that parties such as Defendants in this case were not "lenders" within the meaning of C.L. § 12-121. *See Roos*, 2019 WL 4750418, at *4-5; *Robinson*, 2019 WL 4735431, at *9; *Suazo*, 2019 WL 4673450, at *10.

(D. Md. Apr. 27, 2020) (citing *Smith v. Cohn, Goldberg & Deutsch, LLC*, 296 F. Supp. 3d 754, 758 (D. Md. 2017). Plaintiffs have not—and cannot—meet this threshold showing, and their claims under the FDCPA, and thus the MCDCA, warrant dismissal.

> ### a. The FDCPA does not apply to Defendants because Defendants were not acting as "debt collectors" under well-settled FDCPA jurisprudence.

Plaintiff makes no factual allegations sufficient to allege that Defendants are "debt collectors" such that liability may attach under C.L. § 14-202(11). Under that statute, to prove an underlying violation of 15 U.S.C. § 1692e or 15 U.S.C. § 1692f, Defendants must each fit the statutory definition of a "debt collector." For instance, 15 U.S.C. § 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means" to collect a debt. Likewise, 15 U.S.C. § 1692f states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." But the plain text of these statutory sections provides that **only a "debt collector"** is subject to these particular restrictions. *See Henson v. Santander Consumer USA, Inc*., 817 F.3d 131, 140 (4th Cir. 2016), *aff'd*, 137 S. Ct. 1718 (U.S. 2017) ("for example, when a plaintiff claims that a defendant violated § 1692e … he must prove that the defendant was acting as a debt collector, as defined by § 1692a(6)").

The term "debt collector" in this context is defined in 15 U.S.C. § 1692a(6). *Henson*, 137 S. Ct. 1718, 1721. Under this definition, a "debt collector" is:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). Thus, there are two separate definitions of debt collector: (1) a person whose "principal purpose" is the collection of debts; or (2) a person who "regularly" collects debts that

are owed to others. *Id*. A creditor, on the other hand, is a "person who offers or extends credit creating a debt" or a person "to whom a debt is owed." *Id*. § 1692a(4). Unlike "debt collectors," who "regularly" collect debts "owed or due" to others, "creditors" collect debts for themselves, and thus are exempt from the requirements of the FDCPA. *See Henson*, 137 S. Ct. at 1721-22.

The Supreme Court's opinion in *Henson* is quite clear on who may be considered a "debt collector" for the purpose of 15 U.S.C. § 1692a(6). In assessing whether a mortgage owner could be considered a debt collector, the Supreme Court provided that "by its plain terms" the "language [of 15 U.S.C. § 1692a(6)] seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself." *Id*., 137 S. Ct. at 1721. Therefore, the operative question is whether the alleged debt collector is collecting debts for itself or for another. *Id*. It matters not "how a debt owner came to be a debt owner—whether the owner originated the debt or came by it only through a later purchase." *Id*. Instead, "[a]ll that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.'" *Id*. Under the *Henson* analysis, Goldman Sachs is plainly not a debt collector under the facts alleged.

Here, the Amended Complaint has not alleged that either Goldman Sachs or Shellpoint meets either principal definition of "debt collector" to support an underlying violation of 15 U.S.C. § 1692e or 15 U.S.C. § 1692f. Without such an assertion, the FDCPA claim fails as a matter of law. The Amended Complaint instead tenders the inadequate assertion that "Shellpoint and Goldman Sachs have acted as collectors by directly or indirectly using methods of collection through the imposition of property inspection fees." Dkt. No. 7, ¶ 65. More specifically, the Amended Complaint only generally refers to Shellpoint's collection activities, stating that Goldman Sachs "engaged Shellpoint to become the collector of the Parker Loan as of October 4,

2019 on its behalf." Dkt. No. 7, ¶ 22. The Amended Complaint does not even state as much as to Goldman Sachs, instead recognizing that Goldman Sachs was assigned the Plaintiffs' Loan, and thus is the owner of the Parker Loan. Dkt. No. 7, ¶ 22; *see also* Dkt. No. 7, ¶ 8(c). It appears that Plaintiff has ignored the requirement for liability under C.L. § 14-202(11) that a violation of §§ 804 to §§ 812 of the FDCPA has occurred—one required element of which is that a party is a "debt collector" in the context of the latter statute. But the plain text of the FDCPA demonstrates this is impermissible.

