IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| MICHAEL T. PARKER<br>PATRICE PARKER<br>*On behalf of themselves individually and<br>similarly situated persons.*, | * * * | |
| Plaintiffs, | * | |
| v. | | Case No.: GJH-20-3581 |
| | * | |
| GOLDMAN SACHS MORTGAGE<br>COMPANY LIMITED PARTNERSHIP<br>And<br>NEWREZ LLC d/b/a SHELLPOINT<br>MORTGAGE SERVICING, | | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

In this putative class action, Plaintiffs Michael and Patrice Parker, brought suit against Defendants Goldman Sachs Mortgage Company Limited Partnership d/b/a Goldman Sachs Mortgage Company ("Goldman Sachs") and NewRez LLC (f/k/a New Penn Financial, LLC) d/b/a Shellpoint Mortgage Servicing ("Shellpoint")(collectively "Defendants") alleging that they improperly charged property inspection fees in violation of Title 12, Subtitle 1 of the Maryland code, specifically Md. Code Ann., Com. Law § 12-121(b), and Maryland's Consumer Debt Collection Act, Md. Code Ann., Com. Law §§ 14-201, *et seq*. ("MCDCA") and Maryland's Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101, *et seq*. ("MCPA"). Pending before the Court are two motions including Plaintiffs' Motion to Remand to State Court for Lack of Jurisdiction, ECF No. 20, and Defendants' Motion to Dismiss and to Strike Class Allegations,

1

ECF No. 10,[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Plaintiffs' Motion to Remand, ECF No. 20, is denied, and Defendants' Motion to Dismiss for Failure to State a Claim and to Strike Class Allegations, ECF No. 10, is granted, in part, and denied, in part.

I.  **BACKGROUND**[2]

   A. **The Parties**

Plaintiffs Michael and Patrice Parker are owners of the property located at 6714 Berkshire Dr. in Temple Hills, MD 20748 (the "Property"). ECF No. 7 ¶ 7. The Parkers are the borrowers on the mortgage loan ("Parker Loan") subject to this action, and the Parker Loan is a federally related mortgage. *Id.*

Shellpoint is a wholly owned subsidiary of Shellpoint Partners, LLC, a Delaware limited liability company. *Id.* ¶ 8. Shellpoint is a licensed Maryland lender and collection agency. *Id.* ¶ 8(b). Shellpoint Partners LLC is wholly owned by NRM Acquisition LLC and NRM Acquisition II LLC, both of which are Delaware limited liability companies. *Id.* ¶ 8. Both NRM Acquisition entities are wholly owned by New Residential Mortgage LLC, which is also a Delaware limited liability company, and New Residential Mortgage LLC is wholly owned by New Residential Investment Corporation, a Delaware corporation. *Id.* New Residential Investment Corporation is publicly traded on the New York Stock Exchange. *Id.* Plaintiffs state that "Shellpoint makes more money on behalf of NRZ by churning fees and making advances related to borrowers it believes are delinquent or in foreclosure and there is 'limited risk' that those sums will not be

---

[1] Also pending before the Court is Defendants' first Motion to Dismiss, ECF No. 4, which is moot in light of Plaintiffs' Amended Complaint, ECF No. 7, which it filed as of right.

[2] Unless otherwise stated, the background facts are taken from Plaintiffs' Amended Complaint, ECF No. 7, and are presumed to be true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

reimbursed to it—even if it has no right to impose the fees and charges in the first instance." *Id.* ¶ 8(a). Goldman Sachs was formed under the law of New York, but all of its partners and subsidiaries are unknown. *Id.* ¶ 9. Goldman Sachs Real Estate Funding Corporation is the general partner for Goldman Sachs. *Id.*

### B. Factual Background

Plaintiffs acquired the Property on or about December 17, 1993, and on or about December 7, 2005, the Parkers' refinanced their mortgage loan with Homecomings Financial Network, Inc. ("HFN") by obtaining an extension of credit in the amount of $193,482.00. *Id.* ¶¶ 21–22. Shortly thereafter, HFN assigned the Parker Loan to the Federal National Mortgage Association ("Fannie Mae"), and Fannie Mae assigned the Parker Loan to Goldman Sachs on August 13, 2019. *Id.* ¶ 22. At the time of this assignment, Goldman Sachs authorized "Nationstar Mortgage LLC d/b/a Mr. Cooper for collection," but then engaged Shellpoint to take over collections as of October 4, 2019. *Id.*

In the Parker Loan's express terms and conditions, HFN and the Parkers agreed that the loan would be governed by Maryland law, specifically that:

> [HFN and all of its assigns] may not charge fees that are expressly prohibited…by [controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions].

