**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

| | |
|---|---|
| MICHAEL T. PARKER <br> and <br> PATRICE PARKER <br><br>     Plaintiffs, <br><br> v. <br><br> GOLDMAN SACHS MORTGAGE <br> COMPANY LIMITED PARTNERSHIP, *et al.*, <br><br>     Defendants. | \* <br><br> \* <br>        Case No. 8:20-cv-03581-ADC <br> \* <br><br> \* <br><br> \* <br><br> \* |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND TO STRIKE CLASS ALLEGATIONS</u>

Dated:  March 26, 2024

Respectfully submitted,

*/s/ Melissa O. Martinez*

Melissa O. Martinez (Federal Bar No. 28975)
Nicholas B. Jordan (Federal Bar No. 22067)
**McGuireWoods LLP**
500 East Pratt Street, Suite 1000
Baltimore, MD 21202-3169
(410) 659-4432
(410) 659-4482 Fax
mmartinez@mcguirewoods.com
njordan@mcguirewoods.com

Brian E. Pumphrey (admitted *pro hac vice*)
**McGuireWoods LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-7745
(804) 698-2018 Fax
bpumphrey@mcguirewoods.com

*Counsel for Goldman Sachs Mortgage Company
Limited Partnership and NewRez LLC d/b/a
Shellpoint Mortgage Servicing*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION .................................................................................................... 1

ARGUMENT ........................................................................................................... 2

I.     THE COURT SHOULD GRANT SUMMARY JUDGMENT TO
DEFENDANTS ON COUNT I BECAUSE THE UNDISPUTED FACTUAL
RECORD ESTABLISHES THAT THE BPO ON PLAINTIFFS' PROPERTY
WAS NOT AN "INSPECTION" UNDER THE USURY STATUTE. ........................... 2

     A.    Maryland Law Makes Clear That BPOs Are Distinct From Property
Inspections. ................................................................................................ 2

     B.    The Undisputed Facts of This Case Demonstrate The Clear Difference
Between BPOs and Inspections. ................................................................. 4

     C.    Plaintiffs' Plain Language Argument Is Unsupported. ........................................ 6

II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT TO
DEFENDANTS ON COUNT II BECAUSE PLAINTIFFS' ALTERNATIVE
MCDCA AND MCPA CLAIMS ARE SIMPLY DERIVATIVE OF THE
USURY STATUTE CLAIM IN COUNT I, WHICH FAILS. ........................................ 9

III.   SHOULD THE COURT GRANT SUMMARY JUDGMENT IN
DEFENDANTS' FAVOR, PLAINTIFFS' CLASS ALLEGATIONS SHOULD
BE STRICKEN AS WELL, WITHOUT DELAY, AND NOTWITHSTANDING
ANY PENDING MOTIONS OR REQUESTS TO SUBSTITUTE THE CLASS
REPRESENTATIVE. ................................................................................................ 11

IV.   PLAINTIFFS ARE NOT ENTITLED TO A RULE 56(g) DECLARATION
THAT BPO FEES ARE INSPECTION FEES. ............................................................ 13

CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

CASES

*Altus Grp. US v. Litkenhous*,
    No. DLB-21-2547, 2022 WL 2818223 (D. Md. Apr. 6, 2022) ...............................11

*American Pipe & Const. Co. v. Utah*,
    414 U.S. 538 (1974)..............................................................................................14

*Carter v. Fed. Home Loan Mortg. Corp.*,
    No. CV JKB-19-1486, 2020 WL 5076691 (D. Md. Aug. 26, 2020) .........................9

*Floyd v. Bowen*,
    833 F.2d 529 (5th Cir. 1987) ................................................................................13

*Galvin v. U.S. Bank, N.A.*,
    852 F.3d 146 (1st Cir. 2017).................................................................................11

*Gessele v. Jack in the Box, Inc.*,
    No. 3:10–cv–960–ST, 2012 WL 3686274 (D. Or. Aug. 24, 2012) ........................14

*Kemp v. Seterus, Inc.*,
    348 F. Supp. 3d 443 (D. Md. 2018) ........................................................................3

*Knight v. Fed. Nat. Mortg. Ass'n*,
    No. 1:13-CV-0183 GTS/RFT, 2014 WL 4901617 (N.D.N.Y. Sept. 30, 2014).......11

*Nationstar Mortg. LLC v. Kemp*,
    476 Md. 149 (2021) ........................................................................................2, 3, 4

