IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MICHAEL T. PARKER, <br> PATRICE PARKER, <br>            Plaintiffs, <br><br> v. <br><br> GOLDMAN SACHS MORTGAGE <br> COMPANY LIMITED PARTNERSHIP, et al., <br><br>            Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> Civil Action No. ADC-20-3581 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Defendants, Goldman Sachs Mortgage Company Limited Partnership ("Goldman Sachs") and NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") move this Court for Summary Judgment and to strike the class allegations in Plaintiffs' Class Action Complaint. ECF No. 60.[1] After considering Defendants' Motion and the responses thereto (ECF Nos. 60, 78, 80) the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2023). For the reasons stated herein, Defendants' Motion is GRANTED.

### Factual Background

Plaintiffs Michael and Patrice Parker purchased their home, subject of the mortgage in these proceedings on December 17, 1993, by taking out a VA loan of $145,900. ECF 7-12 There were multiple actions regarding the mortgage such as a foreclosure filed in Prince Georges County

---

[1] On February 27, 2024, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings. ECF No. 37. All parties voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF No. 40.

Circuit Court in 2001 which was dismissed, and a refinance which occurred in 2005. Plaintiffs had multiple loan modifications after several defaults subsequent to the refinance. *Id.*

In 2019, the prior loan servicer, Mr. Cooper identified the loan for loss mitigation. The loan servicing was transferred to Shellpoint in 2019. *Id.* By that time, Plaintiffs had accumulated late fee charges in the amount of $952.60. *Id.* The loan was identified to Shellpoint as being in active loss mitigation. At this point, Shellpoint ordered a property valuation in the form of a Broker Price Opinion ("BPO"). A BPO requires either a licensed real estate broker or real estate agent prepare a report on the property. The agent does a visual inspection of the property, and in this case, only the exterior was examined and photographed. The agent also then pulls comparable houses that have recently sold and comparable properties that are for sale in the neighborhood. The agent then prepares an opinion on the value of the property.

On the mortgage statement showing transaction activity on Plaintiffs' account from October 19, 2019 – November 12, 2019, a BPO disbursement fee was listed and then listed as paid. It is undisputed that Plaintiffs did not pay nor were required to pay the $105.00 fee. It was listed simply as activity on their account. The fee was charged to Goldman Sachs and Goldman Sachs paid the fee.

**Procedural Background**

On October 30, 2020, Plaintiffs filed this putative class action in the Circuit Court for Montgomery County which was removed to this Court on December 10, 2020. ECF No. 1. An Amended Class Action Complaint was filed on December 31, 2020, eliminating certain claims and limiting the action to inspection fees alleged to violate the Maryland Usury Statute Commercial Law Article 12- 121, the Maryland Consumer Debt Collection Act CL 14-201 et seq., and Maryland Consumer Protection Act. ECF No. 7.

Defendants moved to dismiss the Amended Complaint and the Court Granted the motion in part and Denied the motion in part. ECF No. 27. On February 5, 2024, Defendants filed this Motion for Summary Judgment and to Strike Class Allegations. ECF No. 60. Plaintiffs filed a Response on March 14, 2024. ECF No. 78. Defendants filed their Reply on March 26, 2024. ECF No. 80.

## DISCUSSION

**Standard of Review**

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphasis in original). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Anderson*, 477 U.S. at 248. There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the Court has drawn all reasonable inferences in favor of the nonmoving party and "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

The party seeking summary judgment bears the initial burden of establishing either that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is

absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club,* Inc., 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

**Analysis**

After reviewing all the pleadings and pending motions filed in this case, I agree with Defendants in that the life of this litigation hinges on the Court answering a simple question. That question is whether a Broker Price Opinion (BPO) is an inspection fee that is prohibited by the Usury Statute in Maryland. I find that in this case it is not. In doing so, I am not suggesting that a fee charged and categorized as a BPO could never be a prohibited inspection fee. Plaintiffs here have set forth no facts that support their position that in this case Defendants have simply applied some wordsmithery to preclude liability. I find Plaintiffs' argument regarding the interpretation of the statutory language of the Usury Statute to be misguided at best. Plaintiffs insist on plugging the round hole of inspection fee with the square block of a BPO. It does not work.