Indeed, Plaintiffs fail to allege at all that Defendants should each be considered a "debt collector" in this context, let alone any factual matter from which the Court can draw a reasonable inference that they so qualify. The Amended Complaint does not allege that either defendant uses "interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692a(6). Nor does the Amended Complaint even attempt to allege that either Defendant meets the second definition of "debt collector," as it makes no allegation that Shellpoint or Goldman Sachs "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). To that end, Goldman Sachs—as the "owner" of Plaintiffs' loan, Dkt. No. 7, ¶ 22—simply does not collect debts owed or due another and is plainly not a debt collector (or alleged to be one). *See Moss v. Ditech Fin., LLC*, No. 8:15-2065-PWG, 2016 WL 4077719, at *4 (D. Md. Aug. 1, 2016) (finding that a mortgage owner, Fannie Mae, acquires debts "for its own account" as a creditor, and therefore not as a debt collector).

The analysis of whether a party qualifies as a debt collector, as alleged, is as follows:

> The FDCPA provision that defines the term "debt collector," 15 U.S.C. § 1692a(6), can be broken into two parts. The first part supplies a general definition, while the second lists several categories of individuals or entities that are expressly excluded from

23

> that definition. It follows, then, that to determine whether a person qualifies as a "debt collector" under the statute, a court "must first determine whether the person satisfies one of the statutory definitions given in the main text of § 1692a(6) before considering whether that person falls into one of the exclusions contained in subsections § 1692a(6)(A)-(F). If a person does not satisfy one of the definitions in the main text, the exclusions in subsections § 1692a(6)(A)-(F) do not come into play."

*Saunders v. Capital One Bank (USA), N.A.*, No. 8:18-cv-03222-PWG, 2019 WL 2869655, at *3 (D. Md. July 3, 2019) (internal quotation omitted). Without an actionable allegation that the Defendants are each a "debt collector," no claim brought under a provision of the FDCPA may survive. *See Kennedy v. Lendmark Fin. Servs.*, No. 1:10-cv-02667-RDB, 2011 WL 4351534, at *4 (D. Md. Sept. 15, 2011), *aff'd Kennedy v. Lendmark Fin. Servs., Inc.*, 458 F. App'x 262 (4th Cir. 2011) (dismissing complaint for failure to allege that defendant was debt collector); *see also Torliatt v. Ocwen Loan Servicing, LLC*, No. 19-CV-04303-WHO, 2020 WL 1904596, at *3 (N.D. Cal. Apr. 17, 2020) (dismissing convenience fee claim for failure to allege that defendant was a debt collector); *Anderman v. JP Morgan Chase Bank, NA*, 803 F. App'x 290, 293 (11th Cir. 2020) (rejecting plaintiff's assertion that defendant was a debt collector when it only "restated the definition in their complaint, without alleging any factual support").

This failure is dispositive even though the definition of a "collector" under C.L. § 14-201(b) is different than that of a "debt collector" under 15 U.S.C. § 1692a(6). Count II seeks relief under the MCDCA based solely on violations of 15 U.S.C. § 1692e and 15 U.S.C. § 1692f. Dkt. No. 7, ¶ 69. Because a violation of either statutory section requires a finding that a party is a "debt collector," as set forth under the FDCPA, the MCDCA claim in Count II must fail absent actionable allegations of this nature. *See Henson*, 817 F.3d at 140.