*Id.* ¶ 23(a) (citing Deed of Trust) (brackets in original). Nationstar, on behalf of and with the authorization of Fannie Mae, and Plaintiffs, later, partially modified the Parker Loan on December 14, 2009 ("Loan Modification"). *Id.* ¶ 24. In this partial Loan Modification, Nationstar and the Parkers agreed, relevant to this dispute, that "the [Parker Loan documents] are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed." *Id.* ¶ 24(a). It also provided that:

3

> [A]ll terms and provisions of the [Parker Loan documents], except as expressly modified by [the Loan Modification], remain in full force and effect…and that except as otherwise specifically provided in, and as expressly modified by, [the Loan Modification], the Lender and I will be bound by, and will comply with, all of the terms and conditions of the [Parker Loan documents].

*Id.* ¶ 24(b) (citing Loan Modification) (brackets in original). Plaintiffs allege that "[a]t no point did all authorized persons party to the Parker Loan ever agree to modify or change the specific terms described in ¶¶ 23(a) or 24(b) *supra*." *Id.* ¶ 25. Moreover, the Parkers contend that Fannie Mae, Nationstar, Shellpoint, and Goldman Sachs "never entered into any written agreement with the Parkers or anyone else to permit them to disclaim the responsibilities and obligations agreed to by HFN (and any of its successors) as described in ¶¶ 23(a) or 24(b) *supra*." *Id.*

Plaintiffs contend that Shellpoint and Goldman Sachs are aware of the terms and conditions of the Loan Modification because Shellpoint sent them a copy of it in a June 11, 2020, correspondence, and that "as successors and assignees of the Parker Loan as modified by the Loan Modification to Nationstar they are bound by its terms." *Id.* ¶ 26. And "as assigns and successors to the Nationstar Assurance," Plaintiffs also contend that Shellpoint and Goldman Sachs are likewise bound to the terms and conditions of that agreement. *Id.* Shellpoint and Goldman Sachs are additionally aware of the Parker Loan documents' terms and conditions. *Id.*

Plaintiffs allege that, in a monthly periodic statement from Shellpoint on behalf of Goldman Sachs dated November 13, 2019, Shellpoint represented to them that it charged and collected a payment from a fee for a property inspection relating to the Parker Property and the Parker Loan, in an amount totaling $105.00 on November 8, 2019. *Id.* ¶ 27. Also, in the June 11, 2020 correspondence to the Parkers, Shellpoint, with authorization from Goldman Sachs, additionally represented that the $105.00 property inspection fee imposed and collected by Shellpoint on November 8, 2019 related to both the Parker Loan and Property, as part of its Loan

History Summary. *Id.* ¶ 28. Plaintiffs further allege that "[n]owhere in either the November 13, 2019 periodic statement to [them] or the June 11, 2020 Loan History Statement did Shellpoint claim or represent to [them] that it did not actually impose and collect from [them] the property inspection fee." *Id.* ¶ 29. Plaintiffs contend that "neither Shellpoint nor Goldman Sachs have any right to impose any property inspection fees on the Parker Loan and the Parkers," as was done on the November 13, 2019 statement and the June 11, 2020 Loan History Summary, because such fees are barred under Maryland law. *Id.* ¶ 30. Moreover, Plaintiffs contend that the "Parker Loan is not satisfied," and that they have been damaged and have sustained losses as a proximate cause of Defendants' "improper, unfair, and/or deceptive practices[.]" *Id.* ¶¶ 32–33.

### C. Procedural Background

On or about October 30, 2020, Plaintiffs filed a four-class, two-count putative class action complaint against Defendants in the Circuit County Court for Montgomery County, Maryland. ECF No. 1 ¶ 1; ECF No. 2. On December 10, 2020, Defendants removed the suit to this Court on the basis that this action "falls under this Court's original jurisdiction pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453, and is one that may be removed to this Court based on CAFA, 28 U.S.C. § 1453." *Id.* ¶ 3. On December 17, 2020, Defendants filed a Motion to Dismiss and to Strike Class Allegations, ECF No. 4, and on December 31, 2020, Plaintiffs filed an Amended Complaint, as of right, ECF No. 7.