*Phillips v. Ford Motor Co.*,
    435 F.3d 785 (7th Cir. 2006) ................................................................................12

*Saroza v. Lyons, Doughty & Veldhuis, P.C.*,
    No. CV1700523RBKAMD, 2021 WL 2549273 (D.N.J. June 22, 2021) ..........12, 13

*Schmidt v. Beneficial Fin. Co.*,
    285 Md. 148 (1979) ...........................................................................................7, 9

*Schwarzschild v. Tse*,
    69 F.3d 293, 295 (9th Cir. 1995) ..........................................................................14

*Smith v. Ozmint*,
    578 F.3d 246 (4th Cir. 2009) ................................................................................10

**TABLE OF AUTHORITIES**
(continued)

Page

*Taylor v. Friedman*,
   344 Md. 572 (1997) ..................................................................................2, 3, 4, 7

*Weir v. Joly*,
   No. CV–10–898–HZ, 2011 WL 6043024 (D. Or. Dec. 2, 2011) ...........................13

*Wright v. Schock*,
   742 F.2d 541 (9th Cir. 1984) ..............................................................................13

STATUTES

12 U.S.C. § 3355(b) ...................................................................................................1

Maryland Consumer Debt Collection Act (MCDCA),
   Md. Code, Com. Law § 14-201 *et seq.* ...............................................................9, 10

Maryland Consumer Loan Law,
   Md. Code, Com. Law § 12-301 *et seq.* .....................................................................7

Maryland Consumer Protection Act (MCPA),
   Md. Code, Com. Law § 13-301 *et seq.* ...............................................................9, 10

Md. Code, Com. Law § 12-121 ............................................................... *passim*

Secondary Mortgage Loan Law,
   Md. Code, Com. Law § 12-401 *et seq.* .....................................................................7

OTHER AUTHORITIES

Fannie Mae Servicing Guidelines.............................................................................3

Fed. R. Civ. P. 36......................................................................................................9

Fed. R. Civ. P. 56.......................................................................................1, 13, 14

Fannie Mae Property Preservation Matrix and Reference Guide .................................6

*Newberg and Rubenstein on Class Actions* § 7:8 (6th ed.).....................................13, 14

Defendants Goldman Sachs Mortgage Company Limited Partnership ("Goldman Sachs") and NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint," and collectively "Defendants"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby submit this Reply in Support of Their Motion for Summary Judgment and to Strike Class Allegations:

## INTRODUCTION

Plaintiffs' theory of this case boils down to an overly simplistic and false syllogism:

- The Maryland Usury Statute prohibits servicers from imposing property inspection fees on borrowers but allows appraisal fees;

- A broker price opinion ("BPO") is a servicer-concocted codeword for a property inspection, adopted for the nefarious purpose of flouting the Usury Statute, and is not an appraisal; therefore

- The Maryland Usury Statute must prohibit servicers from imposing BPO fees on borrowers.

This is nonsense. Adopting this syllogism requires the Court to ignore both the definition and primary purpose of BPOs, which is to provide an opinion of value of real property. *See* 12 U.S.C. § 3355(b) ("'broker price opinion' means an estimate prepared by a real estate broker, agent, or sales person that details the probable selling price of a particular piece of real estate property"). Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Opposition"), ECF 78, is adamant that the BPO conducted on Plaintiffs' property—for which they were not charged and which they did not pay—was merely an inspection. However, Plaintiffs cannot overcome the undisputed factual record, which establishes that the BPO at the heart of this case was a valuation of Plaintiffs' property which considered various comparable sales prices and listings to determine the value and probable sale price of their property. At no time did Shellpoint or any agent of Shellpoint conduct a property inspection on Plaintiffs' property.

Plaintiffs' attempt to expand liability under the Usury Statute is unprecedented.  There is no support in the legislative history of the Usury Statute, Maryland law, federal law, the law of the other 50 states and the District of Columbia, or in mortgage industry practice, for the position that BPOs are property inspections.  Consequently, Plaintiffs must resort to outlandish hyperbole, including references to the "moral taint" of usury, allusions to "junk fees," and aspersions that Defendants are resorting to "linguistic sophistry" to distract the Court from the undisputed facts and single legal determination that will resolve this entire case.  These machinations are insufficient to defeat summary judgment and to maintain the corresponding class claims.