Simply stated, although one would find the pleadings anything but simply stated, Plaintiffs argue that a BPO is in fact an inspection fee and Defendants imposition of a BPO in the case of the named Plaintiffs violated CL§ 12-121, the Maryland Usury Statute. While all other arguments and subsequent Counts roll downhill from this basic premise, there is no need for the Court to roll along with them. The Maryland Usury Statute states as follows:

MD Code, Commercial Law, § 12-121
**§ 12-121. Inspection fees**

(a) In this section, the term "lender's inspection fee" means a fee imposed by a lender to pay for a visual inspection of real property.

(b) Except as provided in subsection (c) of this section, a lender may not impose a lender's inspection fee in connection with a loan secured by residential real property.

(c) A lender's inspection fee may be charged if the inspection is needed to ascertain completion of:

(1) Construction of a new home; or

(2) Repairs, alterations, or other work required by the lender.

(d) This section does not apply to an appraisal of the value of real property by a lender or to fees imposed in connection with an appraisal.

Md. Code Ann. CL §12-121.

The first question is whether the BPO is in fact just a clandestine inspection fee that was illegal in that it violated CL§ 12-121. The second question is whether a BPO as a mislabeled inspection fee was "imposed" upon Plaintiffs. Obviously if the BPO in this case was not an inspection fee then there would be no need to determine whether it was imposed upon Plaintiffs. However, to clarify, the facts which are uncontested show that the BPO appeared as activity on Plaintiffs' account statement but was never charged ("imposed") upon them since the amount of $105.00 was listed and removed the same day and paid by Goldman Sachs, with nary a penny being imposed or otherwise charged to Plaintiffs. ECF No. 60-1 at 5. Listing the entries on the account summary does not an imposed fee make.

Seeing this as a fatal flaw, Plaintiffs now also ask the Court, post-discovery, to add a substitute putative class representative and start all over. ECF No. 75. This being the somewhat twisted tale of this case, the Court declines to Grant that Motion, will strike that motion as Moot by separate order since I find that the BPO at issue was not an inspection fee and therefore was not prohibited under CL §12-121 and does not violate the MDCMA nor the MCPA as well regardless of the class representative. Assuming *arguendo* it was an inspection fee, the BPO was never imposed upon Plaintiffs.

In this case, it would be easy to get wrapped a bit around the wheel with Plaintiffs' listing of "material facts" in their Response. However, it is not contested that the BPO consisted of a licensed broker or agent, Mr. Johnson, who visited the property and took pictures of the home and surrounding homes to determine the condition of the Parkers' home as compared to other homes in the neighborhood. As a licensed real estate agent he then performed a comparative analysis of three other recent sales of comparable homes. Mr. Johnson also reviewed similar listings of homes for sale. He used this information, also taking into account the inventory of available homes for sale and relying on his expertise, provided his opinion on the value of the home as is and as repaired. These activities are far different from a visual inspection, or drive by inspection prohibited by §12-121 and charged to the home buyer. The BPO is an opinion, based upon several factors, one of which happens necessarily to be a visual inspection of the property.

A lenders inspection fee means a fee imposed by a lender to pay for a visual inspection of real property. CL §12-121(a). There is no requirement that a visual inspection must be conducted by a licensed broker or agent. I agree with Defendants that this language is unambiguous. The BPO in this case was not a visual inspection of the property. The licensed agent did visually examine the property but also did a comparative analysis, all which was done because the property was reported as "in active loss mitigation". It is important to note also that the Usury Statute was fashioned to "provide protection for the home buyer from sharp practices of some lenders". *Nationstar Mortgage LLC v. Kemp* 476 Md. 149, 160 (2021). Here there is no evidence whatsoever to show Shellpoint and/or Goldman Sachs were engaged in any "sharp practices".

In the instant case, the BPO fee was listed by the loan servicer on Plaintiffs' activity statement and paid by Goldman Sachs to assess the property value that was reported as at risk. It was an activity initiated by Shellpoint on behalf of Goldman Sachs to protect the value of the

property. The BPO had nothing to do with levying illegal charges against the Parkers. In fact it was the Parkers own activity, failing to pay the late charges, that caused a BPO to issue.

### CONCLUSION

For the reasons set forth in this Memorandum Opinion and there being no genuine issue of material facts as a matter of law, Defendant's Motion (ECF No.60) is GRANTED. A separate Order will follow.

Date: 24 April 2024

A. David Copperthite
United States Magistrate Judge