**b.  *Defendants are not "debt collector[s]" because Plaintiffs' mortgage loan is not alleged to be in default.***

Defendants are not debt collectors under the FDCPA, and therefore Plaintiffs' claims under the FDCPA fails as a matter of law. The FDCPA's definition of "debt collector" specifically excludes creditors and those who collect debts that are not in default. *See* 15 U.S.C. § 1692a(6)(F)(iii). Specifically, 15 U.S.C. § 1692a(6)(F)(iii) provides:

> (6) The term "debt collector" means any person who … . ***The term does not include--***
>
> > (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … (iii) ***concerns a debt which was not in default at the time it was obtained by such person***; or …

15 U.S.C. § 1692a(6)(F)(iii) (emphasis added). Consequently, if a home loan is transferred to a mortgage servicer while the loan is current, any attempt to collect the debt by the home loan servicer is not subject to the FDCPA[12]. In fact, the FDCPA does not apply to that servicer even if the loan subsequently goes into default status. Only if a home loan is transferred to a loan servicer during a time when the loan is in default is the collection activity is subject to the FDCPA. *See Austin v. Lakeview Loan Servicing, LLC*, No. RDB-20-1296, 2020 WL 7256564, at *4 (D. Md. Dec. 10, 2020) (providing that "[i]f a loan servicer were to acquire a loan after it has already gone into default," then 15 U.S.C. § 1692a(6)(F)(iii)'s "exception does not apply.").

But Plaintiffs' mortgage is never alleged in the Amended Complaint to be in default. Instead, the alleged property inspection fees were included on a statement to the Plaintiffs

---

[12] While not the case here, a mortgage servicer who treats a mortgage as in default, irrespective of whether the mortgage is actually in default, may subject themselves to the FDCPA's purview. *See Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355 (6th Cir. 2012) (holding mortgage servicer and the purchaser of the mortgage were subject to the FDCPA because the mortgage servicer treated the mortgage as if it were in default and attempted to collect it as a defaulted debt).

concerning their *regular mortgage payment* for November 2019. *See id.* (dismissing FDCPA claim because the subject loan was not in default). In short, it is not alleged that Goldman Sachs acquired the Plaintiffs' defaulted mortgage, and it never alleged that Shellpoint serviced the Plaintiffs' mortgage loan once it was in default or that Shellpoint treated the loan as in default. Nor has such been alleged in the Amended Complaint. *See generally* Dkt. No. 7 (containing no allegation that the Plaintiffs loan is now, or has ever been, in default). Therefore, Defendants alleged statements regarding property inspection fees—whatever their status as "debts"[13]—are plainly not within the purview of the FDCPA.

> **v.**     ***Because Plaintiffs' claim under the FDCPA fails as a matter of law, so does their claim under the MCDCA.***

Plaintiffs have alleged a single violation of the MCDCA under C.L. § 14-202(11). Section 14-202(11) provides that any violation of the FDCPA gives rise to a violation of the MCDCA. *See* C.L. § 14-202(11) (providing that debt collectors may not "engage in conduct that violates the FDCPA."). As Plaintiffs have failed to state a violation of the FDCPA, they have therefore also failed to state a violation of the MCDCA. *See Austin*, 2020 WL 7256564, at *4 (finding that a failure to prove a violation of the FDCPA forecloses on a MCDCA claim under C.L. § 14-202(11)). Because plaintiffs have not—and cannot—claimed an independent violation of the MCDCA, Plaintiffs claims under C.L. § 14-202 fail as a matter of law.

## B. Plaintiffs fail to state a claim for violation of the Maryland Consumer Protection Act (MCPA).

Plaintiffs' claim under the Maryland Consumer Protection Act ("MCPA") fails as a matter of law because they have failed to state a claim, standalone or otherwise, under the MCDCA.

---

[13] As previously noted, Plaintiffs were never charged a property inspection fee during the allegedly relevant period, though this ground is not asserted as a basis for dismissal in the instant motion.

Plaintiffs assert three claims under the MCPA, specifically a *per se* violation under C.L. § 13-301(14)(iii) and four standalone claims under C.L. § 13-301(1)(3), and § 13-303(4)(5). All five claims fail as a matter of law and should be dismissed.