In the Amended Complaint, Plaintiffs contend that Defendants illegally harvested property inspection fees that they were not entitled to collect under Maryland law. *Id.* ¶¶ 1–3, 29–30. Plaintiffs allege a violation of Com. Law § 12-114(a)(1)(ii) (Count I), or, in the alternative, violations of Maryland's Consumer Debt Collection Act ("MCDCA"), Com. Law §

14-201, *et seq.*, and Maryland's Consumer Protection Act ("MCPA"), Com. Law §§ 13-101, *et seq*. *Id.* ¶¶ 51–79.

> Plaintiffs sue on behalf of the Shellpoint Inspection Fee Usury Class, which it defines as:
>
> Those persons in the State of Maryland for whom (i) Shellpoint has acted as a maker or assignee of a mortgage loan related to a secured, mortgage loan at any time or a licensed mortgage servicer of a mortgage loan owner related to a secured, mortgage since January 1, 2019; (ii) where Shellpoint charged their mortgage loan accounts with property inspection fees and costs related to the mortgage loan; and (iii) the mortgage loan accounts had not been satisfied more than six months before the commencement of this action.

*Id.* ¶ 35(a). They also sue on behalf of the Goldman Sachs Inspection Fee Usury Subclass, which it defines as the following:

> Those members of the Shellpoint Inspection Fee Usury Class for whom Shellpoint collects the subject mortgage loans on behalf of Goldman Sachs.

*Id.* ¶ 35(b).

On January 14, 2021, Defendants also filed the now pending Motion to Dismiss and to Strike Class Allegations, ECF No. 10. On January 27, 2021, Plaintiffs filed a Motion to Stay, ECF No. 11. On September 29, 2021, the Plaintiffs filed a Motion to Remand the Case to State Court for Lack of Jurisdiction, ECF No. 20. On September 30, 2021, the Court issued an Order finding as moot Plaintiffs' Motion to Stay, ECF No. 21.

## II.   DISCUSSION

### A. Motion to Remand

Defendants removed this action from the Circuit Court for Montgomery County, Maryland pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). ECF No. 1 at 1–2.[3] CAFA permits defendants to remove class actions consisting of more than

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

100 plaintiffs where the citizenship of at least one plaintiff is different from that of at least one defendant, and the amount in controversy exceeds $5 million. *Id.* 28 U.S.C. §§ 1332(d)(2); 1132(d)(2)(A); 1332(d)(6).

Plaintiffs argue that this action must be remanded to state court because "Defendants' invocation of 28 U.S.C. § 1332(d) to remove this case to federal court is defective," in light of the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), ECF No. 20 at 2.

"[A]ny civil action brought in a State court of which the districts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). However, because Federal Courts are courts of limited jurisdiction, a district court must remand any case in which it lacks subject matter jurisdiction— *i.e.*, federal question or diversity jurisdiction. *See* 28 U.S.C. § 1447(c); *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 584 (4th Cir. 2006). Therefore, a party seeking adjudication in federal court must "demonstrate the federal court's jurisdiction over the matter." *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008) (citation omitted). "Where a defendant seeks to remove a case to federal court, the defendant must simply allege subject matter jurisdiction in his notice of removal." *Cunningham v. Twin City Fire Ins. Co.*, 669 F. Supp. 2d 624, 627 (D. Md. 2009). "But if the plaintiff challenges removal in a motion to remand, then the burden is on the defendant to 'demonstrate[e] that removal jurisdiction is proper." *Id.* (emphasis and alteration in original) (citing *Strawn*, 530 F.3d at 297).