## **ARGUMENT**

I.   **THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANTS ON COUNT I BECAUSE THE UNDISPUTED FACTUAL RECORD ESTABLISHES THAT THE BPO ON PLAINTIFFS' PROPERTY WAS NOT AN "INSPECTION" UNDER THE USURY STATUTE.**

   A.   **Maryland Law Makes Clear That BPOs Are Distinct From Property Inspections.**

Plaintiffs incorrectly maintain that the Usury Statute prohibits charges for BPOs from being passed to borrowers simply because BPOs involve real estate brokers looking at the property that they are valuing.  There is no record evidence supporting this argument.  In fact, all evidence and authorities are to the contrary.  The Usury Statute's prohibition on the imposition of inspection fees to borrowers relates to simple property inspections at settlement or following the borrowers' default on their mortgages—not valuations.  This is evident from the legislative history, which explains that the Usury Statute, Md. Code. Com. Law ("CL") § 12-121, was enacted to prevent inspection costs "frequently levied *at settlement* by the lender."  Apx. 719 (emphasis added).  This is also evident from the two seminal Maryland cases on the Usury Statute: *Taylor v. Friedman*, 344 Md. 572 (1997), and *Nationstar Mortg. LLC v. Kemp*, 476 Md. 149 (2021).  Specifically, "[f]rom time to time Taylor was delinquent in making the monthly payments on the note.  When

a delinquency continued for more than forty-five days from the due date, Lender caused the property to be inspected by an independent organization and charged Taylor's account $10.00 as an inspection fee on each such occasion." *Taylor*, 344 Md. at 575.  Similarly, in *Kemp*, "Ms. Kemp fell behind on her mortgage payments . . . [and] had been charged property preservation charges from August 26, 2016 through July 24, 2017."  *Kemp*, 476 Md. at 164.  "Seterus . . . assessed the loan [twelve] property inspection fees [at $15.00 per inspection] totaling $180.00."  *Kemp v. Seterus, Inc.*, 348 F. Supp. 3d 443, 445 (D. Md. 2018) (alterations in original) (granting defendant's motion to dismiss in federal court and remanding all further proceedings to state court).

The defendants in these two cases ordered low-cost visual property inspections because it is standard in the mortgage industry to order such inspections to ensure properties that serve as collateral for mortgage loans do not go to waste following borrower default.  Fannie Mae, whose standards govern the mortgage servicing industry, requires:

> The servicer **must** order a property inspection on or after the 90th day of delinquency and complete the property inspection no later than the 120th day of delinquency for all delinquent mortgage loans and continue inspecting every calendar month as long as the mortgage loan remains 90 or more days delinquent until the foreclosure sale, the execution of a Mortgage Release, or the mortgage loan becomes current unless otherwise noted in this Servicing Guide.

Fannie Mae Servicing Guidelines, available at https://singlefamily.fanniemae.com/media/ 38056/display, at D2-2-10 (last visited March 20, 2024).

This standard is consistent with the Maryland Office of the Commissioner of Financial Regulation's ("OCFR") explanation that the Usury Statute, CL § 12-121, "prevents a lender from imposing an inspection fee in connection with a loan secured by residential real property" and that "*Taylor* remains good law in Maryland and applies to circumstances where a servicer orders a ***visual inspection of property following default on the terms of a mortgage***."  Apx. 741-742. (emphasis added).

Pursuant to this industry standard, Defendants here also order and perform visual inspections of property following default.  As Shellpoint disclosed to Plaintiffs, the normal cost of property inspections ranges from $0-$50 – amounts consistent with the visual inspections in *Taylor* and *Kemp* – and distinct from property valuations (which may be in the form of a BPO, appraisal, or other):

| Property Valuation Fee | Fee charged if we are required to determine the condition and value of your home; may be in the form of a Broker Price Opinion, appraisal, or other Valuation of Property | $80 | $450 |
|---|---|---|---|
| Property Inspection Fee | Fee charged if we are required to determine the condition of your property | $0 | $50 |

Apx. 506.  But, unlike in *Taylor* and *Kemp*, there is no dispute in this case that Shellpoint stopped charging Maryland borrowers for inspections in 2018, and nearly a year before it even began servicing Plaintiffs' loan.  Apx. 72-74.  In fact, Shellpoint engaged in a year-long conversion of its systems to stop charging inspection fees to borrowers following the OCFR's examination, and that conversion was finalized on December 14, 2018.  Apx. 73, ¶ 47.  Throughout the examination and the resulting memorandum of understanding, the OCFR never once mentioned property valuations in general, or BPOs specifically, as being prohibited by the Usury Statute.  Apx. 52-67; Apx. 72-74.  Although the OCFR has issued multiple advisories regarding inspection fees, the OCFR has not once issued anything on BPOs.  Apx. 681, Tr. 78:20-79:1.  The Usury Statute simply does not apply to BPOs.