> **i.   *Plaintiffs claim under C.L. § 13-301(14)(iii) fails because Plaintiffs have failed to state a claim under the MCDCA.***

Plaintiffs have failed to plead a violation of the MCDCA, and therefore Plaintiffs claim under C.L. § 13-301(14)(iii) fails as a matter of law. Section 13-301(14)(iii) provides that a violation of the MCDCA is a *per se* violation of the MCPA. *See* Dkt. No. 7, ¶ 70. Section 13-301(14)(iii) provides, in pertinent part:

> Unfair, abusive, or deceptive trade practices include any:
> * * * * *
> (14) Violation of a provision of:
> * * * * *
> (iii) Title 14, Subtitle 2 of this article, the Maryland Consumer Debt Collection Act;

C.L. § 13-301(14)(iii). When a plaintiff fails to state a claim under the FDCPA, they also fail to state a claim under C.L. § 13-301(14)(iii). *See Alexander*, 2020 WL 7319252, at *7 (holding that "Plaintiffs have failed to state a claim under the MCDCA, thereby foreclosing their derivative claim under the MCPA."); *accord Austin*, 2020 WL 7256564 at *5 (same). For the reasons explained above, Plaintiffs have failed to state a claim under the MCDCA, thereby foreclosing their derivative claim under the MCPA.

> **ii.  *Plaintiffs have failed to state a standalone claim under C.L. § 13-301(1)(3), and §13-303(4)(5).***

The Consumer Protection Act, codified at C.L. §§ 13-101 *et seq*. "was intended to provide minimum standards for the protection of consumers in the State." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013) (*quoting Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 276 (Md. 2007)). To plead a standalone claim

under the MCPA, Plaintiffs must allege: "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Alexander*, 2020 WL 7319252, at *7. Because Plaintiffs' MCPA claims sound in fraud, they must be plead with particularity. *Id*. (applying heightened pleading standard to claims under C.L. § 13-301); *accord Marchese v. JPMorgan Chase Bank, N.A*., 917 F. Supp. 2d 452, 465 (D. Md. 2013) (finding that because the "MCPA claim sounds in fraud," it was subject to the heightened pleading requirement).

### iii.   Plaintiffs have not alleged that Defendants engaged in or made an "unfair or deceptive practice or misrepresentation."

Section 13-303 of the MCPA prohibits any person from "engag[ing] in any unfair, abusive, or deceptive trade practice" in both "[t]he extension of consumer credit," and "[t]he collection of consumer debts." C.L. §§ 13-303(4), (5). Section 13-301 provides the definition of "unfair, abusive, or deceptive trade practice" to include any "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers," or any "[f]ailure to state a material fact if the failure deceives or tends to deceive." C.L. §§ 13-301(1), (3); Dkt. No. 7, ¶ 74. Plaintiffs allege that the "seeking and demanding and collecting property inspection fees not lawfully imposed" meets this definition. Dkt. No. 7, ¶ 75. However, an allegation that Plaintiff was presented with purportedly improper fees does not state a claim under the MCPA. *See Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 988-89 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (4th Cir. 2004) (holding plaintiffs' allegation that "the very communication of the allegedly illegal charges deceived him into believing that the charges were legal" was insufficient to state a claim under the MCPA, and dismissing MCPA claim).

Plaintiffs' only allegation of a statement or representation that deceived them was that on Plaintiffs' November 2019 periodic statement Defendants allegedly represented that Defendants

28

had "charged and collected payment from them for a fee for a property inspection" and that such fee was reiterated in a June 11, 2020 correspondence from Defendants to Plaintiffs. Dkt. No. 7, ¶¶ 27-28. However, "the very communication" of assessing "sums not legally or contractually due" does not violate the MCPA. *Miller*, 224 F. Supp. 2d at 988-89; *see Bourgeois v. Live Nation Entm't, Inc*., 3 F. Supp. 3d 423, 458-59 (D. Md. 2014), as corrected (Mar. 20, 2014) (holding plaintiff's allegation that defendants represented that the fees were "legitimate and collectible" cannot support his claim of misrepresentation under the MCPA); *see also Peete-Bey v. Educ. Credit Mgmt. Corp*., 131 F. Supp. 3d 422, 432 (D. Md. 2015) (observing that the plaintiff had not cited, nor could the court independently find, authority for the proposition that a representation could be deceptive because it "demanded payments on an invalid debt").