Here, Plaintiffs argue, without any citation to authority, that "[r]emoval based upon the aggregate value of a statutory penalty is improper," ECF No. 20 at 3. They are mistaken.[4]

"To determine whether CAFA's $5 million jurisdictional minimum is satisfied, a district court looks to the *aggregated* value of the putative class members' claims, excluding interest and costs from the calculation. 28 U.S.C. § 1332(d)(6)." *Sayre v. Westlake Servs.*, LLC, No. 15-cv-687-ELH, 2015 WL 4716207, at *7 (D. Md. Aug. 7, 2015) (emphasis added). In *Strawn*, defendant AT&T submitted an affidavit to establish the amount in controversy, and the affidavit claimed that the jurisdictional amount had been satisfied because: (1) "approximately 58,800 individual consumers in West Virginia ha[d] remained enrolled in the Roadside Assistance program beyond the initial free trial period," 230 F.3d at 299, and (2) the minimum statutory damages for each person totaled $200 under West Virginia code, therefore "the amount in controversy was at least $11,760,000." *Id.* at 295, 299. The Fourth Circuit therefore determined that "the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, and therefore that the jurisdictional amount under CAFA is satisfied." *Id.* at 299 (citing 28 U.S.C. § 1332(d)(2)).

Based on the declaration of authorized Shellpoint representative, Amber Knight Costello, attached with Defendants' Notice of Removal, ECF No. 1-5 (Costello Declaration), this Court finds that Defendants have met the requisite amount in controversy. *See Sayre*, 2015 WL 4716207, at *7. Plaintiffs allege that Defendants violated C.L. § 12-121(b), therefore, for this purpose, C.L. § 12-121(b) is pertinent. It states, in relevant part: "[A] lender may not impose a lender's inspection fee in connection with a loan secured by residential real property." *Id.*

---

[4] "Defendants invoking § 1332(a) cannot aggregate class members' damages to meet the $ 75,000 amount in controversy requirement." *Ndzerre v. Liberty Power Corp.*, LLC, 318 F. Supp. 3d 761, 764 (D. Md. 2018). Defendants, however, did not base the removal of Plaintiffs' case to this Court on diversity of citizenship, therefore this rule is inapplicable.

Plaintiffs' claims for statutory damages under C.L. § 12-114(b)(1)(ii) provide that: "Any person who violates the usury provisions of this subtitle shall forfeit to the borrower the greater of (i) [t]hree times the amount of interest and charges collected in excess of the interest and charges authorized by this subtitle; or (ii) [t]he sum of $500." *Id.* Costello attests that "[f]rom January 1, 2019 to the present, Shellpoint has assessed at least 35,838 property inspection fees in connection with Maryland loans." ECF No. 1-5 ¶ 8b. Thus, if 35,838 individuals suffered, at the very least, the statutory minimum of $500 in damages, Defendants are correct that the amount in controversy would exceed the $5 million threshold, ECF No. 1 ¶¶ 10–17, as this would total $17,919,000, which Plaintiffs acknowledge, *see* ECF No. 20-1 at 3. Therefore, given the Fourth Circuit's guidance in *Strawn*, the jurisdictional amount under CAFA is satisfied.

Plaintiff places great reliance upon *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 210 L.Ed.2d 568 (2021) in an effort to challenge this Court's authority to retain subject matter jurisdiction over this case, but Plaintiffs' efforts are to no avail. As Defendants note, *see* ECF No. 22 at 8–9, *TransUnion* is not a case about computing the amount in controversy. Rather, it is a case that clarifies the constitutional requirements for standing. Of import from *TransUnion* is the principal that "concrete harms" must have "a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms[.]" 141 S. Ct. at 2200 (quoting *Spokeo, Inc. v. Robins*, 578 U. S. 330, 340–341, 136 S. Ct. 1540, 194 L.Ed.2d 635 (2016)). "Various intangible harms can also be concrete," including "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 2204.

As previously explained, C.L. § 12-121(b) prohibits a lender from imposing a lender's inspection fee in connection with a loan secured by residential real property, and therefore, an