**B.    The Undisputed Facts of This Case Demonstrate The Clear Difference Between BPOs and Inspections.**

The undisputed record establishes that Plaintiffs' loan was coded as being in active loss mitigation at the time of servicing transfer.[1]  Apx. 40; Apx. 584; Apx. 602-603.  Pursuant to

---

[1] Plaintiffs suggest that they were not in default; therefore, their loan should never have been coded for loss mitigation.  ECF 68 at 10.  Whether Plaintiffs were in default, and even if they were not, whether their loan was properly in loss mitigation, are not issues in this case.  Nevertheless, it is undisputed that the loan was transferred to Shellpoint from Nationstar with unpaid late fees and with a notation that the loan was in loss mitigation.  Thus, under Shellpoint's procedures, it was bound to solicit a valuation of Plaintiffs' property.

Shellpoint's procedures, property valuations are required to make a loss mitigation decision.  Apx. 41.  Accordingly, Shellpoint hired ServiceLink Valuation Solutions, LLC ("ServiceLink") to do a valuation of Plaintiffs' property.  ServiceLink, in turn, hired a licensed real estate broker to the valuation.

While a real estate broker must look at a property to perform a BPO, a BPO involves so much more, as Plaintiff's situation demonstrates.  This was not a "drive-by" inspection.  Mr. Parker testified that Mr. Antoine Johnson, the licensed real estate broker who performed the BPO, actually got out of his car to take pictures of Plaintiffs' property and the neighboring properties.  Apx. 558; *see also* Apx. 626-630 (pictures taken by Mr. Johnson for the BPO).  When Mr. Parker called Shellpoint to ask why Mr. Johnson was in his yard, Shellpoint explained that Mr. Johnson went to the property because they had sent Plaintiffs a loss mitigation document.  *Id*. at 79:18-79:4.  Mr. Johnson then prepared the BPO, in which he considered the price for which three other similar properties in Temple Hills, Maryland sold within recent months.  Apx. 623.  Mr. Johnson also reviewed the available listings of three other similar properties in Temple Hills, Maryland.  Apx. 624.  For both analyses, Mr. Johnson analyzed the comparable properties, the available inventory of properties, and the market trends in the area.  Apx. 622.  Based on all of this information, Mr. Johnson set forth his professional opinion on the as-is and as-repaired price that Plaintiffs' property would fetch on the market.  Apx. 625.  Plaintiffs do not, and cannot, uncouple Mr. Johnson viewing the property for the purposes of preparing his BPO and his evaluation of similar properties to determine a probable sale price in the BPO.

---

Once Plaintiffs objected to being in loss mitigation, Shellpoint undisputedly ceased all efforts to help Plaintiffs (and forwent charging and collecting any fees for those efforts).

There are many other situations in which servicers, or their agents, are called upon to look at properties. For example, all property preservation activities – such as cutting grass, picking up trash etc. – involving someone looking at the property. Apx. 4, ¶ 20. Shellpoint charges $5-$3,000 for property preservation activities, depending on the level of activity:

| Property Preservation Fee | If the property is vacant and/or abandoned services may be provided to treat and prevent damages to the property per service needed | $5 | $3,000 |
|---|---|---|---|

Apx. 506. These property preservation activities are required by Fannie Mae, and they all necessarily involve "visual inspections." *See* Property preservation Matrix and Reference Guide March 2023, available at https://singlefamily.fanniemae.com/media/7321/display (last visited March 20, 2024). But those activities involve "visual inspection" in the same sense as a BPO does—the vendor must physically come to the property, and they cannot do their job with their eyes closed. But that does not make each of those property preservation activities a "property inspection." The same is true for BPOs. Indeed, there is no evidence, nor is there any logical support, for the proposition that the General Assembly intended the Usury Statute to preclude borrowers from being charged fees for such servicing activities.

The purpose of a BPO is to *value* a property, not to visually *inspect* it. *See* ECF 60-1 at 12-15. This Court should not be the first to declare that a BPO is not really a BPO, but is actually an inspection. They are quite plainly and obviously two very different things.