Plaintiffs do allege that Defendants, on multiple occasions, disclosed the nature of the property inspection fees and the dollar amount that they sought to collect. Dkt. No. 7, ¶¶ 27-29. That is, Plaintiffs plead that Defendants disclosed the *fact* that property inspection fees had been charged and the amount that such fee added to the total obligation of the Plaintiff. *See* Dkt. No. 7, ¶ 27-29. Whether the fee was *legally chargeable* is patently a question of *law*—not a misrepresentation of fact that would give rise to MCPA liability. *See Miller*, 224 F. Supp. 2d at 988-89. Plaintiffs have not alleged that Defendants concealed, hid, or otherwise disguised any amount or fee that they purportedly charged—all that is alleged is that Defendants charged a fee which is alleged by the Plaintiffs to be improper under Maryland law. As such, Plaintiffs standalone claims under the MCPA should be dismissed for want of an "unfair or deceptive" factual misrepresentation.

29

      iv.  ***Defendants are not barred from charging property inspection fees under C.L. § 12-121, and even if they are, Defendants charged the fee in good faith reliance upon existing law at the time of the representation.***

Even assuming, *arguendo*, that such a representation of a legal right to charge property inspection fees could give rise to a claim under the MCPA—which again, it cannot—Plaintiffs' standalone MCPA claim still fails. As discussed *supra*, Maryland's prohibition on property inspection fees for lenders under C.L. § 12-121 does not apply to either Defendant here. And even if the property inspection fees are improper now, they were certainly not improper *when they were allegedly assessed to the Plaintiffs* in November 2019. A flurry of September 2019 Maryland District Court opinions supports the assertion of property inspection fees by those in the secondary mortgage market. *See Roos v. Seterus, Inc.,* No. 1:18-cv-3970-RDB, 2019 WL 4750418 at *5 (D. Md. Sept. 30, 2019) (finding that Fannie Mae and its retained mortgage servicer were not "lenders"); *Robinson v. Fay Servicing, LLC*, No. 1:18-cv-2710-RDB, 2019 WL 4735431 at *8-*9 (D. Md. Sept. 27, 2019) (finding trust "established for the primary purpose of acquiring defaulted mortgage debts" and certain debt collectors were not "lenders"); *Suazo v. U.S. Bank Trust*, NA, No. 1:12-cv-1451-RDB, 2019 WL 4673450 at *10 (D. Md. Sept. 25, 2019) (finding that statutory trust, participating in the secondary mortgage market, was not a "lender").

Plaintiffs contend that the allegedly invalid assessment of property inspection fees of the amounts owed on their periodic statements were "unfair and deceptive," pursuant to C.L. § 13-303, because the statements caused Plaintiffs to believe they owed more on their periodic statements than they did, and that it caused them to pay a higher monthly mortgage payment than should otherwise have been required. *See* Dkt. No. 7, ¶ 72-77. However, Defendants are aware of no law where a party has been held liable under the MCPA for asserting a legal position on a novel

issue of law that (allegedly) turned out to be incorrect. In fact, Maryland case law would suggest just the opposite—that good faith reliance on a novel issue of law shields Defendants from liability.

In *Chavis v. Blibaum Assocs., P.A.*, the Maryland Court of Special Appeals assessed whether a debt collector could be liable under the MCPA for charging the wrong amount of post-judgment interest. 230 A.3d 188, 197-98 (Md. Ct. Spec. App. 2020), *cert. granted sub nom. Chavis v. Blibaum & Assoc, P.A.*, 240 A.3d 852 (Md. Oct. 6, 2020). Specifically, the debt collector in *Chavis* garnished the plaintiffs' wages for satisfaction of a debt, and in doing so charged an amount of post-judgment interest in-excess of what was legally allowable. *Id*. But because the *Chavis* defendants were relying on an interpretation of a novel legal issue (the calculation of post-judgment interest) which was undecided at the time the interest was charged, the defendants could not be liable under the MCPA. *Id*. at 535. Therefore, even though the amount of post-judgment interest required a different calculation, the *Chavis* court dismissed the plaintiffs MCPA claims because defendants had relied on a good-faith interpretation of a novel issue of law. *Id*.