attempt to collect such a fee falsely overstates what the lender is owed under Maryland law *See also Bassett v. Credit Bureau Servs., Inc.*, No. 8:16CV449, 2021 WL 3579073, at *3 (D. Neb. Aug. 13, 2021) (Acknowledging that "courts have long held fraudulent misrepresentation and conversion establish standing, thus demonstrating analogous, if not identical, causes of action traditionally acknowledged at common law."). This is a particularized concrete harm because the statutory remedy provided in C.L. § 12-114(b)(1), which is one of the options provided under this section, is tied to the amount of interest collected. Specifically, it provides that a person who violates the usury provisions shall forfeit the greater of the sum of $500, *see id.* § 12-114(b)(1)(ii), or "three times the amount of interest and charges collected in excess of the interest and charges authorized by this subtitle," *see id.* § 12-114(b)(1)(i), which evidences the concrete nature of this harm. Moreover, this is a harm with historical and common-law analogies because, as Defendants also note, the Maryland Court of Appeals has recently, in *Nationstar Mortg. LLC v. Kemp*, 476 Md. 149, 183, 258 A.3d 296, 316 (2021), acknowledged the close tie between Maryland common law and Maryland Usury Law when determining whether the addition of a definition of the term "lender" to the Maryland Usury Law "effected a significant change in that law—and the Maryland common law." *See* 476 Md. at 154; *see also* ECF No. 22 at 7.

For all of these reasons, the Court is satisfied that the jurisdictional requirements under CAFA are satisfied, and that there is a concrete injury conferring this Court with Article III standing. Accordingly, the Court will deny Plaintiffs' Motion to Remand.

**B. Motion to Dismiss**

Satisfied that the Court has jurisdiction over Plaintiffs' action, the Court turns to Defendants' Motion to Dismiss and to Strike Class Allegations, ECF No. 10.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint[,]" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, see *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Defendants argue that the Court should dismiss Count I, in which Plaintiffs allege that Defendants improperly charged property inspection fees under C.L § 12-121(b), *see* ECF No. 7 ¶¶ 51–63, because neither Defendant is a "lender" under § 12-121(b) and because § C.L. 12-114(b) does not provide Plaintiffs with a remedy, ECF No. 10-1 at 15. Defendants argue that the Court should dismiss Count II, which alleges violations of the MCDCA and the MCPA, *see* ECF No. 7 ¶¶ 64 –79, because "neither of Defendants is a 'debt collector' under the FDCPA or the MCDCA," and because Defendants have not violated the MCPA, ECF No. 10-1 at 21. In replying to Plaintiffs' Opposition, Defendants concede their arguments as to Count I. ECF No. 19 at 3 n.3, 4. Specifically, they "concede that *Kemp II*[5] forecloses on Defendants' legal arguments set forth in their Motion to Dismiss as to Count I of the Amended Complaint,"[6] but they continue to argue that the Court should dismiss Count II of Plaintiffs' Amended Complaint, *Id*. Given that Defendants concede that intervening case law from the Maryland Court of Appeals forecloses their arguments regarding Count I, the Court will deny Defendants' Motion to Dismiss as to Count I and will next consider Defendants' Motion to Dismiss as to Count II of Plaintiffs' Amended Complaint.

---

[5] Defendants also argue that Plaintiffs' Opposition, filed over seven months after they filed the now pending Motion to Dismiss, on August 30, 2021, ECF No. 17, is untimely and should not be considered in light of Local Rule 105.2(a), or that it should be stricken as untimely. ECF No. 19 at 2 n.2. Local Rule 105.2(a) provides that, unless otherwise ordered by the Court, "all memoranda in opposition to a motion shall be filed within fourteen (14) days of service of the motion and any reply memoranda within fourteen (14) days after the service of the opposition memoranda. *Id.* On January 11, 2021, Defendants filed a Motion to Stay, ECF No. 11, or just under two weeks after Defendants filed the now pending Motion to Dismiss. On September 30, 2021, the Court entered an Order, finding as moot, Plaintiffs' Motion to Stay, ECF No. 21. Rule 105.2 "does not specify the consequence to be administered if that deadline is not met. In its discretion, therefore, the court may hear an untimely opposition." *H & W Fresh Seafoods, Inc. v. Schulman*, 200 F.R.D. 248, 252 (D. Md. 2000). Given the time between Plaintiffs' Motion to Stay and the Court's Order finding it moot, the Court will exercise its discretion and hear Plaintiffs' untimely opposition.