### C. Plaintiffs' Plain Language Argument Is Unsupported.

In the absence of any evidence of authority supporting their position, Plaintiffs resort to legal gymnastics in arguing that the Usury Statute prohibits BPO fees without saying so. They argue that, because BPO fees are not listed among the *statutory exceptions* in the Usury Statute, then BPO fees must be inspection fees that are prohibited. ECF 71 at 11. This argument finds no basis in the statutory text or even basic logic. It assumes that BPOs are property inspections (and

6

therefore that BPO fees are illegal). But there is no need to address the meaning of any exception for "appraisals" without first establishing that BPOs are really property inspections, which for the reasons stated *supra*, Plaintiffs have not done.

The cases that Plaintiffs rely on prove this point. Plaintiffs cite only to cases where the applicability of a general rule was already established. For example, in *Taylor*, it was undisputed that the $10 fee at issue was the kind of inspection fee that fell within the scope of the Usury Statute. 344 Md. at 580. There, the lender argued unsuccessfully that the requirement that the fee be imposed "in connection with a loan" could mean that the prohibition on inspection fees only applies "at the time of loan closing." *Id.* at 581. The court explained that "the legislative history does not so clearly demonstrate a purpose to limit the prohibition of § 12–121 to closing costs." *Id.* at 584. There was no dispute that the inspection fee in *Taylor* was, in fact, an inspection fee.

Similarly, *Schmidt v. Beneficial Fin. Co.,* 285 Md. 148 (1979), involved a mortgage loan with an interest rate that exceeded the rate allowed by the Secondary Mortgage Loan Law, but was permissible under the Maryland Consumer Loan Law. *Id.* at 153-54. The lender did not contest "that the loan fell within the definition of a secondary mortgage loan." *Id.* at 154. Instead, the lender argued that, as a consumer loan, the loan at issue was governed by the Maryland Consumer Loan Law. *Id.* The court held that "[t]he Secondary Mortgage Loan Law does not expressly except loans meeting the criteria set out in the Consumer Loan Law," and it would not "read such an exception into the law." *Id.* at 155.

Here, in contrast to those cases, Plaintiffs have no evidence or authority stating (or even suggesting) that the Usury Statute applies to BPOs in the first instance, and therefore the statutory exceptions and their meaning never come into play. And, as explained in Defendants' Motion for Summary Judgment ("Opening Brief"), ECF 60-1 at 10-15, there is no mention of BPOs in the

plain language or legislative history of the Usury Statute such that the Court could infer the General Assembly intended CL § 12-121 to apply to BPOs (or, indeed, to any other fee that is also not referenced in the statute).

Even if it were appropriate to consider what the General Assembly excepted from the definition of inspection to determine if "inspection" means "BPO," Plaintiffs' arguments are simply wrong.  As an initial matter, this argument makes no logical sense because it assumes that every act in mortgage servicing that is not an appraisal must be a property inspection.

Second, Plaintiffs' reliance upon the restrictive definition of "appraisal" in the Business Occupations and Professions Article of the Maryland Code and corresponding attempt to import that definition into the Commercial Law article is misplaced.  As explained in Defendants' Opening Brief, courts are loathe to import a restrictive definition in one section of the Code into another when the provisions are unrelated.  ECF 60-1 at 14-15.  BOP § 16-101 states that the defined terms apply "[i]n this title" rather than the entire Article, or even the entire Code.  Title 16 regulates professional licensure requirements for real estate appraisers and home inspectors while Title 17 regulates real estate brokers.  In contrast, the Usury Statute relates to fees and types of loans prohibited in Maryland.  There is thus no nexus that would require the Court to import the definition of "appraisal" (which by its terms only applies to Title 16) into the Usury Statute.[2]

Third, there is no "exception" for appraisals in the Usury Statute.  There are only two explicit exceptions to the prohibition on inspection fees, and they are enumerated in subsection (c).  The third "exception" according to Plaintiffs for appraisals is in subsection (d) which is not an exception – the statute simply ***does not apply*** to appraisals or fees in connection with an

---

[2] Moreover, Defendants cited a number of cases from other jurisdictions in which courts have considered BPOs to be appraisals, as that term is generally used and understood in common parlance.  ECF 60-1 at 13-14.

appraisal.  *Id.* § 12-121(d).  While the law is clear that a court will not read exceptions into a statute that the legislature did not explicitly state or are not clear from legislative intent, *Schmidt*, 285 Md. at 155, a statute need not provide an exhaustive list of all practices and phenomena to which it does not apply, lest they be included in the statute's purview.  For instance, a car registration statute need not say it does not apply to boats.  Likewise, a statute governing inspection fees need not say it does not apply to real property valuation fees.