The same conclusion applies here. Defendants in this action were relying on an interpretation of a novel issue of law when they allegedly represented a property inspection fee on the Plaintiffs' November 2019 statement. And this matter goes even a step further than *Chavis*: here, a litany of case law supported Defendants' right to charge a property inspection fee. *See Roos*, 2019 WL 4750418 at *5; *Robinson*, 2019 WL 4735431 at *8-*9; *Suazo*, 2019 WL 4673450 at *10. In fact, even after the property inspection fee was allegedly imposed, another court agreed with the Defendants interpretation of C.L. § 12-121. *See Flournoy v. Rushmore Loan Mgmt. Servs., LLC*, No. 8:19-cv-00407-PX, 2020 WL 1285504, at *6 (D. Md. Mar. 17, 2020) (finding that defendants were not "Lenders" under C.L. § 12-121(b) even though the defendants acquired the

loan, and thereafter serviced and maintained it). And, as discussed *supra*, Defendants are still not in violation of C.L. § 12-121, as they are not lenders within the plain meaning of the statute.

Because Plaintiffs' MCPA claims are premised on Defendants' violations of C.L. § 12-121—which Defendants did not violate under well-settled law, the arguments provided *supra*, and the exception provided in *Chavis*—in representing a property inspection fee on Plaintiffs' November 2019 monthly mortgage statement, Plaintiffs standalone MCPA claims fail as a matter of law. Therefore, Plaintiffs standalone MCPA claims should be dismissed.

## III.   THE COURT SHOULD STRIKE THE CLASS ALLEGATIONS BECAUSE BOTH OF PLAINTIFFS' INDIVIDUAL CLAIMS FAIL AS A MATTER OF LAW.

The Court should strike the class allegations because Plaintiffs' claims in Counts I and II fail as a matter of law, and Plaintiffs cannot be class representatives. *See* Dkt. No. 7, ¶¶ 33-50; *see also* Fed. R. Civ. P. 12(f). This Court has held that when the "Court has determined that each liability theory fails as a matter of law with respect to the named Plaintiffs, and the Complaint does not aver any independent theory of class-wide relief separate from the Plaintiffs' as representatives of the putative classes," "the class allegations fail for the same reasons the individual claims do." *Morgan v. Caliber Home Loans, Inc.*, No. 8:19-cv-02797-PX, 2020 WL 3073319, at *5 (D. Md. June 10, 2020); *see* Fed. R. Civ. P. 23(c)(1)(A); *see also Collins v. Village of Palatine*, 875 F.3d 839, 846 (7th Cir. 2017) ("When the plaintiff's own claim is dismissed, he can no longer be the class representative. At that point, either another class representative must be found or the suit is kaput.") (quotations omitted). As explained above, Plaintiffs do not, and cannot, allege plausible claims in Counts I and II. Accordingly, the Court should strike the class allegations because Plaintiffs cannot represent a class when their own claims fail as a matter of law.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request the Court DISMISS WITH PREJUDICE all claims against Defendants and strike Plaintiffs' class allegations. Dismissal with prejudice is appropriate because the Plaintiff has already once amended the Complaint following Defendants' initial Motion to Dismiss, and any further amendment would be therefore futile.


Dated: January 14, 2020 Respectfully submitted,

/s/ Andrew J. Narod
Andrew J. Narod (Federal Bar No. 29738)
John E. Goodman (To Be Admitted *Pro Hac Vice*)
**BRADLEY ARANT BOULT CUMMINGS LLP**
1615 L Street, N.W.
Suite 1350
Washington, DC 20036
P: (202) 719-8271
F: (202) 719-8371
anarod@bradley.com
jgoodman@bradley.com

*Counsel for Defendants Goldman Sachs Mortgage Company Limited Partnership d/b/a Goldman Sachs Mortgage Company, and NewRez, LLC, d/b/a Shellpoint Mortgage Servicing*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of the foregoing to be served by this Court's CM/ECF system on this 14th day of January, 2020, on counsel for plaintiffs:

Mr. Phillip Robinson
8737 Colesville, Road, Suite 308
Silver Spring, MD 20910

Dated: January 14, 2020                    Respectfully submitted,

                                     /s/ Andrew J. Narod_____
                                    Andrew J. Narod (Federal Bar No. 29738)