[6] Defendants are referring to *Nationstar Mortg. LLC v. Kemp*, 476 Md. 149, 258 A.3d 296 (2021), in which the Maryland Court of Appeals held that C.L. § 12-121, which prohibits charging a lender's inspection fee for real property, applies to a mortgagee's assignee and a mortgage loan servicer. *Id.* at 188. Section 12-12, therefore, applies to both Defendant Shellpoint and Goldman Sachs. *See id.*

In Count II, Plaintiffs, on their behalf and on behalf of a Class and Subclass of similarly situated persons, allege that Defendants, in seeking to collect and assess a property inspection fee against them, violated "§ 14-202(11) of the MCDCA[,] which incorporates 15 U.S.C. § 1692e and 15 U.S.C. § 1692f." ECF No. 17 at 11–12; ECF No. 7 ¶¶ 67–69. Plaintiffs allege that "Defendants' violation of the MCDCA are also *per se* violations of the MCPA," ECF No. 7 ¶ 70, and they also assert separate, alternative claims under the MCPA, specifically Section 13-301(1), (3) and Section 13-303(4), (5). ECF No. 7 ¶¶ 71–79.

"The MCDCA prohibits debt collectors from engaging in an extensive list of practices, while the MCPA both functions as a 'statutory enforcement umbrella' and contains its own prohibitions." *Alexander v. Carrington Mortg. Servs.*, LLC, 23 F.4th 370, 372 (4th Cir. 2022) (citing *Andrews & Lawrence Pro. Servs. v. Mills*, 467 Md. 126, 223 A.3d 947, 950 (2020)). The operative provision of the MCDCA provides that: "[i]n collecting or attempting to collect an alleged debt," a "collector" may not "[e]ngage in any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act." Md. Code Ann., Com. Law § 14-202(11), ECF No. 7 ¶ 69. Maryland, therefore, "incorporates the substantive provisions of the Fair Debt Collection Practices Act (FDCPA)." *Alexander*, 23 F.4th at 372. "Section 14-202(11) contains no scienter requirement." *Id.* at 373. Under the MCDCA, a "collector" is defined as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction," and a "person" is "an individual, corporation, business trust, statutory trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity." Md. Code Ann., Com. Law § 14-201(b), (d). A "consumer transaction," is "any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes." *Id.* § 14-201(c).

In their briefings, Defendants proffer a variety of arguments in support of dismissing Count II, *see* ECF No. 10-1 at 21–41. And in their Reply, they argue that neither of the recent Maryland Court of Appeals cases cited by Plaintiffs, *Nationstar Mortg. LLC v. Kemp*, 476 Md. 149 (*Kemp II*) or *Chavis v. Blibaum & Assocs., P.A.*, 476 Md. 534, 264 A.3d 1254 (2021), *reconsideration denied* (Sept. 28, 2021) (*Chavis II*), "address the operative subsection of the MCDCA at issue in this lawsuit, C.L. § 14-202(11)." ECF No. 19 at 4. While Defendants are correct, the Fourth Circuit—in the recently published case *Alexander v. Carrington Mortg. Servs.*, LLC, 23 F.4th 370 (4th Cir. 2022)—addresses precisely this subsection of the MCDCA. *Alexander*, a case in which consumers brought a putative class action against a mortgage servicer for alleged violations of the MCDCA and the MCPA, including under Section 14-202(11), for charging a $5 convenience fee to borrowers who paid their monthly mortgage payments online or by phone, therefore, is squarely on point. *See id.* at 372.

The Fourth Circuit's analysis of "plaintiffs' central claim under the MCDCA: that, by charging its convenience fees, Carrington engaged in conduct violating the FDCPA," began with the court's determination of whether the defendant mortgage servicer, was a "collector" under the MCDCA. *Id.* at 375. As the Fourth Circuit explained, the "MCDCA broadly defines a 'collector' as 'a person collecting or attempting to collect an alleged debt arising out of a consumer transaction.'" *Id.* (citing Md. Code Ann., Com. Law § 14-201(b)). Here, Defendants, like defendant mortgage servicer Carrington, are, indeed, collectors under the MCDCA. There can be no dispute that each Defendant is a "person," as the MCDCA's definition includes "an individual, corporation, business trust, statutory trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity." *See id.* (citing Md. Code Ann., Com. Law § 14-201(d)). And as Plaintiffs note, the Parker Loan,

which is a "federally related mortgage," on the real property located in Temple Hills, MD, arises out of a "consumer transaction," which the MCDCA defines as "any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes." *See* Md. Code Ann., Com. Law § 14-201(c); *see also* ECF No. 17 at 11; ECF No. ¶ 7. Further, by collecting purported property inspection fees from Plaintiffs, totaling $105.000, *see* ECF No. 7 ¶¶ 27–31, "it is plain that" Defendants sought to collect a debt. *See Alexander*, 23 F.4th at 375. Here, "[e]ach piece of the statutory puzzle thus fits together[,]" and each Defendant is, indeed, a collector, under the MCDCA. *See id.*

Nonetheless, Defendants advance a series of arguments to refute such a finding, several of which are identical to those offered by defendant Carrington in *Alexander*. Each argument was squarely rejected by the Fourth Circuit. The Court addresses each one in turn.