Ultimately, Plaintiffs' "plain language" argument means that any fees assessed by mortgage servicers in Maryland are illegal unless there is an express exception for them in the Usury Statute.  That is an absurd position that has no legal foundation.

## II.  THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANTS ON COUNT II BECAUSE PLAINTIFFS' ALTERNATIVE MCDCA AND MCPA CLAIMS ARE SIMPLY DERIVATIVE OF THE USURY STATUTE CLAIM IN COUNT I, WHICH FAILS.

Despite pleading them "in the alternative," Plaintiffs concede that their claims under the Maryland Consumer Debt Collection Act ("MCDCA") and Maryland Consumer Protection Act ("MCPA") are based on the same alleged BPO fee[3] and depend on the same false premise as their claim under the Usury Statute – that BPO fees are illegal under Maryland law.  *See* ECF 78 at 26. And for the same reasons as discussed above, these completely derivative claims must fail as well. Plaintiffs' attempt to overcome this shortcoming by painting this case as exactly the same case as *Yates* fairs no better.  *See id.* at 28.  In *Yates*, the plaintiff's MCDCA and MCPA claims were based on an actual property inspection fee (and Shellpoint never argued otherwise, nor could it).  Judge

---

[3] By their failure to respond to Defendants' Requests for Admission, Plaintiffs have admitted that the November 8, 2019 BPO fee is the sole fee that forms the basis of their claims under both Counts I and II. Apx. 31, Defendants' RFAs to Plaintiffs Nos. 3-4; *see Carter v. Fed. Home Loan Mortg. Corp.*, No. CV JKB-19-1486, 2020 WL 5076691, at *1 (D. Md. Aug. 26, 2020) ("Under Rule 36 of the Federal Rules of Civil Procedure, failure to respond to a request for admission results in the matter at issue being deemed admitted.").

Chuang's determination that a $13 inspection fee can form the basis of a MCDCA or MCPA claim has no applicability here.

It is further undisputed that Plaintiffs never paid a BPO fee. *Id.* ¶ 35. Plaintiffs have presented no evidence to the contrary. The BPO fee was waived by Shellpoint and reclassified as third-party recoverable so that it was charged to and paid by the investor on the loan, Goldman Sachs. *Id.* In failing to respond to Defendants' Requests for Admission, Plaintiffs have admitted that they received a copy of the January 27, 2020 letter from Shellpoint notifying them that the BPO fee was waived as part of an automated process at Shellpoint's own expense. Apx. 31, Defendants' RFAs to Plaintiffs Nos 1-2; Apx. 32, January 27, 2020 Shellpoint Letter[4] ("The BPO fee was subsequently waived, as part of an automated process and at Shellpoint's own expense"). There can be no actual damages for the imposition of a BPO fee that was waived. Moreover, the fee was waived the same day it was imposed. Accordingly, no prejudgment interest could have accrued based on the BPO fee. Neither do Plaintiffs explain (nor can they explain) what the amount of this prejudgment interest would be.[5] *See* ECF 71 at 21. Therefore, the Court should grant summary judgment on Plaintiffs' MCDCA and MCPA claims in favor of Defendants.

---

[4] This version of the letter was produced in discovery by Plaintiffs, also evidencing that they received it from Shellpoint. To aid the Court and because Plaintiffs produced the first page of the letter only, Defendants attach the complete letter at Apx. 33.

[5] Plaintiffs argue that putative class members would be entitled to prejudgment interest. But this is irrelevant to the instant Motion, which addresses only Plaintiffs' claims in this uncertified putative class action. In any event, discovery is closed and Plaintiffs never discovered any information regarding when and how BPO fees were imposed on any of the putative class members, if the BPO fees were reversed and re-classified to be charged to the investor, and when that re-classification took place. Plaintiffs' argument on pages 21-23 is therefore rife with speculation and unsupported by actual evidence. As a result, it cannot prevent summary judgment here. *See Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.") (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