First, Defendants argue that "Plaintiffs' allegation that Defendants did not have the authority to charge property inspection fees fails because it contests the *legitimacy* of the fees assessed, rather than the *methods* used to collect the debt." ECF No. 10-1 at 23; *see also* ECF No. 7 ¶ 65. As the Fourth Circuit noted, the Maryland Court of Appeals in *Chavis* rejected this argument in holding that "nothing in the MCDCA generally, or in § 14-202 specifically, warrants an interpretation of § 14-202(8) that limits its applicability to 'methods' of debt collection." 476 Md. at 560; *Alexander*, 23 F.4th at 375. This is because "the remedial nature of the MCDCA requires that we interpret § 14-202(8) broadly to reach any claim, attempt, or threat to enforce a right that a debt collector knows does not exist." *Chavis*, 476 Md. at 560. The Fourth Circuit went on to explain that "[t]he same reasoning applies to § 14-202(11), which likewise says nothing about methods." *Alexander*, 23 F.4th at 375. It is evident that Defendants collected a

debt, specifically through the property inspection fees, and "the means it chooses does not make [them] any less of a collector." *Id.*

Next, Defendants argue that the MCDCA does not apply to them because they are not "debt collectors" under the FDCPA, ECF No. 10-1 at 24–27, 30–33; ECF No. 19 at 4. This argument is unavailing because, as the Fourth Circuit explained, "the statute draws no such distinction" between loan servicing and debt collection, or "[p]assively accepting monthly payments . . . [and] actively enforcing the payment obligations of defaulting borrowers." *Alexander*, 23 F.4th at 375. With this reasoning, the Fourth Circuit declined to read "additional exemptions into a remedial statute" as doing so "limits the possibility of remedies beyond what the Legislature intended." *Id.* (citing *Andrews*, 467 Md. 126, 223 A.3d 947). Defendants also contend that the MCDCA does not apply to them because "Plaintiffs' mortgage is never alleged in the Amended Complaint to be in default," ECF No. 10-1 at 34; ECF No. 19 at 5. This argument also fails because, unlike the definition of "debt collector" in the FDCPA, which includes a requirement that the debt be in default, *see* 15 U.S.C. § 1692a(6)(F)(iii) ("The term does not include . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person[.]"), "the MCDCA's definition has no similar limitation." *Alexander*, 23 F.4th at 375 (citing Md. Code Ann., Com. Law § 14-201(b)). Put simply, "[t]he point is that the MCDCA applies more broadly than the FDCPA."[7] *Aghazu v. Severn Sav. Bank, FSB*, No. 15-cv-1529-PJM, 2017 WL 1020828, at *8 (D. Md. Mar. 16, 2017); *see also Awah v. Capital One Bank*, NA, 2015 WL 302880, at *4, n.8 (D. Md. Jan. 22, 2015)

---

[7] Defendants additionally argue that they have not violated the FDCPA, *see* ECF No. 10-1 at 29 –35, but Plaintiffs have not pled violations of the FDCPA. They have only alleged violations of Maryland law, *see generally* ECF No. 7, therefore the Court need not address these arguments.

16

("The MCDCA contains a broader definition of 'collector' than the definition of 'debt collector' under the FDCPA."). Therefore, Defendants Shellpoint and Goldman Sachs "need not be a debt collector under federal standards for plaintiffs' state claim to proceed." *Alexander*, 23 F.4th at 376.