**III.    SHOULD THE COURT GRANT SUMMARY JUDGMENT IN DEFENDANTS' FAVOR, PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN AS WELL, WITHOUT DELAY, AND NOTWITHSTANDING ANY PENDING MOTIONS OR REQUESTS TO SUBSTITUTE THE CLASS REPRESENTATIVE.**

As discussed in Sections I and II *supra*, Plaintiffs' individual claims fail as a matter of law. To keep this case alive despite that inescapable infirmity, Plaintiffs (yet again) improperly direct this Court to consider "the Reasons Stated in their Motion for Class Certification," ECF 78 at 28, exceeding the allotted page limit for memoranda set by this Court and impermissibly "incorporating by reference" arguments from separate motions to accomplish same. *See* Apx. 34, *Altus Grp. US v. Litkenhous*, Letter Order, ECF 36, No. 1:21-cv-2547-DLB (D. Md. Mar. 18, 2022) (granting emergency motion to strike) ("Neither the Local Rules nor any order issued in this case permitted plaintiff to exceed the page limit by . . . incorporating by reference arguments made in another filing."); *see also Altus Grp. US v. Litkenhous*, No. DLB-21-2547, 2022 WL 2818223, at *1 (D. Md. Apr. 6, 2022) (Judge Boardman granting defendants' second emergency motion in same case against same plaintiff for similar conduct) ("Although it did not use those words, plaintiff admits that it directed the Court to its other brief 'because there is some cross-over of the issues that simply need not be repeated in its Opposition Memorandum.'  In other words, plaintiff believes the Court would benefit from reading its argument in its other brief, which plaintiff did not include in its opposition, despite its relevance.") (internal citation omitted).[6]

---

[6] This principle is not unique to the United States District Court for the District of Maryland.  *See e.g.*, *Knight v. Fed. Nat. Mortg. Ass'n*, No. 1:13-CV-0183 GTS/RFT, 2014 WL 4901617, at *12 (N.D.N.Y. Sept. 30, 2014) "[C]ontrary to Plaintiff's attempt to do so, he is not permitted to incorporate arguments by reference in his opposition memorandum of law.  Such a practice (1) violates the District's rule on page limitations, and (2) confuses the Court as to which particular 'incorporated' arguments are actually being relied upon.") (internal citation omitted); *cf. Galvin v. U.S. Bank, N.A.*, 852 F.3d 146, 159 (1st Cir. 2017) ("This court does not permit parties to incorporate by reference arguments they made in memoranda filed in the district court.").

The Court should decline this improper instruction to refer to the arguments set forth in their motion for class certification (and to a lesser degree, the motion to intervene[7]), and rule on Defendants' now-ripe Motion for Summary Judgment and to Strike Class Allegations without delay, considering only Plaintiffs' arguments set forth in their Opposition Brief, ECF 78, in accordance with the decisions and rules of this Court.

A legal determination on summary judgment that BPO fees are not inspection fees subject to the Usury Statute will dispose of Plaintiffs' claims, and thus, as the only named plaintiffs, the entire case. *See Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006) ("[T]he case is not yet a class action and so a dismissal of the named plaintiffs' claims should end the case."). To the extent Plaintiffs are suggesting that this Court defer ruling on this Motion until other pending motions and as-yet-to-be-filed substitution motions are filed, ECF 78 at 30, those suggestions are misplaced. Until certification, this is not a class action and Defendants have presented the Court with a meritorious motion for summary judgment. There is no need, and certainly no requirement, for the Court to help Plaintiffs' counsel resuscitate their failed lawsuit, for the benefit of third-parties who have not yet appeared in, or been made parties to, this case, and whose legal rights will not be affected by a legal determination that BPOs are nor prohibited from being passed to the borrower by the Usury Statute.

Indeed, courts have routinely considered and granted dispositive motions prior to ruling on class motions in circumstances that are particularly apt here. *See Saroza v. Lyons, Doughty & Veldhuis, P.C.*, No. CV1700523RBKAMD, 2021 WL 2549273, at *4-5 (D.N.J. June 22, 2021)

---

[7] Despite Plaintiffs' attempt to muddy the waters, Defendants' substantive arguments in opposition to non-party Alice Mejia's Motion to Intervene as an Additional Plaintiff, ECF 75, will be set forth in a separate filing because those arguments have no bearing on the Court's ability to rule on the instant Motion for Summary Judgment and to Strike Class Allegations. Defendants' arguments here contain only limited references to Plaintiffs' and non-party's other filings necessary to address the procedural complications manufactured by Plaintiffs' counsel.