Finally, Defendants also argue that Plaintiffs' "MCDCA claim would still be invalid because the property inspection fees are not barred by Maryland law, and they certainly were not at the time Defendants allegedly represented them on Plaintiffs' November 2019 monthly mortgage statement," ECF No. 10-1 at 29. The crux, therefore, of Defendants' argument is that the property inspection fees were not prohibited by Maryland law, which is an argument the Fourth Circuit also rejected in *Alexander*. As previously noted, Section 14-202(11) of the MCDCA incorporates 15 U.S.C. § 1692e and 15 U.S.C. § 1692f, *see id*; *Alexander*, 23 F.4th at 372. The FDCPA prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). The Fourth Circuit, in holding that the convenience fees at issue were "not permitted by law," based on principles of statutory interpretation and a review of the linguistic context of the FDCPA, determined that the phrase "requires affirmative sanction or approval, typically (though not always) from a statute." *Alexander*, 23 F.4th at 377. Thus, this analysis, likewise, forecloses Defendants' argument.

For all of these reasons, and in light of the Fourth Circuit's holdings in *Alexander*, the Court finds that Defendants are collectors who charged an amount, through the $105.00 property inspection fees, that was not "expressly authorized by the agreement creating the debt or permitted by law, 15 U.S.C. § 1692f, therefore "it violated the MCDCA." *See* 23 F.4th at 379 (reversing the district court's dismissal of plaintiffs' § 14-202(11) claim based on the same

analysis). Accordingly, Plaintiffs have stated a claim under the MCDCA and Count II of the Amended Complaint will survive. Because this Court finds that Plaintiffs MCDCA claim survives, their MCPA claim on this basis also survives as a violation of the MCDCA "is also a 'per se violation'" of the MCPA. *See Andrews*, 467 Md. at 223; *see also* Md. Code Ann., Com. Law § 13-301(14)(iii) ("Unfair, abusive, or deceptive trade practices include any violation of a provision of . . . the [MCDCA]."). Whether Plaintiffs' standalone claims under the MCPA can survive is a separate question.

Plaintiffs contend that Defendants "seeking and demanding and collecting property inspection fees not lawfully imposed on Maryland borrowers and therefore not due" from Plaintiffs and the proposed Class and Subclass members, constitutes "unfair and deceptive trade practices" in violation of Com. Law § 3-301(1)(3) and Com. Law § 303(4)(5)." ECF No. 7 ¶¶ 75, 71–74. To plead a standalone claim under the MCPA, a plaintiff must allege: "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citing *Lloyd v. General Motors Corp.*, 397 Md. 108, 916 A.2d 257, 277 (2007)). Plaintiffs' allegation that they "reasonably relied upon the direct and indirect material action, actions, and omissions of Shellpoint and Goldman Sachs," ECF No. 7 ¶ 76, is virtually identical to the allegation advanced by defendant Carrington in *Alexander*, and rejected by the Fourth Circuit, because it reads as no more than a "[t]hreadbare recital[] of the elements of [the] cause action," *Iqbal*, 556 U.S. at 678, rather than a "claim to relief that is plausible on its face," *id.* (citing *Twombly*, 550 U.S. at 570). Accordingly, Plaintiffs fail to state a standalone claim under the MCPA, and the Court will dismiss this claim.

Finally, Defendants' request for this Court to strike Plaintiffs' class allegations is based solely on its argument that Plaintiffs' claims in Count I and II "fail as a matter of law," and

therefore "Plaintiffs cannot be class representatives," ECF No. 10-1 at 41. Because Defendants concede their arguments as to Count I of the Amended Complaint, *see* ECF No. 19 n.3, and the Court denies their Motion to Dismiss Count I, and the Court finds that Plaintiffs MCDCA and derivative MCPA survive, Counts I and II do not "fail as a matter of law." Accordingly, Defendants' motion to strike the class allegations on this basis is also denied. *See Miller v. Baltimore Gas & Elec. Co.*, 202 F.R.D. 195, 202 (D. Md. 2001) (denying, without prejudice, the defendants' motion to dismiss the class claims where the named plaintiffs "ha[d] not had the benefit of any discovery in their attempt to make th[e] showing" required for class certification).

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand, ECF No. 20, is denied, and Defendants' Motion to Dismiss for Failure to State a Claim and to Strike Class Allegations, ECF No. 10, is granted, in part, and denied, in part. A separate Order shall issue.


Date: <u>March 31, 2021</u>                                     __/s/_____
                                                                GEORGE J. HAZEL
                                                                United States District Judge