(resolving dispositive motions first when "the Court finds that the adjudication of the summary judgment motions renders the class certification issue moot," and after observing that "some of the arguments raised in the motion for summary judgment were raised long before certification was an issue"); *Floyd v. Bowen*, 833 F.2d 529, 534–35 (5th Cir. 1987) (holding that trial court did not abuse its discretion in failing to rule on class certification because it found against named plaintiffs on the merits on summary judgment); *cf. Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984) ("It is reasonable to consider a Rule 56 motion first when early resolution of a motion for summary judgment seems likely to protect both the parties and the court from needless and costly further litigation.").

Accordingly, the Court should grant Defendants' Motion for Summary Judgment and to Strike Class Allegations.

## IV. PLAINTIFFS ARE NOT ENTITLED TO A RULE 56(g) DECLARATION THAT BPO FEES ARE INSPECTION FEES.

In addition to opposing Defendants' Motion for Summary Judgment, Plaintiffs seek a determination from this Court that certain "material facts" are undisputed, *i.e.,* that Defendants here imposed the kind of fee for visual inspections that is prohibited by the Usury Statute.  ECF 78 at 29.  This is not a request to establish "material facts."  This is a request to establish Defendants' liability and operate as a grant of summary judgment in Plaintiffs' favor, while selectively not cross-moving for summary judgment themselves, knowing that such a ruling might run afoul of the one-way intervention rule and place their ability to certify the class in jeopardy. *See Weir v. Joly,* No. CV–10–898–HZ, 2011 WL 6043024 (D. Or. Dec. 2, 2011)).  Under that rule, class members should not be permitted to know the outcome of the case before deciding whether to participate or not; otherwise, members of a class would "benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one."  *Newberg and*

*Rubenstein on Class Actions* § 7:8 (6th ed.) (citing *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 547 (1974)).  As made clear in *Gessele v. Jack in the Box, Inc.*, No. 3:10–cv–960–ST, 2012 WL 3686274, at *3 (D. Or. Aug. 24, 2012), a defendant may make the decision to bring a summary judgment motion prior to class certification, knowing that the ruling will only be binding as to the named plaintiff, but doing so does not waive its right to be protected from the one-way intervention doctrine by allowing plaintiff to seek summary judgment that could potentially place a putative class member in a "no-lose position by knowing the outcome as to liability before deciding to opt in or out of the class.") (citing *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995)).

The Court should not entertain Plaintiffs' attempt to circumvent the one-way intervention rule by way of Rule 56(g).  Moreover, as stated above, as a matter of law, BPO fees are not inspection fees bared by the Usury Statute.  Plaintiffs are not entitled to a Rule 56(g) declaration in their favor, since it would operate as the grant of summary judgment rather than a determination of a "material fact."  Their request should be denied, Defendants' Motion for Summary Judgment and to Strike Class Allegations should be granted, and this case should be concluded.

## <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth above, the Court should grant Defendants' Motion for Summary Judgment and to Strike Class Allegations.

Dated:  March 26, 2024                    Respectfully submitted,

                                       */s/ Melissa O. Martinez*
                                       Melissa O. Martinez (Federal Bar No. 28975)
                                       Nicholas B. Jordan (Federal Bar No. 22067)
                                       **MCGUIREWOODS LLP**
                                       500 East Pratt Street, Suite 1000
                                       Baltimore, MD 21202-3169
                                       (410) 659-4432
                                       (410) 659-4482 Fax
                                       mmartinez@mcguirewoods.com
                                       njordan@mcguirewoods.com

                                     Brian E. Pumphrey (admitted *pro hac vice*)
                                       **MCGUIREWOODS LLP**
                                       Gateway Plaza
                                       800 East Canal Street
                                       Richmond, VA 23219
                                       (804) 775-7745
                                       (804) 698-2018 Fax
                                       bpumphrey@mcguirewoods.com

                                     ***Counsel for Goldman Sachs Mortgage Company***
                                     ***Limited Partnership and NewRez LLC d/b/a***
                                     ***Shellpoint Mortgage Servicing***

15

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on March 26, 2024, a copy of the foregoing Defendants' Reply in Support of Their Motion for Summary Judgment and to Strike Class Allegations, and Appendix of Exhibits was electronically filed and served via the Court's CM/ECF system on all counsel of record.

*/s/ Melissa O. Martinez*
Melissa O. Martinez